IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**WILBERT R. HURST,**
**INMATE # U22029**
Plaintiff,

v.                                                    Case No.: 4:18-cv-00237-RH-CAS

**CENTURION OF FLORIDA, LLC, an out-**
**of-state corporation registered and doing**
**business in Florida; DR. FRANCIS ONG, in**
**his individual and official capacity; DR. E.**
**PEREZ-LUGO, in his individual and official**
**capacity; DR. ERRON CAMPBELL, in his**
**individual and official capacity; Nurse JANE**
**DOE I in her individual capacity, and Nurse**
**JANE DOE II in her individual capacity**
Defendants.

_____/

*PRO SE*

**THIRD AMENDED CIVIL RIGHTS COMPLAINT**

**I.  JURISDICTION AND VENUE**

**1.**      This is a civil action authorized by 42 U.S.C. section 1983 to redress the deprivation under

color of law of rights secured by Constitution of the United States. The court has jurisdiction under

28 U.S.C. section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C.

section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. section

2283 and 2284 and Rule 65 of the Fla.R.Civ.P., and upon 42 U.S.C. 1988 which authorizes the

award of Attorney's fees and costs to prevailing plaintiff in action brought pursuant to 42 U.S.C.

section 1983. The Northern District of Florida is an appropriate venue under 28 U.S.C. section

1391(b)(2) because it is the district where the events giving rise to this claim occurred and under 28

U.S.C. section 1391(c) as this is the venue where CENTURION OF FLORIDA, LLC et al do

business.

**2.**      Plaintiff seeks compensatory and punitive damages, and declaratory and permanent

injunction pursuant to Rule 65, Fla.R.Civ.P.

LEGAL MAIL
Provided to
Wakulla CI

AH
FILED USDC FLND TL
JAN 28 '19 PM2:11

JAN 2 4 2019

FOR MAILING _____ WH

## II.    PARTIES

### PLAINTIFF

3.      Plaintiff, WILBERT R. HURST, is and was at all times mentioned herein a prisoner of the State of Florida in the custody of the Florida Department of Corrections. All of the events took place when plaintiff was incarcerated at Union Correctional Institution. But as of July 11, 2018, Plaintiff had been confined at Wakulla Correctional Institution (Annex) in Crawfordville, Florida.

### III. DEFENDANTS

4.      Defendant, CENTURION OF FLORIDA, LLC, is an out-of-state corporation registered and doing business in Florida. Defendant CENTURION OF FLORIDA, LLC has since July 2016, contracted with the Florida Department of Corrections (hereinafter referred to as FDC) to provide Medical and Mental Health Care Services to all inmates in several FDC prisons, including Union Correctional Institution. Defendant CENTURION OF FLORIDA, LLC is sued for injunctive relief, a declaration that the defendant CENTURION OF FLORIDA, LLC violated the plaintiff's Constitutional Rights, and damages.

5.      Defendant DR. E. PEREZ-LUGO is, and was at all times material to this action, is the Chief Health Officer (CHO) for Union Correctional Institution. At all times he was employed by CENTURION OF FLORIDA, LLC and was acting within the scope of his employment. He is sued in his individual and official capacity for compensatory and punitive damages, and injunctive relief.

6.      Defendant DR. ERRON CAMPBELL is at all times material to this action, is and was the Regional Medical Director for all the prisons under the operational management of the FDC in his assigned region and is the representative for defendant CENTURION OF FLORIDA, LLC. He is responsible for approving or denying surgical procedures for inmates in the FDC, in his assigned region including Union Correctional Institution. At all times he was employed by defendant CENTURION OF FLORIDA, LLC and was acting within the scope of his employment. He is sued in his individual and official capacity for declaratory and injunctive relief, and for compensatory and punitive damages.

2

7.      Defendant DR. FRANCIS ONG is and was at all times material to this action, is the surgical specialist (plastic surgeon), employed by defendant CENTURION OF FLORIDA, LLC at the Reception & Medical Center (hereinafter referred to as RMC) at Lake Butler, Florida. He performed the surgery on Plaintiff's right hand. At all relevant times, he was a contract employee for defendant CENTURION OF FLORIDA, LLC, and was acting within the scope of his employment. He is sued in his individual and official capacity for declaratory and injunctive relief, and compensatory and punitive damages.

8.      Defendant Nurse JANE DOE I, is or was at all times material to this action the pre-confinement nurse at UCI, who was responsible for the pre-confinement health evaluations, including that of Plaintiff. At all relevant times she was employed by defendant CENTURION OF FLORIDA, LLC and was acting within the scope of her employment. She is sued in her individual and official capacity for compensatory and punitive damages.

9.      Defendant Nurse JANE DOE II, is or was at all times material to this action the sick-call nurse who collected the "Inmate Sick-call Request" at O-Dorm Administrative Confinement at UCI. At all relevant times she was employed by defendant CENTURION OF FLORIDA, LLC and was acting within the scope of her employment. She is sued in her individual and official capacity for compensatory and punitive damages.

10.     The actions of the defendants are herein alleged, were performed under color of state law and constitute State action.

### IV.   **STATEMENT OF FACTS**

11.     On January 5, 2017 plaintiff sustained a broken hand while defending himself in a fight after being attacked by another inmate at Union Correctional Institution (hereinafter referred to as UCI). Plaintiff was escorted to the OPD Building at UCI for a pre-confinement health evaluation which is standard policy in the FDC. The health evaluation was done by defendant nurse JANE DOE I. Plaintiff told nurse JANE DOE I that he believed he had broken his hand as he defended himself in a fight with another inmate. Plaintiff, while handcuffed, and told her that his hand was swollen and that he was in pain. Defendant JANE DOE I knew that plaintiff had a serious medical need, and that

plaintiff was in need of immediate medical attention, but she responded unreasonably by telling plaintiff that he will have to wait till April to see the doctor on plaintiff's next doctor's appointment. She refused to provide any type of medical care, thereby depriving plaintiff of medical care for his serious medical condition. This amounted to deliberate indifference to a serious medical need and exposed plaintiff to an unreasonable risk of further harm. Then she falsified the "Pre-confinement Health Evaluation Form" by writing a notation on it that plaintiff had no medical complaints. Nurse JANE DOE I's deliberate indifference to plaintiff's serious medical need contributed to causing the delay in him receiving his surgery which didn't happen till March 30, 2017. Her reckless and unreasonable inaction caused further harm to his injury because the first few hours of treating a comminuted overlapping fracture were critical to having a successful surgery.

12.     From the "pre-confinement health evaluation", plaintiff was escorted to the "O-Dorm Administrative Confinement" cell at UCI. Plaintiff immediately made inquiries about getting an "Inmate Sick-call Request." An officer told plaintiff that he would have to get it from the nurse. Plaintiff didn't know what time nurse came around, so the first few days plaintiff never seen her. Plaintiff finally made contact with Nurse JANE DOE II between dates of Jan. 8th and Jan. 10th 2017 as she was making her a.m. medication rounds on or about 5 or 5:30 am. Plaintiff remembers that she had blonde hair.

13.     Plaintiff requested an "Inmate Sick-call Request Form" from Nurse JANE DOE II. Plaintiff showed her his swollen hand, and plaintiff told her that he was in pain. Nurse JANE DOE II gave plaintiff the "Inmate Sick-call Request Form" to fill out. Plaintiff filled it out and gave it back to her. However, when plaintiff requested a copy of his medical records prior to filing this claim, the "Inmate Sick-call Request Form" that was filled out was not part of plaintiff's medical records. Upon information and belief plaintiff believes the following to be true: "Plaintiff alleges that nurse JANE DOE II threw away the "Inmate Sick-call Request Form" to conceal the evidence that plaintiff had addressed this medical issue with her. Defendant nurse JANE DOE II knew that plaintiff was in need of medical care and she responded recklessly and unreasonably by not processing the "Inmate Sick-call Request Form" and not scheduling an immediate appointment for

4

plaintiff to see a physician. Her recklessness contributed to the delay in plaintiff receiving his surgery for his serious medical condition," and her not processing the "sick-call request" amounted to deliberate indifference to serious medical need and it exposed Plaintiff to an unreasonable risk of further harm. As mentioned before, the failure of receiving treatment early was critical, because new bone starts to grow, cementing the splintered bone, thus complicating the surgery, exposing the patient to a greater risk of irreparable damage. And that's exactly what happened. Had she processed the sick-call request there was a reasonable probability that the surgery would have been done within a reasonable time frame with a far better result.

14.     Plaintiff was released from administrative confinement on January 12, 2017. Plaintiff submitted another "Inmate Sick-call Request Form" regarding his swollen and painful hand. Plaintiff was placed on the call-out for sick-call on Jan. 18, 2017 and reported to the Southwest Unit at UCI for sick-call and was seen by nurse P. Shifflet, RN (not sick-call nurse in O-Dorm). Nurse P. Shifflet followed procedure and completed "form DC4-683J," "The Fracture Protocol Form."

15.     Then on January 20, 2017, plaintiff went to the OPD Medical Building at UCI to get x-rays taken of his right hand. Dr. Bichara met with plaintiff and he confirmed that the hand was broken. The doctor's notes on "form DC4-701" of the medical chart indicate that plaintiff was diagnosed with having a "Comminuted Fracture of Distal Metacarpal" of the right hand, accompanied with pain and swelling. A January 20, 2017 notation was written below a January 27, 2017 notation on that same "Form DC4-701", that indicated that there was one consult with scheduling, and a referral was made to plastic surgery. (Plaintiff wants this claim to reflect, that the first and last time he had contact with Dr. Bichara was on January 20, 2017; plaintiff hasn't seen him since. He may have been re-assigned to another Correctional Institution. Defendant (DR. E. PEREZ-LUGO) has been plaintiff's primary physician before and after Jan. 20, 2017 until plaintiff was assigned to Dr. Toledo on Jan. 10, 2018).

16.     Becoming increasingly impatient, plaintiff filed another "Inmate Sick-call Request Form" on February 13, 2017 to make an inquiry about the surgery. Then on February 15, 2017, plaintiff was transported to the "Reception and Medical Center (hereinafter referred to as RMC), at Lake Butler,

Florida. Another set of x-rays were taken, and plaintiff was seen by defendant DR. FRANCIS ONG. DR. FRANCIS ONG confirmed that plaintiff's hand was broken, and he diagnosed plaintiff with having "a displaced overlapping comminuted fracture of the right 5th metacarpal neck." DR. FRANCIS ONG had scheduled plaintiff's surgery for February 16, 2017. Plaintiff agreed with the surgery and the surgery date and signed the "Consent for Surgery Form." DR. FRANCIS ONG also signed the form, as he was the plastic surgeon who would perform the surgery. He wrote on top of the form: "Urgent for Surgery Tomorrow 2/16/17." But later on that same day, the FDC transporting officer reported to plaintiff that his surgery was postponed for the following week. No explanation was given as to why the surgery was postponed. As the attending physician who would perform the surgery. DR. FRANCIS ONG would have known that the surgery was postponed. Therefore it was reckless and irresponsible for him not to have relayed the message to plaintiff that the surgery was postponed, or to phone UCI medical staff. Upon information and believe, plaintiff believes the following facts to be true: After an attending physician signs a "consent for surgery form" stating that he will perform a surgery on a specific date as he did in this particular case, only that physician has the authority to postpone that surgery. DR. FRANCIS ONG was the attending physician of the plaintiff and he recklessly postponed a surgery that he himself considered urgent, without making any arrangements for plaintiff to get his surgery elsewhere. This amounts to deliberate indifference to a serious medical need and exposed plaintiff to an unnecessary risk of further harm and the postponed surgery contributed to the delay in plaintiff receiving his surgery. The plausible reason for the postponement of the February 16, 2017 surgery was not having enough plastic surgeons at the RMC, to do the caseload of surgeries; as a result, plaintiff's surgery was postponed. DR. FRANCIS ONG is quite aware that he is the only plastic surgeon at the RMC. He is also aware that there are over 100,000 inmates in FDC as this is general knowledge that CENTURION OF FLORIDA, LLC employees would know. DR. FRANCIS ONG's heavy caseload of patients caused the postponement. The following facts support that assertion: During the time plaintiff was making his appointments at the RMC, sometimes there would be between 4-5 FDC inmates there, all with a cast on their right hand, and some had cast on their leg. And all of them

would be sitting on the bench in the plastic surgery area waiting to see DR. FRANCIS ONG. There was no telling how many others were there to see him who didn't have a cast on their hand or leg. So DR. FRANCIS ONG knew he had a heavy caseload of patients needing his services, so the postponed surgery could have been foreseen and avoided. DR. FRANCIS ONG had the authority to make a referral to another medical facility such as "Jacksonville Memorial Hospital" so that plaintiff could get his surgery within a reasonable time and he failed to do so. The failure to make a referral was reckless and unreasonable especially considering the fact that DR. FRANCIS ONG said the need for surgery was urgent. DR. FRANCIS ONG's failure to explore options of making a referral contributed in the delay of plaintiff receiving his surgery. Instead of making a referral plaintiff was transported back to UCI in limbo without a definite surgery date, as evidenced by the fact that a surgery date wasn't set until plaintiff had filed an informal grievance, on March 7, 2017.

17.     The FDC transporting officer gave plaintiff's medical file to defendant DR. E. PEREZ-LUGO and the nurses for review at the "OPD Medical Building" at UCI. Upon returning back from the RMC, it is standard policy for inmates to meet with the doctor and nurses and give a report of what happened at the RMC. So plaintiff went in the room where DR. E. PEREZ-LUGO and the nurses were, and plaintiff told DR. E. PEREZ-LUGO that the surgery was postponed till next week as the officer said. DR. E. PEREZ-LUGO's failure to call scheduling at that moment was reckless and irresponsible and further contributed to the delay of surgery and thus a greater risk of damage to his hand. In addition the doctor's note on "Form DC4-701" with the date of February 15, 2017 clearly indicate that the medical chart of plaintiff was given to DR. E. PEREZ-LUGO for review, and it was signed off by him. So he should (have known) that defendant DR. FRANCIS ONG had written that having the surgery was urgent. So after that one week time period had expired, on or about February 25, 2017, DR. E. PEREZ-LUGO should have started making phone calls to find out why plaintiff hadn't been transformed to the RMC for his surgery; but he didn't.

18.     So on February 25, 2017, it was reckless and unreasonable for defendant DR. E. PEREZ-LUGO who was plaintiff's primary physician at the time, not to have followed-up and make an inquiry as to why plaintiff has not been transported to the RMC for his surgery. There is no notation

in plaintiff's medical chart that a fax; phone-call, nor any other consult was made to scheduling or plastic surgery at the RMC on or about that date. DR. E. PEREZ-LUGO's failure to follow-up in a reasonable time contributed to further delay of plaintiff receiving his surgery, exposed him to an unreasonable risk of further harm, and it amounted to deliberate indifference. Had he followed-up early, there was a reasonable probability that the surgery would have been done within a reasonable time period.

**19.** DR. E. PEREZ-LUGO didn't bother to make an inquiry regarding the surgery until plaintiff filed an "informal grievance" on March 7, 2017. After filing the grievance plaintiff was scheduled an appointment at the OPD Medical Building at UCI on March 13, 2017 as evidenced by "Form DC4-701." While at this appointment, Nurse A. Parrish, LPN told plaintiff that DR. E. PEREZ-LUGO was on the phone trying to get an appointment scheduled for the surgery. Plaintiff was unable to see DR. E. PEREZ-LUGO that day because he was on the phone.

**20.** Furthermore, in plaintiff's chart there was no "Treatment Plan" (a standard tool used by the medical profession in delivering treatment) implemented by UCI medical staff to address plaintiff's medical issue; this is evidence that there was no planning involved by DR. E. PEREZ-LUGO. DR. E. PEREZ-LUGO as the "Chief Health Officer" and plaintiff's primary physician failed to plan for plaintiff's surgery as evidenced by ("no treatment plan") in plaintiff's medical chart addressing this issue. The failure to implement a "treatment plan" was reckless and unreasonable especially so when the need for surgery was rated as "URGENT" by defendant DR. FRANCIS ONG. DR. E. PEREZ-LUGO's failure in implementing a "treatment plan" contributed to the delay. DR. E. PEREZ-LUGO failed to plan, so the surgery was bound to fail, evidenced by plaintiff's deformed hand, and an inability to make a closed fist. DR. E. PEREZ-LUGO admitted himself on Nov. 17, 2017 during our last face-to-face meeting at the "OPD Medical Building" that the delay contributed to the unsatisfactory outcome of the surgery. His failure to implement a treatment plan to address plaintiff's serious injury amounted to deliberate indifference. Had a treatment plan been implemented there was a reasonable probability that the surgery would have been done within a reasonable time period with minimum risk of further harm.

21.     Related to the failure of implementing a "Treatment Plan," was DR. E. PEREZ-LUGO's failure to explore other venues for surgery other than at the RMC. As defendant DR. FRANCIS ONG, DR. E. PEREZ-LUGO knew likewise, that DR. FRANCIS ONG is the only plastic surgeon at the RMC. And he knew that it was completely plausible that DR. FRANCIS ONG had too heavy of a caseload to get plaintiff's surgery done in a reasonable time. To corroborate the plausibility of a heavy caseload: After plaintiff had filed the informal grievance on March 7, 2017, the "Health Services Administrator / M. Tomlinson, RN responded back on March 16, 2017 and wrote: "Please be advised that sometimes appointments get rescheduled due to circumstances beyond our control. We have contacted scheduling to inquire about an appointment date."

22.     The point is that DR. FRANCIS ONG having a heavy caseload would be something out of Ms. Tomlinson's control. The plausibility of the need to make a referral was recklessly ignored. There are no notes in the plaintiff's medical chart that would indicate that a consultation was made with any other private medical facility besides the RMC. Making referrals to "Jacksonville Memorial Hospital" is quite common at UCI, so DR. E. PEREZ-LUGO's failure to do so was reckless and irresponsible. And his failure to make a referral contributed to the delay in plaintiff receiving his surgery which exposed plaintiff of further damage to his hand. The possibility of DR. FRANCIS ONG having a back-log of patients to treat was completely foreseeable in this particular case. His failure to explore other venues for surgery amounted to deliberate indifference to a serious medical need and exposed plaintiff to an unreasonable risk of further harm. Had other venues have been explored there was a reasonable probability that the surgery would have been done within a reasonable time period.

23.     DR. ERRON CAMPBELL also contributed to the delay in plaintiff receiving his surgery. As the Regional Medical Director for defendant "CENTURION OF FLORIDA, LLC" he would have known, or should have known that there was only one plastic surgeon employed at the RMC to perform the surgeries. And as the Regional Medical Director, he knew, or should have known that there are over 100,000 inmates in the FDC that he owed a duty of providing medical care to. Inmates getting fractured hands and fingers due to fights is common in any prison system; a fact

that any layperson would know, so the problem of scheduling issues due to overcrowding and not having enough plastic surgeons could have been foreseen and prevented. As the Regional Medical Director, he had the power and authority to hire more plastic surgeons at the RMC and his failure to do so was reckless and irresponsible. His failure to hire more plastic surgeons contributed to the delay in plaintiff receiving a surgery within a reasonable time period, thus, it also contributed in the unsatisfactory outcome of the surgery because time was of the essence in treating an injury of this kind. DR. E. PEREZ-LUGO said himself that the delay contributed to the unsatisfactory outcome of the surgery at the last face-to-face meeting on Nov. 17, 2017 at the OPD Medical Building. So it follows that DR. ERRON CAMPBELL's failure to employ another plastic surgeon amounted to deliberate indifference and exposed plaintiff to an unnecessary risk of further harm.

24.     Defendant DR. E. PEREZ-LUGO's failure and refusal to submit the "From DC4-702" for plaintiff to get a corrective surgery for his obvious deformity of his right hand was reckless, (and amounted) to deliberate indifference, which ultimately left plaintiff with a permanent deformed hand with limited functioning. At the (last face-to-face) meeting that plaintiff had with DR. E. PEREZ-LUGO at the OPD Medical Building at UCI on Nov. 17, 2017, plaintiff asked DR. E. PEREZ-LUGO if he would submit paperwork for more physical therapy. DR. E. PEREZ-LUGO then said: "At your age, there's not going to be much improvement." Plaintiff then responded: "Did the lengthy delay have anything to do with it too?" He responded: "Yes". Then plaintiff asked: "Can you submit paperwork for corrective surgery?" DR. E. PEREZ-LUGO then said: "I would, but I doubt that it would be approved, but I will submit paperwork for more physical therapy." DR. E. PEREZ-LUGO believed that plaintiff needed corrective surgery, but he refused to submit the paperwork. And he refused to submit the paperwork because of the cost of the procedure. The evidence to support this assertion is clear: Because on Form "DC4-669, the request for Pre-Approval of Health Care Services Form," the only factors that are listed to determine if the procedure is approved or not is: (1) Diagnosis; 2) Surgery/Procedure requested; 3) Estimate LOS; 4) Hospital cost; and 5) Physician cost; and 6) Total Estimated Cost. So the evidence is clear that the

"cost" was the primary factor, if not the only factor that was used to deny the needed corrective surgery.

**25.**     Defendant DR. ERRON CAMPBELL's decision to deny plaintiff more physical therapy sessions when it was determined by the physical therapist that plaintiff could benefit from more physical therapy sessions was reckless, and amounted to deliberate indifference, which left plaintiff with a hand that can't close fully, and a hand with limited functioning. The second joint of pinky finger can't bend; it sticks straight out; leaving plaintiff prone for further injury. On June 28, 2017 at the RMC in Lake Butler, Florida, plaintiff had an appointment with defendant  DR. FRANCIS ONG, and he took off the cast. He said that plaintiff would be getting physical therapy two times per week for eight weeks. Upon returning to UCI plaintiff relayed the message to defendant DR. E. PEREZ-LUGO. So likewise, DR. E. PEREZ-LUGO submitted paperwork for physical therapy for eight weeks, two times per week. But after the fourth sessions at the RMC on Sep. 26, 2017, the physical therapist Connie Spitzer, PTA said that unless more physical therapy is approved, today would be the last session. So plaintiff relayed the message to DR. E. PEREZ-LUGO, plaintiff's primary physician at UCI upon return from the RMC and two other times. The last time on Nov. 17, 2017 while having an appointment at the OPD Medical Building. It was then that DR. E. PEREZ-LUGO submitted the paperwork for plaintiff to receive more physical therapy, but it was denied. By Jan. 10, 2018, plaintiff had another medical appointment at the OPD Medical Building, but surprisingly, it was with another doctor named Dr. E.L. Toledo. He told plaintiff that the request for more physical therapy sessions recommended by DR. E. PEREZ-LUGO was not approved. Defendant DR. ERRON CAMPBELL is the one who has the authority to approve or deny physical therapy because he is the Regional Medical Director. Form DC4-702, The "Consultation Request/Consultant's Report Form" clearly says in bold print: **"No Procedure(s) may be performed without prior approval by the Regional Medical Director."** So the evidence is clear that DR. ERRON CAMPBELL denied the needed physical therapy that was necessary for plaintiff's recovery; because he is the Regional Medical Director.

**26.**     DR. ERRON CAMPBELL's "unwritten one-chance policy" of not approving corrective surgeries is reckless and irresponsible and amounts to deliberate indifference. Defendant DR. ERRON CAMPBELL's custom and practice of not approving corrective surgeries is evidence of his "unwritten one-chance policy." The evidence to establish this assertion is: 1) Plaintiff had an obvious need for corrective surgery, but yet not one of DR. ERRON CAMPBELL's subordinates put in a request for the needed corrective surgery. Not defendant DR. E. PEREZ-LUGO; nor did Dr. E.L. Toledo, and neither did Dr. J. Putney when she examined plaintiff's deformed hand on May 18, 2018. Defendant DR. FRANCIS ONG had an opportunity to recommend a corrective surgery, but he outright refused to meet with plaintiff after the last physical therapy session. DR. E. PEREZ-LUGO, and the physical therapist requested and recommended that plaintiff be seen by DR. FRANCIS ONG, but it hasn't happened. And 2) the most compelling evidence of this "one chance policy" is the comments made by nurse L. McClellan, RN on May 24, 2018 at the SWU Area Clinic at UCI. Plaintiff had gone on sick-call that day regarding the swelling and pain, and deformity of his right hand. Plaintiff told her that it's been over a year since the surgery and the hand is still swollen with limited motion of the fingers. Plaintiff asked her if it's possible that he could get corrective surgery. She replied: "No." Then plaintiff then asked: "You mean I have to live with this deformity for the rest of my life?" She replied: "Yes." "You know how they do it here, I'm just being honest." At this point, plaintiff was taking notes, on a journal, and he wrote what she said down immediately when he got to the dorm. And being that DR. ERRON CAMPBELL is the one who approves or denies corrective surgeries, than it follows that he is the one responsible for this practice and custom of this "one chance policy."

**27.**     Defendant DR. FRANCIS ONG as the attending physician who performed the surgery on plaintiff to repair his injured hand failed to re-attach the tendon, and place a splint on the tip of the little finger of plaintiff's right hand; this failure amounted to deliberate indifference which left plaintiff with a permanent "Right Dip Mallet Deformity." This deformity was noted on form DC4-702 by the physical therapist John Palmer at the RMC in Lake Butler, Florida on August 1, 2017. He said a splint should have been placed on the finger long ago. He put a splint on Plaintiff's finger

nevertheless, but by then, it was useless because too much time had elapsed. This type of deformity occurs when the tendon is detached. The "Operative Report" done by DR. FRANCIS ONG, clearly says that the extensor tendons were retracted, and the fracture site was cut with a power saw, and blade #15, and Tenotomy scissors were used to expose the fracture site. Upon Information and Belief, plaintiff believes the following facts to be true: DR. FRANCIS ONG who performed the surgery cut the tendon while using either the power saw and #15 blade, or with the Tenotomy Scissors. Eighty-four days after the fracture, new bone growth that started to form on the splintered bone of the comminuted overlapping fracture intermingled with the damaged surrounding tissue complicated matters. And while cutting away the bone, he cut the tendon. As a result, plaintiff is left with the Right Dip Mallet Deformity." Plaintiff did not have any "Right Dip Mallet Deformity" prior to the surgery as evidenced by Form DC4-683J that was completed by Nurse P. Shifflet, RN on Jan. 18, 2017 while plaintiff was at sick-call at the SWU A-Area Clinic. There was a question on this form: Deformity present? Nurse P. Shifflet marked the "No Box." Neither did Dr. Bichara mention any deformity during the x-ray consultation on Jan. 20, 2017. The evidence to establish that he failed to put on a splint is also clear: There is no doctor's order written on Form DC4-714B that indicate that a splint was ordered, neither is there a pass written allowing plaintiff to wear a splint. Neither does the "Surgical Patient Discharge Planning Summary" that was done on the date of the surgery of Mar. 30, 2017, list any instructions of wearing a splint.

28.   Defendant CENTURION OF FLORIDA, LLC's customs, practices, and policies and recklessness of its employees amounted to deliberate indifference to an obvious serious medical need. The evidence is clear that within CENTURION OF FLORIDA, LLC's business practices, there is a blatant  culture of non-compliance and deliberate indifference as exemplified by the following: a) on Jan. 5, 2017, defendant nurse JANE DOE I falsified form DC4-769 by writing that plaintiff had no medical complaints, and then failing to stamp the form with her name and job title stamp contributing to the delay of treatment causing further injury; b) Nurse JANE DOE I's failure to set-up an appointment to see a medical doctor regarding his swollen and painful hand on January 5, 2017, causing treatment to be delayed, thereby complicating the outcome of the surgery; c) On

January 5, 2017, JANE DOE I failed to complete the Form "DC4-683J, the Fracture/Dislocation/Sprain Protocol Form" regarding the injury thus contributing to the delay of treatment, thereby complicating the outcome of the surgery; d) nurse JANE DOE II's failure to submit the "Inmate Sick-call Request Form" for processing so plaintiff could receive medical treatment, thus, contributing to the delay of surgery, thereby causing an unsatisfactory result leaving plaintiff with a deformed hand; e) nurse JANE DOE II's failure to announce that she's on the confinement wings so that plaintiff and other inmates can request and submit the "Inmate Sick-call Request Form" to address their medical complaints. This failure contributed to the delay of treatment, thus, an unsatisfactory outcome of surgery; f) the nurse JANE DOE II's failure to pass out plaintiff's dose of Prozac for his depression from dates Jan. 6 through Jan. 12th 2017 while he was in AC confinement, thereby enhancing the symptoms of his depression due to the injury, leaving plaintiff in pain, causing emotional distress and mental anguish; g) nurse JANE DOE II's failure to complete form DC4-683J, the "Fracture / Dislocation / Sprain Protocol Form" regarding his injury, thus contributing to the delay of treatment, thereby complicating the surgery, resulting in a deformed hand, with limited functioning. H) Upon Information and Belief, plaintiff believes the following allegations to be true: nurse JANE DOE II, and nurse P. Shifflet threw away the "Inmate Sick-call Request Forms" that were submitted by plaintiff on dates Jan. 8th or Jan. 9th 2017, and date July 12, 2017, as these "Inmate Sick-call Request Forms" are not part of plaintiff's medical file. Plaintiff believes the forms were thrown away to (destroy or conceal the evidence that the medical complaints were addressed with them. By throwing away the forms, it contributed to the delay of treatment, thus, causing more damage and more pain and agony for plaintiff; i) Nurse L. McClellan RN falsified form "DC4-701" on date May 24, 2018 by writing on it that there was no signs of deformity, when she never even examined plaintiff's hand. She also wrote that Plaintiff didn't have any signs of being in pain when plaintiff actually was in pain, causing Dr. E.L. Toledo not to write plaintiff (another prescription) of Naproxen that plaintiff requested leaving plaintiff's hand swollen in pain; j) March 30, 2017, defendant DR. FRANCIS ONG failed to attach the tendon and then failing to use a splint on plaintiff's finger, resulting in a "Dip Mallet Deformity;" k) DR. FRANCIS

ONG's failure to follow-up with plaintiff after his final physical therapy session as requested by DR. E. PEREZ-LUGO and the physical therapist John Palmer, creating a miss opportunity for requesting a corrective surgery to repair the deformed hand, thereby leaving plaintiff with a permanent deformity; L) DR. ERRON CAMPBELL's failure to approve more physical therapy sessions after a request was submitted by DR. E. PEREZ-LUGO, and after it was noted by the physical therapist Connie Spitzer, PTA that plaintiff could benefit from more physical therapy; m) On Feb. 15, 2017 DR. FRANCIS ONG failed by allowing the surgery to be postponed without making a referral to another medical facility, especially considering that he rated the need for surgery as being urgent. Had he made a referral, plaintiff could have received the surgery sooner, thereby improving the chances of a satisfactory outcome. But he failed to make a referral and left plaintiff with a permanent "Dip Mallet Deformity, and an inability to make a closed fist. The failure to make the referral also contributed to the 84 day delay in plaintiff getting the surgery, thereby exposing plaintiff to risk of an unsuccessful surgery, which is exactly what happened as evidenced by the deformity itself and the inability to make a closed fist; n) DR. E. PEREZ-LUGO's failure to submit the necessary paperwork for a corrective surgery for the obvious deformity, thereby leaving plaintiff with a deformed hand causing embarrassment and emotional distress, and has enhanced symptoms of depression of which plaintiff is being treated for; o) On or about February 25, 2017, DR. E. PEREZ-LUGO failed to follow-up with scheduling after a week had passed, Plaintiff had told DR. E. PEREZ-LUGO on Feb. 15, 2017 that surgery was postponed til the following week, and he knew that the surgery was rated as urgent because he reviewed the chart as his signature indicates on Form DC4-701 for that date. So the failure to follow-up contributed to the delay of plaintiff receiving treatment, which ultimately caused the unsatisfactory result of the surgery, i.e. the "Dip Mallet Deformity,"; the shortening of the bone, and an inability to bend the second joint of the pinky finger leaving it prone to further injury. Related to the failure to follow-up was the failure to use a "Treatment Plan." Because there was no planning in coordinating the treatment between the various players involved, it contributed to the delay. This in turn contributed to the unsatisfactory result of the surgery, i.e. the "Dip Mallet Deformity," and an inability to have full functioning of the

hand. There is no "Treatment Plan" by UCI Medical to plan for any type of treatment of plaintiff's hand. And having a treatment plan is standard medical practice. All of the above infractions demonstrate a culture of non-compliance with CENTURION OF FLORIDA, LLC's custom and practices, and collectively, it amounts to deliberate indifference.

29.     The plaintiff would also like to add that since he lost the use of his right hand due to the lengthy 84 day delay in receiving the botched surgery, plaintiff is no longer employed at PRIDE Enterprises at the Furniture Factory at UCI as a supply clerk; a job that he has had from September 2013 up until the day of the injury on January 5, 2017. Due to the limitations of his right hand and the restrictions placed on him by the medical doctor of no-pulling, no-pushing and no-lifting anything over fifteen pounds, and the medical passes, plaintiff is no longer eligible to work at PRIDE Enterprises, due to the increased risk of being injured, and not being able to do the work which requires heavy lifting and pulling and pushing. This has also added to his depression. From the years plaintiff had worked at PRIDE Enterprises, he has netted on the average of $1456.80 annually. Plaintiff had plans of returning to the Furniture Factory, but after filing this current 1983 complaint and other grievances plaintiff was unexpectedly transferred to a Mental Health Unit at Wakulla C.I. Annex and placed in a Diversionary Treatment Unit. Plaintiff upon Information and Belief believes the following facts to be true: "Officials at UCI retaliated against plaintiff for filing this current 1983 civil rights complaint and other grievances, and had plaintiff transferred." As a result of the transfer, plaintiff has lost out on a rare paying job while being incarcerated in the FDC. (Plaintiff will establish the facts to support these allegation on a separate 1983 claim in the future.)

30.     The plaintiff would also like to add that since he has lost the use of his right hand, it has only intensified his symptoms of depression that he has been treated for since 1997. The depression has been heightened due to the fact that plaintiff can no longer do and enjoy the things he used to enjoy such as: throwing a football with a spiral; not being able to grip a tennis racket to play tennis anymore; not being able to grip and swing a bat to play soft-ball anymore; not being able to do certain exercises like gripping a pull-up bar to do pull-ups, and gaining excess weight as a result of an inactive life-style resulting in a higher risk of high blood pressure, and high cholesterol and heart

disease; not being able to defend himself in a violent environment of prison life; the added burden of not being able to use his dominant right hand to do simple things like wiping himself after a bowel movement, and holding a wash-cloth to bathe himself; plaintiff now clumsily drops things because of a weak grip; unable to pick-up small objects because of no functioning at all of the pinky finger - it sticks straight out and is prone to getting snagged on things causing further pain; plaintiff still has an inability to make a closed fist two years after the injury.

### V.   LEGAL CLAIMS

**31.**   Plaintiff re-alleges and incorporates by reference paragraphs 1-30.

**32.**   Defendant CENTURION OF FLORIDA, LLC's customs, practices, and policies and recklessness of its employee's led to deliberate indifference to an obvious serious medical need, constituted Cruel and Unusual Punishment.

**33.**   Defendant Dr. E. PEREZ-LUGO's deliberate indifference to Plaintiff's serious medical need, violated Plaintiff's civil rights and constituted Cruel and Unusual Punishment in violation of the Eight Amendment to the U.S. Constitution.

**34.**   Defendant Dr. ERRON CAMPBELL's deliberate indifference to Plaintiff's serious medical need, violated Plaintiff's civil rights and constituted Cruel and Unusual Punishment in violation of the Eight Amendment to the U.S. Constitution.

**35.**   Defendant Dr. FRANCIS ONG's deliberate indifference to Plaintiff's serious medical need, violated Plaintiff's civil rights and constituted Cruel and Unusual Punishment in violation of the Eight Amendment to the U.S. Constitution.

**36.**   Defendant JANE DOE I's deliberate indifference to Plaintiff's serious medical need, violated Plaintiff's civil rights and constituted Cruel and Unusual Punishment in violation of the Eight Amendment to the U.S. Constitution.

**37.**   Defendant JANE DOE II's deliberate indifference to Plaintiff's serious medical need, violated Plaintiff's civil rights and constituted Cruel and Unusual Punishment in violation of the Eight Amendment to the U.S. Constitution.

## VI. **PRAYER FOR RELIEF**

**38.**    Plaintiff has no adequate remedy at law. WHEREFORE, plaintiff respectfully prays that this court enter judgment granting plaintiff the following relief:

**39.**    A declaration that the acts and omissions described herein violated plaintiff's rights under the Constitution and laws of the United States.

**40.**    Enter a permanent injunction enjoining Defendants CENTURION OF FLORIDA, LLC, and DR. ERRON CAMPBELL, and their successors in office, agents, and employees, and all other persons in concert therewith, to provide plaintiff with the necessary surgery to properly repair the damage caused by defendant's recklessness, if at all possible.

**41.**    Make it mandatory for the confinement nurse to loudly announce his or her presence on the confinement wings every morning, and ask every inmate if they have any medical issues on a daily basis.

**42.**    If an inmate feels that he needs some type of surgical procedure, CENTURION OF FLORIDA, LLC will allow the inmate to get a second opinion from an independent physician other than CENTURION OF FLORIDA, LLC's. And this must be communicated to the CENTURION OF FLORIDA, LLC's Regional and Statewide Medical Directors.

**43.**    Award plaintiff compensatory (including pain and suffering and mental distress), and punitive damages against defendants CENTURION OF FLORIDA, LLC, DR. ERRON CAMPBELL, DR. FRANCIS ONG, DR. E. PEREZ-LUGO, Nurse JANE DOE I, and Nurse JANE DOE II, jointly and severally.

**44.**    Award attorney's fees, expenses and cost of suit, and\

**45.**    Award such other relief as the Court may deem equitable and just under the circumstances.

**46.**    A jury trial on all issues triable by jury.

Respectfully submitted,

_Wilbert R. Hurst_           _January 24, 2019_
Wilbert R. Hurst, U22029                    Date

18

## DEFENDANT'S ADDRESSES

Dr. E. Perez-Lugo
Union Correctional Institution
Medical Department
25636 N.E. SR-16
Raiford, FL 32083-0221

Nurse JANE DOE I
Union Correctional Institution
Medical Department
25636 N.E. SR-16
Raiford, FL 32083-0221

Nurse JANE DOE II
Union Correctional Institution
Medical Department
25636 N.E. SR-16
Raiford, FL 32083-0221

Dr. Francis Ong, MD
Regional & Medical Center
Plastic Surgery Dept.
7765 S. CR 231
Lake Butler, FL 32054-0628

Dr. Erron Campbell
Regional Medical Director
c/o CENTURION OF FLORIDA, LLC
1203 Governor's Square Blvd.
Suite 600
Tallahassee, FL 32301

CENTURION OF FLORIDA, LLC
1203 Governor's Square Blvd.
Suite 600
Tallahassee, FL 32301

## **Declaration of Wilbert Hurst**

I, Wilbert Hurst, pursuant to 28 U.S.C. § 1746, make this unsworn declaration under Penalty of Perjury, DECLARE that the statements in the foregoing complaint are true, except as to those matters alleged on information and belief, as to those, I believe those to be true.

_____     January 24, 2019
Wilbert R. Hurst, U22029                                    Date


## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on ___January 24___, 2019, I filed the foregoing document with the Clerk of Court, United States District Court, Northern District of Florida, 111 North Adams St. Suite 322, Tallahassee, FL 32301-7730, through institutional legal mail staff to be date stamped and mailed through the U.S. Postal Service.

_____                    January 24, 2019
Wilbert R. Hurst, U22029                                                     Date
Wakulla Corr. Inst. Annex
110 Melaleuca Drive
Crawfordville, Florida 32327-4463

Wilbert R. Hurst, U22029
Wakulla Correctional Institution (Annex)
#10 Melaleuca Dr.
Crawfordville, FL 32327



Legal Mail

United States District Court
Northern District of Florida
Office Of The Clerk
111 North Adams St., Suite 322
Tallahassee, FL 32301-7717

LEGAL MAIL
Provided to
Wakulla CI

JAN 2 4 2019

FOR MAILING _____ WH