91823-10

IN THE UNITED STATED DISTRICT COURT FOR
THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT R. HURST,
INMATE #U22029

        CASE NO. 4:18-cv-00237-RH-CAS

    Plaintiff,

v.

CENTRUION OF FLORIDA, LLC, an
out-of-state corporation registered and
doing business in Florida; DR.
FRANCIS ONG, in his individual and
official capacity; DR. E. PEREZ-LUGO,
in his individual and official capacity;
DR. ERRON CAMPBELL, in his
individual and official capacity; Nurse
JANE DOE I in her individual capacity,
and Nurse JANE DOE II in her
individual capacity.

    Defendants
    _____/

## DEFENDANT, FRANCIS D. ONG, M.D.'S, MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED CIVIL RIGHTS COMPLAINT AND SUPPORTING MEMORANDUM OF LAW

The Defendant, Francis D. Ong, M.D. ("Defendant" or "Dr. Ong"), by and through his undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby applies to the Court for an Order seeking dismissal of this action. The Defendant submits that the Plaintiff, Wilbert R. Hurst ("Plaintiff" or "Hurst") has failed to plead a valid cause of action upon which relief may be granted and as such, a dismissal is warranted. In support thereof, the Defendant states as follows:

1. On January 28, 2019, Plaintiff filed his Third Amended Civil Rights Complaint, alleging entitlement to both monetary damages and injunctive relief in asserting a cause of action under 42 U.S.C. § 1983 for several supposed violations of his civil rights guaranteed by the Eighth Amendment to the United States Constitution. See Doc. 36. Dr. Ong was served with this Third Amended Complaint on April 24, 2019. See Doc. 42.

2. Generally, Plaintiff seeks to recover from Dr. Ong and several other defendants for injuries he says resulted from their "deliberate indifference" in treating, or failing to treat, a broken right hand suffered during a January 5, 2017 fight with another inmate while incarcerated at Union Correctional Institution ("UCI") in Raiford, Florida. See Doc. 36, ¶¶ 11; 32-37. As Mr. Hurst details in his Third Amended Complaint, his underlying injury was a "displaced overlapping comminuted fracture of the right 5th metacarpal neck," requiring surgery. See id., ¶ 16.

3. Dr. Ong is implicated in the case by way of his role as the operating surgeon. See id., ¶ 7. Mr. Hurst claims that Dr. Ong acted with "deliberate indifference" towards him in several different respects. See generally id. First, he alleges that Dr. Ong "recklessly postponed [his] surgery," which was originally scheduled to move forward on February 16, 2017, "without making any arrangements for plaintiff to get his surgery elsewhere." See id., ¶ 16. Next, he alleges that the surgery itself, which again took place on March 30, 2017, was defectively done, in that Dr. Ong "failed to re-attach [a] tendon, and place a splint on the tip of the little finger of plaintiff's right hand," which left him "with a permanent 'Right Dip Mallet Deformity.'" See id., ¶ 27. Finally, he alleges that

Dr. Ong failed "to follow-up with plaintiff after his final physical therapy session as requested by Dr. E. Perez-Lugo and the physical therapist John Palmer, creating a miss [sic] opportunity for requesting a corrective surgery to repair the deformed hand, thereby leaving plaintiff with a permanent deformity." See id., ¶ 28.

4. Ultimately, Plaintiff alleges that Dr. Ong's behavior constituted "deliberate indifference to [his] serious medical need, violated [his] civil rights[,] and constituted Cruel and Unusual Punishment in violation of the Eight [sic] Amendment to the U.S. Constitution." See id., at ¶ 35.

5. Plaintiff's claim against Dr. Ong should be dismissed because it is grounded in medical negligence and he has failed to comply with the mandatory conditions precedent stated in Chapter 766 of the Florida Statutes. See generally Chapter 766, Fla. Stat. While these rules very strictly require him to, in part, provide Dr. Ong with a notice of intent letter and expert affidavit corroborating the validity of his claim before filing suit, he did neither. Id. Because his cause of action under Chapter 766 would have accrued as of the date of his March 30, 2017 surgery, at which point he alleges he knew the surgery was defectively performed, his failure to comply with these mandatory requirements before the March 30, 2019 expiration of the applicable limitations period warrants dismissal as well.

6. Plaintiff's claim should be dismissed because, other than inserting the words "reckless" or "deliberate indifference" several times in describing Dr. Ong's conduct throughout the Third Amended Complaint, the facts as alleged are entirely insufficient to establish a valid cause of action under 42 U.S.C. § 1983.

7.      Plaintiff's 42 U.S.C. § 1983 claim should also be dismissed because Dr. Ong has qualified immunity and the Plaintiff has failed to establish that Dr. Ong violated any of his established rights.

8.      Finally, Plaintiff's claim for injunctive relief should be dismissed because he seeks to recover compensatory and other damages from Dr. Ong, which would, if valid, constitute an adequate remedy at law.

## MEMORANDUM OF LAW IN SUPPORT OF DEFFENDANT'S MOTION TO DISMISS

### I. Motion to Dismiss Standard of Review

"To survive a motion to dismiss [under rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A complaint fails to state a claim when it does not include "enough factual matter" to "give the defendant fair notice of what the. . . claim is and the grounds upon which it rests[.]" Twombly, 550 U.S. at 555-56; see also Iqbal, 556 U.S. at 678 (explaining that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do no suffice.") (citing Twombly, 550 U.S. at 555).

Pleadings must contain "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). To meet the plausibility standard, a plaintiff must plead "factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citation omitted). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1261 (11th Cir. 2009) (citing Iqbal, 556 U.S. at 678), abrogated on other grounds by Mohamad v. Palestinian Auth., 556 U.S. 449 (2012).

In determining whether Plaintiff's claim is frivolous or fails to state a cause of action, all factual allegations must be viewed as true. Brown v. Johnson, 387 F.3d 1344, 47 (11th Cir. 2004). "However, the court need not accept inferences drawn by [plaintiffs] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." In re Delta/AirTran Baggage Fee Antitrust Litig., 733 F.Supp. 2d 1348, 1358 (N.D. Ga. 2010). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. at 679.

Additionally, in determining whether the plaintiff has properly stated a claim for relief, the court is confined to what is presented within the four corners of the complaint. See, e.g., Garcia v. Copenhaver, Bell & Assocs., 104 F. 3d 1256, 1266 n. 11 (11th Cir. 1997) ("Under 12(b)(6), whether a plaintiff failed to state a claim upon which relief can be granted must be ascertained from the face of the complaint").

CASE NO. 4:18-cv-00237-RH-CAS

## II. Argument and Citations to Authority

### A. *The Third Amended Complaint must be dismissed because Plaintiff failed to comply with the appropriate presuit and procedural requirements of Chapter 766, Florida Statutes.*

Importantly, Plaintiff's claims against Dr. Ong are subject to the mandatory presuit requirements of Chapter 766 of the Florida Statutes. See generally §§ 766.101–766.316, Fla. Stat. Section 766.106(1)(a) defines a "claim for medical negligence" or "claim for medical malpractice" as a claim arising out of the rendering of, or the failure to render, medical care or services. § 766.106(1)(a), Fla. Stat. (2016). In his Third Amended Complaint, the Plaintiff here asserts here that Dr. Ong provided him inadequate medical care before, during and after his March 30, 2017 operation. See generally Doc. 36. Even if he only claimed that Dr. Ong's treatment was lacking with respect to the surgery itself, this alone would be sufficient to trigger presuit protections. See Silva v. Sw. Florida Blood Bank, Inc., 601 So. 2d 1184, 1187 (Fla. 1992) ("A claim for negligence is subject to Chapter 766's [presuit] requirements if the wrongful act is directly related to the improper application of medical services and the use of professional judgment or skill.").

The first presuit requirement at issue here is laid out in section 766.106(2)(a), which provides that "prior to filing a complaint for medical negligence, a claimant shall notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence." § 766.106(2)(a). Here, Mr. Hurst did not do so, which is problematic since the purpose of the requirement is to allow a potential defendant to investigate a prospective claim. University of Miami v. Wilson, 948 So. 2d

- 6 -

774 (Fla. 3d DCA 2006). As a direct result of the fact that no Notice of Intent was ever filed, Dr. Ong has been precluded from engaging in any investigation of his own to determine if there is any validity to Plaintiff's claim.

As crucial as it is that a defendant have the opportunity to investigate claims potentially forthcoming against him, section 766.203(2) underscores the Legislature's emphasis on this presuit investigation for <u>both</u> parties. That section specifically requires potential plaintiffs to conduct an investigation themselves, in order to "ascertain whether there are reasonable grounds to believe that a) the Defendant was negligent in the care or treatment of the claimant; and b) such negligence resulted in injury to the claimant." § 766.203(2), Fla. Stat. To certify that such an investigation has taken place, the statute requires:

> Corroboration of reasonable grounds to initiate medical negligence shall be provided by the claimant's submission of a verified written medical expert opinion as defined in s. 766.202(6), at the time the notice of intent to initiate litigation is mailed, which statement shall corroborate reasonable grounds to support the claim of medical negligence.

§ 766.203(2), Fla. Stat. While the presuit procedures set forth in Chapter 766—as applicable here, in sections 766.106 and 766.203—are not intended to deny access to the courts, they are "more than mere technicalities," and must be followed. <u>Largie v. Gregorian</u>, 913 So. 2d 635, 638 (Fla. 3d DCA 2005). <u>See also</u> <u>Correa v. Robertson</u>, 693 So. 2d 619, 621 (Fla. 2d DCA 1997); <u>Apostolico v. Orlando Reg'l Health Care Sys., Inc.</u>, 871 So. 2d 283, 286 (Fla. 5th DCA 2004). To be clear, if the required presuit notice and corroborating affidavit are not provided, a complaint can be properly dismissed. <u>Goldfarb v. Urciuoli</u>, 858 So. 2d 397 (Fla. 1st DCA 2003).

Presuit aside, the Plaintiff's claim here also warrants dismissal for his failure to comply with one more procedural requirement, this time stated in section 766.104(1). In pertinent part, that subsection mandates the following:

> [n]o action shall be filed for personal injury or wrongful death arising out of medical negligence, whether in tort or contract, unless the attorney filing the action has made a reasonable investigation as permitted by the circumstances to determine that there are grounds for good faith belief that there has been negligence in the care or treatment of the claimant. The complaint or initial pleading shall contain a certificate of counsel certifying that such reasonable investigation gave rise to a good faith belief that grounds exist for an action against each named defendant.

§ 766.104(1), Fla. Stat. Because Plaintiff's Third Amended Complaint is devoid of any certification that a reasonable investigation was performed, his claim fails as a matter of law and should be dismissed.

### B. *Dismissal is also mandated because the Plaintiff failed to meet the two-year statute of limitation applicable to medical malpractice actions in Florida.*

Plaintiff's claims should also be dismissed for his failure to adhere to the applicable statute of limitation, which would have required him to send Dr. Ong a Notice of Intent and corroborating expert affidavit within two years of March 30, 2017—the point he alleges multiple times in the Third Amended Complaint that he was aware of there being something wrong with the surgery that day. See generally Doc. 36.

Under section 95.11(4)(b) of the Florida Statutes, a claimant has two years from the accrual of the cause of action to commence an action for medical malpractice. Tanner v. Hartog, 618 So. 2d 177 (Fla. 1993). That section provides, in pertinent part, that "[a]n action for medical malpractice shall be commenced within 2 years from the time the incident giving rise to the action occurred or within 2 years from the time the incident is

discovered, or should have been discovered with the exercise of due diligence. . ." § 95.114(4)(b), Fla. Stat. Because Plaintiff failed to do so here, his claim should be dismissed.

### C. *Dismissal is mandated because Plaintiff fails to state a cause of action upon which relief may be granted under 42 U.S.C. § 1983.*

Title 42 U.S.C. § 1983 imposes liability on one who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983. A Section 1983 complainant must support his claim with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995). To state a cause of action under Section 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant. Murphy v. Kellar, 950 F. 2d 290, 292 (5th Cir. 1992); Jacquez v. Procunier, 801 F. 2d 789, 793 (5th Cir. 1986).

To articulate a claim under Section 1983, a plaintiff must allege that: (1) a defendant deprived him of a right secured under the Constitution or federal law; and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998). Mr. Hurst's claim here fails on the first element, before the second is even considered, since he is unable to establish that Dr. Ong deprived him of a right guaranteed by the Constitution or laws of the United States. See Baker v. McCollan, 443 U.S. 137, 139 (1979); Thomas v. Sams, 734 F.2d 185, 191 (5th Cir. 1984), cert. denied, 472 U.S. 1017 (1985). The constitutional rights of a convicted state

prisoner spring from the Eighth Amendment's prohibition against cruel and unusual punishment, which requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429 U.S. 97, 103-105 (1976).

In order to set forth a cognizable claim in this context, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. Id. at 104 (emphasis added). Evidence of the first, objective component, an inmate's "serious medical need," includes the existence of "chronic and substantial pain." Brock v. Wright, 315 F.3d 158, 162 (2d Cir. 2003). Evidence of the second, subjective, component requires an official to both know facts that could have shown the prisoner's health was in danger and to actually believe the prisoner's health is in danger. Farmer, 511 U.S. at 837 ("[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

Although Mr. Hurst took care here to insert the words "deliberate indifference" several times throughout the Third Amended Complaint, he does not state sufficient facts to support a valid claim under section 1983. "Facts underlying a claim of 'deliberate indifference' must clearly evince the medical need in question and the alleged official dereliction." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing Woodall v. Foti, 648 F.2d 268 (5th Cir. 1981)) (emphasis in original). "The legal conclusion of 'deliberate indifference,' therefore, must rest on facts clearly evincing 'wanton' actions on the part of the defendants." Id.

To be clear, allegations of mere negligence, neglect, or medical malpractice on the part of a physician do not state an actionable claim under Section 1983. Varnado, 920 F.2d at 321 (citing Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1979)). As the Supreme Court noted in Gamble, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." 429 U.S. at 106.

In the instant action, the only allegations against Dr. Ong that could even possibly be considered in the realm of "deliberate indifference" are those accusing him of knowingly cancelling the Plaintiff's original surgery, after it had been scheduled to occur on February 16, 2017, the day after they first met for consultation. Allegations that Dr. Ong performed a defective surgery when it did finally proceed, or that he failed to follow up with the Plaintiff after the fact, are substantively similar to the "medical malpractice"-type allegations discussed by the U.S. Supreme Court in Gamble, and have been dismissed by lower courts time and time again. With respect to the surgery itself, unsuccessful medical treatment does not give rise to a Section 1983 cause of action. Varnado v. Lynaugh, 920 F.2d 320, 321 (1991); Johnson, 759 F.2d at 1238. Nor does a disagreement between an inmate and a prison physician concerning the appropriateness of certain medical care. See id. Since claims that additional forms of treatment should have been utilized are similarly inadequate for purposes of Section 1983 (Gamble, 429 U.S. at 107), Mr. Hurst's assertions that Dr. Ong failed "to follow-up with plaintiff after his final physical therapy session" (Doc. 36, ¶ 28) described above, are similarly deficient. These decisions are considered matters of medical judgment, and do not constitute cruel and unusual punishment.

Even on the one claim that could—theoretically—be viable, Mr. Hurst's assertion Dr. Ong intentionally delayed Mr. Hurst's surgery fails as a matter of law, since Dr. Ong's alleged actions do not rise to the level of wanton conduct required to state a claim for "deliberate indifference." In 1983, the U.S. Supreme Court discussed the definition of "wanton" as follows:

> Wanton means reckless—without regard to the rights of others. . . Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure

Smith v. Wade, 461 U.S. 30, 39 (1983).

In his own words, Mr. Hurst says that "[t]he plausible reason for the postponement of the February 16, 2017 surgery was not having enough plastic surgeons at the RMC, to do the caseload of surgeries; as a result, plaintiff's surgery was postponed." Doc. 36, ¶ 16. Certainly these allegations do not equate to wantonness on the part of Dr. Ong. Because Mr. Hurst is unable to allege sufficient facts to establish that Dr. Ong acted with any sort of "deliberate indifference" towards him or his medical needs, his section 1983 claims warrant dismissal on this ground as well. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (holding that in civil rights actions "a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

### D. *The Third Amended Complaint should also be dismissed because Dr. Ong has qualified immunity from Plaintiff's claims.*

The defense of qualified immunity should be resolved at the earliest stage of litigation, and therefore, is proper for a district court to determine on a motion to dismiss. Gonzalez v. Reno, 325 F.3d 1228, 1233 (11th Cir. 2003). "If a defendant asserts a qualified immunity defense in a Rule 12(b)(6) motion to dismiss, the court should grant qualified immunity if the plaintiff's complaint fails to allege a violation of a clearly established constitutional or statutory right." Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F. 3d 1282, 1300 (11th Cir. 2007) (citing Williams v. Ala. State Univ., 102 F. 3d at 1182).

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). This immunity balances the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation when they perform their duties reasonably. Id. It does not, however, protect an official if they know or reasonably should know that their actions violate a plaintiff's constitutional rights. Holmes v. Kucynda, 321 F. 3d 1069, 1077 (11th Cir. 2003). But, it does shield from liability "all but the plainly incompetent or one who is knowingly violating the federal law." Lee v. Ferraro, 284 F. 3d 1188, 1194 (11th Cir. 2002).

In order for government officials to enjoy qualified immunity, they must first establish that they were acting within the scope of their discretionary authority when the alleged wrongful acts occurred. Id. Discretionary job functions involve judgments that "almost inevitably are influenced by the decisionmaker's experiences, values, and emotions." Harlow v. Fitzgerald, 457 U.S. at 816-818. In the instant case, Defendant was acting in the scope of his discretionary authority when he was providing medical treatment to Plaintiff.

Because it is alleged by implication that Dr. Ong was acting within his discretionary authority, the burden is on Plaintiff to demonstrate that qualified immunity is inappropriate. Id. The U.S. Supreme Court created a two-part analysis to determine whether qualified immunity is appropriate. See Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). The threshold question is whether the alleged facts demonstrate that Defendant violated any constitutional rights of the Plaintiff. Gonzalez, 325 F.3d at 1234. For the same reasons laid out in the above discussion of his section 1983 claim, Mr. Hurst has failed to sufficiently allege that Dr. Ong violated any constitutional rights that he maintained. Again, mere conclusory allegations are insufficient to satisfy the deliberate indifference standard required to establish a violation of Mr. Hurst's Eighth Amendment rights.

Even if a constitutional violation were sufficiently alleged, however, the final step of the qualified immunity analysis is whether the right was "clearly established." Id. Whether a right is clearly established depends on whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted. Saucier,

533 U.S. at 202. Dr. Ong is entitled to immunity "unless, at the time of the incident, the preexisting law dictates, that is, truly compels, the conclusion for all reasonable similarly situated public officials that what [a] Defendant was doing violated [a] Plaintiff's federal rights in the circumstances." Marsh v. Butler Cnty., Ala., 268 F.3d 1014, 1030–31 (11th Cir. 2001) (en banc) (alteration adopted) (quotation marks omitted), abrogated on other grounds by Twombly, 550 U.S. 544. Clearly, the facts of this case do not compel the conclusion that Dr. Ong knowingly violated Plaintiff's Eighth Amendment rights. There are no facts in the Third Amended Complaint that establish that Defendant was unreasonable in his treatment of Plaintiff, and certainly none that show Dr. Ong was deliberately ignoring Plaintiff's medical condition. Dismissal is warranted for qualified immunity purposes as well.

### E. *Plaintiff also fails to state a claim for injunctive relief, warranting dismissal.*

In addition to compensatory and punitive damages, Plaintiff also seeks injunctive relief. Specifically, he seeks "necessary surgery to properly repair the damage caused by defendant's recklessness, if at all possible." However, injunctive relief requires a showing that irreparable injury will occur unless the injunction is issued. Shatel Corp. v. Mao Ta Lumbar & Yacht Corp., 697 F.2d 1352, 1254-55 (11th Cir. 1983). Plaintiff is unable to do so here. The injury must not be remote or speculative, but actual and imminent. Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir.1990) (quoting Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 973 (2d Cir.1989)).

CASE NO. 4:18-cv-00237-RH-CAS

A plaintiff seeking injunctive relief is also required to show that he lacks a complete and adequate remedy at law. Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743 (2010). Here, Plaintiff cannot establish that he has no adequate remedy at law, which he specifically claims throughout the entire remainder of the Third Amended Complaint. As such, Plaintiff's request for injunctive relief is subject to dismissal.

WHEREFORE, Defendant, Francis D. Ong, M.D., requests this Court enter an Order Dismissing Plaintiff's cause of action against him.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a copy hereof has been electronically filed through CM/ECF to Mary Ann Couch, macouch@bradley.com; Robert Craig Mayfield, cmayfield@babc.com; and furnished by United States Mail to Wilbert R. Hurst, U22029, Wakulla Correctional Institution Annex, 100 Melaleuca Drive, Crawfordville, Florida 32327; on this 24th day of June, 2019.

/s/ Richard E. Ramsey
Richard E. Ramsey, Esquire
Florida Bar No. 715026
Wicker Smith O'Hara McCoy & Ford, P.A.
Attorneys for Francis D. Ong, M.D.
50 N. Laura St., Suite 2700
Jacksonville, FL   32202
Phone: (904) 355-0225
Fax: (904) 355-0226
JAXcrtpleadings@wickersmith.com