IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

*LEGAL MAIL*
*Provided to*
*Wakulla CI*

*APR 2 8 2020*

*FOR MAILING*

**WILBERT R. HURST,**
**INMATE # U22029**
Plaintiff,

v.                                          Case No.: 4:18-cv-00237-RH/MAF

**CENTURION OF FLORIDA, LLC, et**
**al,**
Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANTS CENTURION OF FLORIDA, LLC'S, DR. E. PEREZ-LUGO'S, AND DR. ERRON CAMPBELL'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, Plaintiff **WILBERT R. HURST**, *pro se* and submits this Plaintiff's

Brief, in Response to Defendant's Motion for Summary Judgment.

## I.   INTRODUCTION

On March 27, 2020, defendants filed a Motion for Summary Judgment. Plaintiff submits

this brief in response that the defendants' motion be denied. Defendant's have failed to

demonstrate that summary judgment is appropriate as a matter of law. i.e. (1) Plaintiff's claim of

inadequate medical care is cognizable under federal law; (2) defendants are liable for their failure

to provide adequate medical care; and (3) material facts remain in genuine dispute for resolution

at trial.

FILED USDC FLND TL
MAY 4 '20 PM4:11

1

## STATEMENT OF THE FACTS

On January 05, 2017, Plaintiff suffered a displaced overlapping comminuted fracture of the right metacarpal neck (broken finger) as a result of a fight with another inmate while at Union Correctional Institution in Raiford, Florida.

Plaintiff was escorted to the nurse for a pre-confinement health/medical evaluation that same day of January 5, 2017. Plaintiff notified the nurse that he believed his hand was broken because it was swollen and in pain from a fight.  The nurse refused to provide any medical care, and then falsified the medical record that plaintiff offered no medical complaints. (This nurse is referred to as JANE DOE I on the Third Amended Complaint)(See Declaration, Exhibit #1)

From the pre-confinement health evaluation, Plaintiff was escorted to administrative confinement where Plaintiff immediately asked for an inmate sick-call request form. The officer said that a sick-call request form can only be gotten from the nurse. Plaintiff did not know what time the nurse came around. But Plaintiff contacted the nurse on or around January 8th or 10th as she was making her medication rounds.  Plaintiff told her he needed a sick-call request form for a hand injury. Plaintiff showed her his hand. The nurse gave plaintiff a sick-call request form to fill out and plaintiff filled it out and gave it back to the nurse. But Plaintiff was never called for sick-call and did not receive any medical treatment while he was housed in administrative confinement. The nurse never processed the sick-call request; she never gave plaintiff the pink copy of the inmate sick-call request, so now there is no evidence the sick-call request was filled out because the nurse never placed the original copy in plaintiff's medical chart. (See Declaration Exhibit #2)

On January 13, 2017, Plaintiff was released from administrative confinement, and submitted another inmate sick-call request form. (See Exhibit #3)

On January 18, 2017, Plaintiff was seen by Nurse Shifflet. (She completed the Fracture / Dislocation / Sprain Protocol Form). And she noted on this form that there was no deformity, but just swelling and pain. (See Form DC4-683J, Exhibit #4) She scheduled x-rays of Plaintiff's hand.

On January 20, 2017, Plaintiff was seen by Dr. Bichara and the x-rays, once taken, revealed an "acute comminuted displaced fracture present in the distal fifth metacarpal" with tissue swelling. Again, the x-rays did not show any dip mallet deformity (See Exhibit #5)

On January 20, 2017, Dr. Bichara scheduled an appointment with a plastic surgeon at the Reception and Medical Center (RMC) in Lake Butler, Florida. (See Form DC4-701, Exhibit #6)

On February 13, 2017, Plaintiff, overcome with impatience, filed another sick-call request form in an attempt to inquire as to why he had not yet received his much needed surgery.

On February 15, 2017, Plaintiff was transferred to the RMC. Plaintiff was seen by defendant DR. FRANCIS ONG. DR. FRANCIS ONG took more x-rays, and they revealed an overlapping comminuted displaced fracture of the distal 5th metacarpal neck with swelling. No dip mallet deformity was present. (See Exhibit #7)

DR. FRANCIS ONG went over the x-rays with plaintiff. He told plaintiff that surgery was scheduled for February 16, 2017, (the next day). DR. FRANCIS ONG had Plaintiff sign the consent for surgical procedure form. DR. FRANCIS ONG signed the form as well and wrote on top of the form: "URGENT FOR SURGERY TOMORROW FEBRUARY 16, 2017." (See Exhibit #8)

About an hour later, one of the transport officers relayed the message that plaintiff's surgery would be postponed for the following week. (presumably Thursday February 23, 2017, because DR. FRANCIS ONG only performed surgeries on Thursdays.)(See Answer to Interrogatory #4, Exhibit #9).

Plaintiff relayed the message to DR. E. PEREZ-LUGO. upon his return from RMC. DR. E. PEREZ-LUGO signed off on Plaintiff's chart indicating that he reviewed it. (See Exhibit #10)

On February 28, 2017, after more than a week's time elapsed without Plaintiff being transported to RMC for surgery, Plaintiff submitted another inmate sick-call request form. (See Exhibit #11(a) and 11(b), Form DC4-698A).

On March 1, 2017 Plaintiff submitted an inmate request form to medical at Union Correctional Institution to inquire as to why he had yet to receive his surgery. (See Exhibit #12, Form DC6-236).

On March 7, 2017, Plaintiff filed an informal grievance because of the lengthy delay in receiving his surgery. (See Exhibit #13, Form DC6-236).

On March 30, 2017, Plaintiff finally received the surgery. He was transported to RMC and DR. FRANCIS ONG performed the surgery 84 days after the date of injury, January 05, 2017. (See Exhibit #14)

The record is clear that Plaintiff placed CENTURION OF FLORIDA, LLC medical officials on notice time and time again, but there was still a delay of 84 days from the date of injury, (January 5, 2017) and the date of surgery (March 30, 2017).

On June 28, 2017, after a few follow-up appointments, DR. FRANCIS ONG removed Plaintiff's cast. At this time, Plaintiff's hand remained very swollen. (See Exhibit #15 Journal). DR. FRANCIS ONG recommended physical therapy sessions twice a week for eight weeks.

On July 12, 2017, Plaintiff went on sick-call and registered a complaint about the swelling and the Mallet Dip Deformity. Nurse Shifflet was the nurse on duty to which Plaintiff reported these two issues. Nurse Shifflet responded by yelling and the plaintiff and telling him to "stop complaining."

Plaintiff recorded the incident in his journal; (date of incident: July 12, 2017). For some unknown reason, the sick-call request is not in my chart. The entry in Plaintiff's journal reads: "Went on sick-call about my hand. Pass denied for renewal. I told nurse my hand is still swollen. Showed her my hand." (See Journal Entry, Exhibit #15).

On August 1, 2017, Plaintiff was transported to physical therapy for his initial P.T. treatment and evaluation. The physical therapist asked about the "Dip Mallet Deformity," and made note of it in his consultation report. (See Exhibit #16) Plaintiff had physical therapy treatments on three other occasions. i.e. Sep. 1st, 21st, & 26th, 2017. (See journal entry, Exhibit #15) (See Exhibit #'s 17(a)-17(c)).

On September 28, 2017, Plaintiff told DR. E. PEREZ-LUGO that more physical therapy was needed.

On November 17, 2017 Plaintiff had his final appointment with DR. E. PEREZ-LUGO. Plaintiff made inquiry about more physical therapy and corrective surgery. He said he would submit the paperwork for more physical therapy, but not corrective surgery. He also sent a consultation request to DR. FRANCIS ONG asking him to: "please evaluate for further recommendation." (See Exhibit #18).

On January 10, 2018, Plaintiff met with Dr. Toledo for the first time. Dr. Toledo told the Plaintiff that more physical therapy was denied by CENTURION OF FLORIDA, LLC. Dr. Toledo reviewed Plaintiff's x-rays and explained that the right pinky finger is deformed now

because it healed wrong following the surgery. He explained that the finger was not aligned correctly and the knuckle was too low. Dr. Toledo told Plaintiff that the finger would have to be re-broken and another surgery performed. The doctor showed Plaintiff the calcium build-up and explained that the surgery was unsuccessful because there was too much of a delay between the time of injury and the time of surgery. Dr. Toledo told Plaintiff that he would submit his recommendation and follow-up with Plaintiff at a later date. (See Exhibit #15, notes from journal)(See declaration, Exhibit #19).

On February 12, 2018, Plaintiff initiated the formal grievance process of the FDC because of CENTURION OF FLORIDA, LLC's refusal to provide corrective surgery. It was denied by DR. E. PEREZ-LUGO, Chief Health Officer at Union Correctional Institution and the Assistant Warden. (See Exhibit #20).

Plaintiff thereafter exhausted all administrative remedies, and then he timely filed his § 1983 Civil Rights Complaint alleging the violation of his Eighth Amendment Constitutional Rights. Plaintiff paid the $400.00 filing fee by check.

The Defendant's filed their answer and motion to dismiss which was denied by this Honorable Court. The parties completed discovery, and the defendants filed a motion for summary judgment on March 27, 2020.

## ISSUES IN DISPUTE

Defendants propose several theories to dispute their liability: First the insinuate that defendants were not deliberately indifferent because there was no proof of gross incompetence by a medical provider that caused injury to the plaintiff.

Second, they contend that plaintiff's claims against Centurion defendants must be dismissed because Plaintiff has offered no evidence that the alleged delay caused him to suffer substantial harm.

Third, the defendant claims that Plaintiff has not met his burden to show Centurion defendants acted with deliberate indifference to his medical needs because he received continuous and ongoing treatment for his right hand.

Fourth, defendants assert that DR. E. PEREZ-LUGO did not act with deliberate indifference towards Plaintiff's medical needs.

Fifth, defendants assert that DR. ERRON CAMPBELL did not act with deliberate indifference towards Plaintiff's medical needs.

And sixth, defendants claim that CENTURION OF FLORIDA, LLC cannot be held liable for the alleged violations of Plaintiff's constitutional rights.

Plaintiff disputes all of the above.

- First, the physical evidence, which is Plaintiff's right hand, speaks for itself. The outcome of the surgery reveals gross incompetence and the gross incompetence caused the deformity to Plaintiff's hand. Just as Dr. Toledo said, the fracture healed wrong. (See Exhibit #21). The knuckle of the pinky finger is now too low and does not align with the other knuckles. The middle joint of the pinky finger does not bend; it sticks straight out. And lastly, there is the Dip Mallet Deformity where the tip of the pinky finger just hangs down. And the third and fourth fingers still cannot close after three years from the date of surgery, March 30, 2017. The surgery was, in every sense of the word botched, literally.  Stated another way, the surgery was wholly and completely inadequate.  *Rogers v. Evans,* 792 F.2d 1052, 1058 (11th Cir. 1986)(Holding

"treatment so gross incompetent, inadequate, or excessive as to shock the conscience... violates the Eighth Amendment."

- Secondly, the delay did cause harm. A reasonable jury could conclude that the 84-day delay of negatively impacted the outcome of the surgery. The Eleventh Circuit Court of Appeals has found deliberate indifference with far less time than 84 days. In *Brown v. Hughes,* 894 F.2d 1533, 1538 (11th Cir. 1990) the Court stated "an unexplained delay of hours in treating a serious injury states a *prima facie* case of deliberate indifference."

- Thirdly, defendants claim that Plaintiff received ongoing treatment to his right hand; so therefore they were not deliberately indifferent. Plaintiff disputes this assertion. Because the core issue here is not what they did, but what they did not do leading up to the surgery. The core issue is the 84-day delay from the date of injury to the date of surgery. Thus, the focus should be on the steps that the Centurion personnel did not take that was the cause of the delay. For example DR. E. PEREZ-LUGO failed to implement a treatment plan. Had DR. E. PEREZ-LUGO implemented a treatment plan, the 84-day delay could have been prevented. DR. E. PEREZ-LUGO also failed to follow-up after the following week had expired on the 23rd of February 2017, after Plaintiff told him that surgery was postponed until the following week. Had DR. E. PEREZ-LUGO followed-up with plastic surgery or scheduling at the RMC, the delay could have been prevented. The record clearly shows that much of what the defendants did do was only after plaintiff had filed the grievances and the § 1983 civil rights complaint.

Defendant contends that Exhibits FDC 00008, 00011, 00012, 00037-39, 00042, and 00048 suppose to demonstrate that plaintiff's medical records are replete with treatment of his hand, before and after his surgery. However, if you take a closer look at those exhibits, you will find that that is far from the truth:

Exhibits FDC 00008 and 00011, pertains to the same medical visit and that visit was on May 6, 2019, after plaintiff had filed the lawsuit. Exhibit FDC 00012 is a sick-call request regarding Plaintiff's right ankle and is completely unrelated to plaintiff's hand injury. Exhibits FDC 00037 and 00038 are pages one and two of the same Document, which showing treatment that occurred after plaintiff initiated the instant legal action. Exhibit FDC 00039 is a sick-call request submitted on may 21, 2018, in which plaintiff was attempting to obtain stronger medication (i.e. Naproxen) to relieve the pain and swelling of his right hand. This request was ultimately denied. FDC 00042 is that reads follow-up (F/U) new restriction pass. This request too was denied. As mentioned before, Plaintiff requested the restriction pass in February 2018 (See Exhibit FDC 00044), but the restriction pass was not approved until May 18, 2018, and only then after plaintiff had filed the original § 1983 civil rights complaint. (See Exhibit #22, Restriction Pass).

Exhibit FDC 00048, is misdated as January 10, 2019, but the correct date is January 10, 2018; it is pertaining to plaintiff's right hand, but after the surgery date as well. FDC 00050-55 are the Chronological Record of Health Care forms noting the four dates plaintiff had physical therapy. i.e. August 1, 2017, September 1, 2017, September 21, 2017, and September 26, 2017.

Those documents show that out of the sixteen physical therapy sessions that DR. FRANCIS ONG recommended, the plaintiff only received four physical therapy treatments. And this was despite the physical therapist noting that plaintiff would benefit from more physical therapy (See Exhibit #17(c)).

So the record has shown that the defendants have fallen short of demonstrating that the medical chart is replete with examples of the defendants giving treatment before or after surgery. To the contrary, the record is replete with examples of treatment given only after the lawsuit was

filed against them. Prior to surgery, defendants did virtually nothing, which explains why there was an 84-day delay for the date of injury and the date of surgery.

• Fourth, DR. E. PEREZ-LUGO did act with deliberate indifference towards plaintiff's medical needs. He contributed to the delay by not following-up with plastic surgery or scheduling after a week's time period had elapsed as explained earlier in the complaint. DR. E. PEREZ-LUGO's signature indicates that he reviewed the chart that indicated that DR. FRANCIS ONG rated plaintiff's need for surgery as being urgent. So he knew or should have known that plaintiff was urgently in need of surgery and nothing was done until March 30, 2017 after plaintiff had filed an informal grievance (See Exhibit #13). In addition, DR. E. PEREZ-LUGO refused to approve and submit paperwork for plaintiff to get corrective surgery as evident by the denying plaintiff's grievance. (See Exhibit #20).

Furthermore, DR. E. PEREZ-LUGO did not follow standard medical procedure because he failed to use a treatment plan. Exhibit FDC 00056 is not a treatment plan. To the contrary, 00056 is nothing more than Form DC4-701, the Chronological Record of Health Care Form. A treatment plan is a distinct document that the physician/medical provider signs and the patient signs outlining a course of action in implementing treatment to insure that the patient's needs are being met.

Neither did DR. FRANCIS ONG have a treatment plan. Had he drawn-up a treatment plan there would never have been an 84 day delay from the date of injury to the date of surgery. Additionally, had DR. FRANCIS ONG had a treatment plan, he would have followed up with plaintiff after the last physical therapy session, but he did not. A treatment plan is absolutely essential in delivering medical care. And without a treatment plan it will lead to delays and uncoordinated treatment, which is what the plaintiff received in this case.

In *Moore v. Duffy,* 253 F.3d 543, 545 (8th Cir. 2001), the court held ("It is clearly established that medical treatment may so deviate from the applicable standard of care as to evidence deliberate indifference."). A reasonable jury could find that due to having no treatment plan, it deviated from standard medical care, thus constituting deliberate indifference.

Defendants also made the assertion that plaintiff is merely disagreeing with DR. E. PEREZ-LUGO because he did not make a referral to another provider.

However, there is much persuasive case law that finds a physician deliberately indifferent for not making a referral to outside medical facilities.

DR. E. PEREZ-LUGO knew that DR. FRANCIS ONG was the only plastic surgeon at the RMC from his many years of working with the FDC. DR. E. PEREZ-LUGO also knew that DR. FRANCIS ONG rated plaintiff's need for surgery as being urgent. Plaintiff informed DR. E. PEREZ-LUGO that his surgery was postponed until the following week, which was February 23, 2017. So when that one week elapsed without plaintiff being transported for his surgery, DR. E. PEREZ-LUGO should have inquired with the plastic surgeon to find out why plaintiff had not had his surgery or, given the fact that DR. FRANCIS ONG only performed surgeries on Thursdays, referred Plaintiff to an outside medical facility. (e.g. Jacksonville Memorial Hospital, is a facility to which inmates from Union Correctional Institution are referred on a regular basis.) This circuit held in *Free v. Granger,* 887 F.2d 1552, 1556 (11th Cir. 1989) "proof of staffing or procedural deficiencies may give rise to a finding of deliberate indifference." In *Brown v. Mitchell,* 308 F. Supp. 2d 682, 706 (E.D. Va. 2004) the court held "staff that are untrained or too few in numbers may constitute an Eighth Amendment violation." And in *Gaines v. Choctaw County, Commission,* 242 F. Supp. 2d 1153, 1163 (S.D. Ala. 2003), this court addressed the issue of "inadequate staffing to meet prisoners medical needs." In *Harris v. Thigpen,* 941 F.2d 1459,

1500 (11th Cir. 1991) citing failure to provide and maintain adequate facilities and equipment necessary for adequate health care in finding of constitutional violation. *Coleman v. Wilson*, 912 F. Supp. 2d 1292, 1308-09 (E.D. Cal. 1995) the court held, "the Constitution requires either ready access to physicians at the prison, or reasonably speedy access to outside physician or facilities." In *Lemarbe v. Wisneski*, 266 F.3d 429, 442 (6th Cir. 2001) the court held, "failure to make timely referral to specialist or to tell patient to seek one out was deliberate indifference."

So the courts have made it clear that a physician's failure to employ adequate number of staff, or fail to make an outside referral may constitute deliberate indifference.

• Fifth, DR. ERRON CAMPBELL did act with deliberate indifference towards plaintiff's medical needs. It is undisputed that he was the Regional Medical Director during the time period in question (See Answer to Admission, Exhibit #23). It is also undisputed that Centurion had a policy that "No procedure(s) may be performed without prior approval by the Regional Medical Director" (See Exhibit #24). It is also undisputed that on November 17, 2017, DR. E. PEREZ-LUGO submitted paperwork for plaintiff to get more physical therapy; but the additional therapy was denied by DR. ERRON CAMPBELL. And this denial came despite the physical therapist's notation that plaintiff could benefit from more physical therapy. (See Exhibit #17(c)). Another reason for DR. ERRON CAMPBELL's denial was cost, as stated in plaintiff's complaint, the only factors that are used to determine if a procedure is approved or denied are cost factors. (See Exhibit #25). In *Kruger v. Jenne*, 164 F. Supp. 2d 1330, 1334 (S.D. Fla. 2000), allegations that medical provider refused and / or delayed treatment to save money stated a claim of deliberate indifference. And since he is the one that approves or denies the procedures, including physical therapy, and corrective surgeries, it is reasonable to infer that DR. ERRON CAMPBELL is the person that implemented the "one chance policy" in his assigned region. This policy is supported

by the words of Nurse L. McClellan when on May 24, 2018, plaintiff had gone on sick-call. Plaintiff asked the nurse if he would be able to get another surgery. Her reply was "No." Plaintiff then asked the nurse: "you mean it will have to be this way for the rest of my life." She replied: "Yes. You know how they do it here. I'm just being honest." Plaintiff immediately recorded what Nurse McClellan said in his journal. (See Exhibit #26). Other evidence of this "one chance policy" is not one of DR. ERRON CAMPBELL's subordinates recommended that he receive a corrective surgery for the obvious deformity. Not DR. E. PEREZ-LUGO, not Dr. Toledo, and neither did Dr. Putney when she wrote the restriction pass on May 18, 2018 (See Exhibit #22).

- Sixth, Defendant claims that CENTURION OF FLORIDA, LLC cannot be held liable for the alleged violations of plaintiff's constitutional rights.

The defendants are wrong here: private corporations that provide medical care are treated like suits against municipalities. The prisoner must show that the injury was caused by a policy of the corporation. In *Edwards v. Alabama Dept. of Corrections,* 81 F. Supp. 2d 1242, 1254-55 (M.D. Ala 2000). IN that case the court held that "In order to prove CMS should be liable, the plaintiff's would have to demonstrate that CMS itself directly caused the violation of their constitutional rights through their adoption of some official policy or practice." In *Kruger v. Jenne,* 164 F. Supp. 2d 1330, 1331 (S.D. Fla. 2000) "allegation that private provider denied care as a result of a policy to refuse and / or delay treatment to save money stated a deliberate indifference claim against corporation."

An analogy can be made on how CENTURION OF FLORIDA, LLC has implemented their "one chance policy" to save money. CENTURION OF FLORIDA, LLC has a policy in place regarding zero corrective surgeries as evidence by the words of Nurse McClellan and by the fact that not one of DR. ERRON CAMPBELL's subordinates submitted paperwork for the

obvious deformity to plaintiff's hand as explained above. Additionally, CENTURION OF FLORIDA, LLC has a policy of not processing sick-call request of inmates in segregation confinement. In plaintiff's case this policy or practice has contributed to the delay in plaintiff receiving his surgery in a timely manner. And as a result of the delay, plaintiff is left with a permanent deformity of his right hand. A reasonable jury could find that the 84 day delay caused the increased risk of a botched surgery; and that there was a connection between the 84 day delay and the outcome of the surgical procedure.

Plaintiff identified two instances where the inmate sick-call request form was misplaced or thrown away and thus are not part of the medical record. In *Nelson v. Prison Health Services, Inc.,* 991 F. Supp. 2d 1452, 1465 (M.D. Fla. 1997) Court monitor's reports, "finding pervasive and deep seated failures including staff's unwillingness to respond to inmates requests for treatment could support liability of county as well as medical provider."

So the record is clear, the policies and practices of CENTURION OF FLORIDA, LLC constitute deliberate indifference to plaintiffs' serious medical needs, and directly caused the plaintiff harm.

Defendant is also claiming, as a defense, that pre-approval was not granted until February 17, 2017 when the form was signed by UCI's Site Medical Director/Chief Health Officer, DR. E. PEREZ-LUGO. Therefore, DR. FRANCIS ONG could not have scheduled the initial appointment for February 16, 2017, of which Plaintiff acknowledged at the deposition on February 6, 2020.

However, DR. E. PEREZ-LUGO's signature on the document is just to indicate that he reviewed the medical chart after plaintiff returned from the RMC, his signature is not an indicator that he approved the surgery as the defendant contends.

DR. E. PEREZ-LUGO does not have the authority to approve or deny surgery for an inmate. Furthermore, DR. FRANCIS ONG verbally told plaintiff on February 15, 2017, that plaintiff is scheduled for surgery on Thursday February 16, 2017 as he had written on the consent for surgery form. But apparently DR. FRANCIS ONG already had six other inmates scheduled for surgery that day, so he postponed the surgery for the following week of February 23, 2017, as he had only three scheduled surgeries for that day. (See Exhibit #27, Answer to Interrogatory), which is proof that DR. FRANCIS ONG had only three surgeries scheduled for February 23, 2017).

Plaintiff did not discover this fact until March 2, 2020, when he received the answers to the first set of interrogatories, almost a month after the depositions of February 6, 2020. Plaintiff had sent discovery to Mr. Ramsey in October 2018, and then December 17, 2019. Had Plaintiff received the answers to the first set of interrogatories prior to the depositions of February 6, 2020, he would have highlighted those points. It appears as if the defendants held back the answers to the first set of interrogatories until after the deposition in an attempt to trip up the plaintiff and / or induce him to saying the wrong thing. Had plaintiff known that DR. FRANCIS ONG performed five surgeries on February 16, 2017, and performed only three on February 23, 2017, (See Exhibit #27), Plaintiff would not have responded as he did. DR. FRANCIS ONG postponed plaintiff's surgery after realizing the he already had five surgeries scheduled for February 16, 2017, so he passed on a message through the transport officer that it was postponed for the following week, February 23, 2017, because DR. FRANCIS ONG had only three surgeries scheduled for that day. But the defendant's cannot explain why DR. FRANCIS ONG never followed up to find out why plaintiff never had surgery the following week. There is still an unexplained delay in plaintiff receiving surgery from February 15, 2017 to March 30, 2017.

DR. FRANCIS ONG still rated the need for surgery as being urgent, but there still was some significant delay in plaintiff getting his surgery. DR. FRANCIS ONG failed to follow up, and it exposed plaintiff to additional risk as evidenced by his deformed hand. Had DR. FRANCIS ONG performed the surgery on February 23, 2017, there was a reasonable probability that there would have been a far better outcome. This circuit has repeatedly held that an unexplained delay in treating an inmate's serious medical needs may constitute deliberate indifference, and there was an unexplained delay from February 15, 2017, to March 30, 2017.

Plaintiff did not deny having any injuries on June 27, 2017. Exhibit FDC 00054-56. The nurse never asked plaintiff anything. The nurse used the standard language in all the nursing notes when an inmate returns from RMC. (See Exhibit #10).

Defendant claims that plaintiff received post-operative physical therapy from July 31, 2017, through September 26, 2018 as if the therapy was regularly scheduled for a significant period of time. The intent to deceive is obvious. In actuality, plaintiff only received four sessions of physically therapy, far from the sixteen sessions recommended by DR. FRANCIS ONG. As stated in the complaint and motion for summary judgment, the physical therapist indicated that plaintiff could benefit from continued physical therapy.

As plaintiff explained in his complaint, Nurse L. McClellan noted "there was no visible deformity" of plaintiff's hand without first observing and examining plaintiff's hand. Had she examined his hand, she would have seen the deformity.

Contrary to what the defendant said, Plaintiff did not get a restriction pass on March 16, 2018, after complaining about the pain in his hand from pushing carts. Plaintiff did not get the restriction pass until May 18, 2018, two months after he requested the restriction pass, after Plaintiff had initiated this § 1983 civil rights complaint. Stated another way, Plaintiff was not

issued a restriction pass by CENTURION OF FLORIDA, LLC personnel until after he filed the instant legal action.

Also contrary to defendant's position, plaintiff has been denied medical care, he was denied continued physical therapy treatment after it has been noted by the physical therapist that plaintiff could have benefited from more physical therapy treatment on dates September 26, 2017. Plaintiff has also been denied a corrective surgery for the initial surgery that was botched, as evidenced by the Dip Mallet Deformity, and an inability to close the third and fourth fingers three years after the surgery.

After a close examination of plaintiff's right hand would lead a reasonable person to conclude the surgery on plaintiff's hand was unsuccessful and that plaintiff's hand is now deformed. There was clearly gross incompetence in the performance of surgery on the part of DR. FRANCIS ONG and the outcome  was completely inadequate. It is also clear that the 84-day delay in the surgery be performed had an extremely negative impact on the outcome. A reasonable juror would reach such a conclusion.

It is an undisputed fact that DR. FRANCIS ONG rated plaintiff's need for surgery as being urgent. (See Exhibit #8). The defendant admits that DR. FRANCIS ONG noted that "Hurst would need surgery soon, but did not schedule a date for the surgery." (pg 9) And  because he did not schedule a date for the surgery, it contributed to the delay. At any rate, the delay is unexplained. A reasonable jury could conclude that DR. E. PEREZ-LUGO contributed to the delay because his signature indicates that he reviewed the chart on February 17, 2017; so, he knew that DR. FRANCIS ONG rated the need for surgery as being urgent. DR. E. PEREZ-LUGO, being fully aware of plaintiff's urgent need for surgery, never followed up with scheduling after a week's time elapsed after the postponement. The evidence that the delay

caused plaintiff to suffer substantial harm is also clear. After a simple examination of plaintiff's deformed hand, a reasonable juror could conclude that the 84-day delay from the date of injury to the date of surgery caused the deformity in plaintiff's right hand.

The Defendant correctly states that a disagreement over a diagnosis or course of treatment does not constitute deliberate indifference. But these treatments could have benefited the plaintiff, as noted by Connie Spitzer on September 24, 2017. And, the only factors considered in making the decision to deny the plaintiff this treatment, were cost factors. (As evidenced by Form DC4-669).

Based on review of the responses to the interrogatories, that Plaintiff received after the February 6, 2020 deposition, it appears that DR. FRANCIS ONG scheduled plaintiff for surgery on February 16, 2017. First, plaintiff recalled that a FDC transport officer told him that his surgery had been postponed until the following week. Second, plaintiff asked defendant DR. FRANCIS ONG during discovery: (first set of interrogatories to DR. FRANCIS ONG, question #4, Exhibit #9).

Q:   How many hours per week do you work at the RMC at Lake Butler, Florida on an average?

A:   Unknown. I will typically see patients at the RMC ever Wednesday for scheduled appointments and ever Thursday for surgeries, as necessary.

So, the week following February 16, 2017 was February 23, 2017; and, February 23rd did in fact fall on a Thursday. On this basis, plaintiff is certain that his originally scheduled February 16, 2017 surgery was meant to be postponed only until Thursday February 23, 2017; especially considering that DR. FRANCIS ONG had only three surgeries scheduled for February 23rd. (See production of documents Exhibit #27).

In response at the deposition when plaintiff stated:

A:    "Okay. Looking at it like that, yeah it's a possibility it might not been approved." (Deposition pg 32-33)

Had Defendant DR. FRANCIS ONG sent his responses to the first set of interrogatories prior to the depositions done on February 6, 2020, plaintiff would not have answered as he did. Plaintiff did not receive the responses to the first interrogatories from DR. FRANCIS ONG until March 2, 2020.

Defendant also alleges that Hurst has not shown that the Centurion defendants are responsible for scheduling inmates surgeries. Plaintiff has claimed however, that DR. E. PEREZ-LUGO has failed to follow-up with scheduling after the following week had expired on February 23, 2017. And had he followed up with scheduling there was a reasonable probability that plaintiff could have had his surgery sooner. So it follows that because he didn't follow-up with scheduling, DR. E. PEREZ-LUGO contributed to the delay. A reasonable jury could find that DR. E. PEREZ-LUGO contributed to the delay because of his failure to follow-up with scheduling or plastic surgery at the RMC at Lake Butler, Florida.

And as far as DR. ERRON CAMPBELL, a jury could find that he too contributed to the delay because he failed to hire or contract with another plastic surgeon or at least increase the days that DR. FRANCIS ONG performed the surgeries. As the Regional Medical Director, he had the power to do this, as stated earlier, DR. FRANCIS ONG's contract stipulated that he schedule appointments on Wednesdays only and perform surgeries on Thursdays only. (See Exhibit #9). Obviously, it was not adequate time and the direct result of this inadequacy was plaintiff's surgery being unnecessarily delayed.

The substantial harm suffered by plaintiff is evidenced by the deformity of the hand itself. The 84-day delay exposed plaintiff to heightened risk of the surgery not being successful; and, three years after the surgery, plaintiffs right hand still cannot fully close.

It is undisputed that plaintiff's medical records indicate that he has a deformity of his right hand. The physical therapist noted that plaintiff has a Dip Mallet Deformity (See FDC 00007, Exhibit #16). See Radiology Request form dated May 6, 2019, the radiologist noted chronic right hand deformity. (See Exhibit FDC 00008).

On Form DC4-683 HH dated May 24, 2018, Nurse L. McClellan noted that deformity was present (See Exhibit #28) FDC 00037. The deformity is the physical evidence of the substantial harm suffered by the plaintiff as a direct result of the excessive delay.

To be clear, the deformity of the plaintiff's pinky-finger, on his right hand, is two-fold. 1) The Dip Mallet Deformity where the tip of the finger just hangs over, and there is an inability to bend the second joint of the pinky-finger causing the finger to stick straight out.

So the defendant is correct in quoting *Bennett v. Parker,* 898 F.2d 1530, 1594 (11th Cir. 1990)(finding that inmates claim of serious injury, unsupported by physical evidence or medical records is only a conclusory allegation and must be discounted.) But to the contrary, plaintiff's substantial harm as evidenced by the deformity can be substantiated by his medical records and by the physical evidence. i.e. the hand itself.

### STANDARD FOR SUMMARY JUDGMENT

"A party may move State of Florida summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed.R.Civ.P. a fact is material if it could affect the outcome of the trial, and a dispute is genuine when on the record is sufficient evidence supporting the claimed factual dispute... to require a

jury or judge to resolve the parties differing versions of the truth at trial. *Hahn v. Sargent,* 523 F.2d 461, 463 (1st Cir. 1975), cert. denied, 425 U.S. 904 (1976), citing *Natl. Bank v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968).

In a motion for summary judgment, the moving party always bears the initial responsibility of informing the district court of the basis for this motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catnett,* 477 U.S. 317, 323 (1986)(quoting former Rule 56(c), Fed.R.Civ.P., substantively unchanged by 2010 amendments). If movants meet this initial responsibility, the burden shifts to the non-moving party to show that a genuine issue of material fact does actually remain for resolution at trial. If the non-moving party fails to meet this burden, summary judgment should be entered in favor of the movant. *Celotex,* 477 U.S. at 322.

To survive summary judgment once the moving party has met the initial requirement under rule 56, the non-moving party may not meet its burden of demonstrating a factual dispute by relying only upon the allegations of its pleadings, but it required to offer evidence of specific facts in the form of admissible discovery materials and / or affidavits. See *Matsushita,* 475 888 at 586.

This burden on the non-moving party, however is not so heavy. A material issue of fact need not be demonstrated conclusively in its favor—it is enough that "the claimed dispute be shown to require a jury or judge to resolve the parties differing versions of truth at trial." *T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626 631 (9th Cir. 1987). In determining whether the non-moving party has met its burden on summary judgment, the judge

should not attempt to resolve conflicting evidence of material facts in dispute, nor should the judge engage in determinations of credibility. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 254 (1986). The purpose of summary judgment rather "is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matshshita,* 475 U.S. at 587 (internal quotations omitted).

The judge must not ask himself whether he thinks the evidence favors one side or the other, but whether a reasonable jury could return a verdict for the non-moving party on the evidence presented. *Anderson,* 477 U.S. at 250. In making this determination, the evidence presented by the non-moving party is to be taken as true. *Id.,* 477 U.S. at 255. All reasonable inferences that may be drawn from the evidence on record are drawn in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 254.

*Hanes v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)("*pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than pleadings drafted by lawyers. If a court can reasonably interpret *pro se* pleadings to state a cognizable claim on which litigant could prevail, it should do so despite failure to cite proper authority, confusion at legal theories, poor syntax and sentence structure, or litigants unfamiliarity with pleading requirements; and unless it appears beyond doubt that a plaintiff can prove no facts in support of his claim, which would entitle him to relief, a complaint should not be dismissed.")

## THE ELEMENTS TO AN EIGHTH AMENDMENT MEDICAL CLAIM

To successfully state a claim under the Eighth Amendment of the U.S. Constitution, a plaintiff must allege a violation that satisfies both the objective injury threshold and the subjective intent necessary to constitute "cruel and unusual punishment." The objective element asks whether there has been a sufficiently serious deprivation of a life necessity. *Wilson v. Seiter,*

501 U.S. 294, 298 (1991). The subjective element asks whether a "sufficiently culpable state of mind" existed behind the deprivation. *Id.*

In an Eighth Amendment medical claim, the objective element is satisfied if the medical condition is "sufficiently serious," that failure to treat it "could result in further significant injury or the ... unnecessary and wanton infliction of pain." (*Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976)).

The subjective element of sufficiently culpable state of mind is satisfied upon a showing of "deliberate indifference." *Id.* at 104-105. This standard is however, less stringent than in other Eighth Amendment claims or cruel and unusual punishment because in prisoner's medical cases "the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns. *Hudson v. McMillan,* 503 U.S. 1, 6 (1992). And therefore, courts need not defer to the judgment of prison officials in matters concerning medical needs. *Hunt v. Dental Dep't,* 865 F.2d 198, 200 (9th Cir. 1989).

Respectfully submitted,

_____

Wilbert R. Hurst, *pro se*
DC# U22029

## CERTIFICATE OF COMPLIANCE

Plaintiff, Wilbert Hurst, *pro se*, in accordance with the requirements of Local Rules 56.1 and 7.1(F), of the Florida Rules of Court, Federal, Northern District, hereby certifies that the foregoing Response to Defendant's Motion for Summary Judgment contains 6,785 words.[1]

_____

Wilbert R. Hurst, U22029

---

[1] This word count is based on the number provided by the software used to prepare this document and excludes the Caption, the Certificate of Compliance and the Certificate of Service. (Total Words 7040)

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Response to Defendant's Motion for Summary Judgment has been placed into the hands of institutional staff at Wakulla C.I. Annex for delivery by U.S. Mail on this 28ᵗʰ day of _April_____, 2020 to the following:

ELLIOT B PEACE Esq. and ROBERT CRAIG MAYFIELD Esq. of the law firm Bradley, Arant, Boult Cummings, LLP at 100 North Tampa St., Suite 2200, Tampa, Florida 33602;

BRIAN A. WAHL Esq. of the law firm Bradley, Arant, Boult Cummings, LLP, One Federal Place, 1819 Fifth Ave. North, Birmingham, Alabama 35203; and,

RICHARD E. RAMSEY, Esq. of the law firm Wicker, Smith, O'Hara, McCoy & Ford, PA, at 50 N. Laura St., Suite 2700, Jacksonville, FL 32202.

Wilbert R. Hurst, U22029
Wakulla Corr. Inst. Annex
110 Melaleuca Drive
Crawfordville, Florida 32327

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT R. HURST
Plaintiff

VS                          CASE No.: 4:18-cv-00237-RH/CAS

CENTURION OF FLORIDA, LLC
et al.,
Defendants

DECLARATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILBERT HURST states:

1. I am the plaintiff in this case. I submit this declaration in support of my motion for Partial Summary Judgment on my claim that defendant JANE DOE I's deliberate indifference to my serious medical need violated my civil rights and constituted cruel and unusual punishment.

2. As I stated in my complaint I am an inmate of the FDOC who sustained a broken hand while defending myself in a fight after being attacked by another inmate while at Union Correctional Institution on January 5, 2017.

3. After the fight I was placed in the holding cell in A-area than I was escorted to get a pre-confinement Health Evaluation at the medical center in the OPD building.

1 of 2

Nurse JANE DOE I did the health evaluation. I told her that I believed my hand was broken as a result with fighting another inmate. I told her that my right hand was swollen in pain. She didn't provide any medical care for my injured hand at all - she never even gave me a tylenol or ibuprofen for the pain. She falsified the form OCH-769/Health Evaluation Pre-confinement Form by writing on it that I offered no medical complaints. Then she told me that I'll have to wait to see the doctor til April 2017 on my next doctors appointment.

4. From the medical Center at the OPO Building, I was escorted to my cell in Administrative confinement. These facts establish that defendant JANE DOE I's deliberate indifference to my medical needs violated my civil rights and constituted cruel and unusual punishment. Accordingly, I am entitled to summary judgment on my claim against defendant JANE DOE I.

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following is true and correct.

_Wilbert R Hurst_                    _March 24, 2020_
Wilbert R. Hurst, U22024          Date
Wakulla Corr Inst. Annex
110 Melaleuca Dr.
Crawfordville, FL 32327-4463

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT R. HURST
Plaintiff

vs                          CASE NO: 4:18-cv-00237-RH/CAS

CENTURION OF FLORIDA, LLC
et al.,
Defendants

DECLARATION IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

WILBERT HURST states:

1. I am the plaintiff in this case. I submit this declaration in support of my motion for Partial Summary Judgment on my claim that defendant JANE DOE II's deliberate indifference to my serious medical need violated my civil rights and constituted cruel and unusual punishment.

2. As I stated in my complaint, I am an inmate of the FDOC who broke his hand while defending myself in a fight after being attacked by another inmate while at Union Correctional Institution on January 5, 2017.

3. After the fight, I was placed in the holding-cell in A-area. I received my health evaluation, and was then escorted to Administration Confinement in O-dorm.

I immediately asked the officer for an inmate sick-call request form. He said that I had to get that from the nurse. I didn't know what time the nurse made her rounds so the first few days I never saw the nurse. Neither did the nurse announce her presence on the wing. Eventually I met with the nurse as she was making her a.m. medication rounds and I showed her my hand and I told her that it was swollen in pain and I believe it was broken. I asked for an inmate sick call request form. This was about the 8th or 9th of January 2017 around 5:00 am. - 5:30 a.m. I completed the inmate sick-call request form and returned it back to her. However, she never processed the sick-call request form and I never saw the nurse to address my broken hand issue. In addition, the inmate sick-call request form that I submitted is not in my medical records. Upon information and belief, the inmate sick-call request form was thrown away to get rid of any evidence that the issue was addressed with her.

4. These facts establish that defendant JANE DOE II's deliberate indifference to my serious medical needs violated my civil rights and constituted cruel and unusual punishment. Accordingly, I am entitled to summary judgment on my claim against defendant JANE DOE II.

Pursuant to 28 U.S.C § 1746, I declare under penalty of perjury that the following is true and correct.

_Wilbert R. Hurst_

Wilbert R. Hurst, U22029
Wakulla Corr. Inst. Annex
110 Melaleuca Dr.
Crawfordville, FL 32327-4469

_April 28, 2020_
Date

Exhibit #3

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
# INMATE SICK-CALL REQUEST

Date: 01 / 15 / 17          Time: 8:00 AM

Inmate Name: Hurst, Wilbert          DC#: U22029

Housing assignment: D3-106

Job assignment: I don't Know yet

Problem:

RECEIVED & TRIAGED
TRIAGE LEVEL 3
DATE/TIME 1/21/17 2020
SIGN/STAMP
P. SHIFFLETT, RN
UNION CI

☐     Pass/pass renewal

☐     Medication renewal

☐     Need information (explain): _____

☐     Mental Health

☐     Dental

☑     Medical (explain): I have a swollen right hand, and it hurts. My little finger can't move, I may have broken it.

When did problem/symptoms start? 01 / 5 / 17

Inmate Name: Hurst Wilbert
DC#: U22029          Race/Sex: B/M
Date of Birth: 8/30/1957
Institution: Union CI

Distribution: Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise destroy copy)
This form is not to be amended, revised, or altered without approval by the Office Health Services-Administration

DC4-698A (Revised 6/11/08)

FLORIDA DEPARTMENT OF CORRECTIONS
OFFICE OF HEALTH SERVICES
FRACTURE/DISLOCATION/SPRAIN PROTOCOL

**SUBJECTIVE:** Date: 1/18/17   Time: 1300   Age: 59   ☒ Sick Call   ☐ EMID
Chief Complaint: "I may have broken my Rt hand
Allergies: Ibu
Current Medications: Advocar, Xopenis, Singulair, Zocor, Lisinopril
Date of last Tetanus Toxoid: unknown
Chief Complaint: "Rt hand swollen I may have broke it
Mechanism of injury (MOI): "fight
Hx of previous dislocations? ☒ No   ☐ Yes → Joint/s involved:
Location of pain: Rt hand

                                                           When?
Pain level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☒ 5 ☐ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10

**OBJECTIVE:** Temp: 97.3   Pulse: 62   Resp: 10   Blood Pressure: 134/82   O2 sat: 100 % Weight: 192
Pulse distal to injury: ☐ Present   ☐ Absent ☒ N/A (fingers/toes)   Quality: ☐ Strong ☐ Moderate ☐ Weak
Pallor: Color of skin around the injury site: ☒ Pink ☐ Pale ☐ White ☐ Ecchymotic ☐ Hematoma
Temperature of skin around the injury site: ☒ Warm ☐ Cool ☐ Cold
Capillary refill (blanching) test: ☒ Less than 2 seconds ☐ Greater than 2 seconds
Paresthesia: Extremity numbness? ☒ No ☐ Yes   Extremity tingling? ☐ No ☐ Yes
Paralysis: Is patient able to move affected extremity (i.e., pt. is able to bend elbow, wiggle fingers, etc.)? ☐ No ☒ Yes
Swelling: ☐ None ☒ Mild ☐ Moderate ☐ Severe
Deformity present: ☒ No ☐ Yes  If yes, describe:
Skin intact: ☐ No ☒ Yes → ☐ Abrasion ☐ Laceration → Use also "Abrasion/laceration Protocol," DC4-683V/ for appropriate care.
Bleeding: ☒ N/A ☐ No ☐ Yes → Use also "Abrasion/Laceration Protocol," DC4-683V for appropriate care.
Additional comments/findings:

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
☒ Patient has possible fracture and/or dislocation
☐ Patient has poor color, temperature, or sensation of affected limb.
☐ Bleeding not controlled with 10 minutes of direct pressure.

**PLAN**
☐ Clinician notified:
☐ Orders from clinician:
☐ EMS activated as ordered.                                          Time:
☐ Control bleeding with direct pressure for 10 minutes to bleeding site.
☐ Splint joint above and below suspected fracture/dislocation site.
☐ Apply arm sling
☒ Elevate affected limb.
☒ Apply covered ice pack to affected area for 15 – 20 minutes.
☒ Give ibuprofen 200mg 2-3 tablets by mouth for pain OR ☐ acetaminophen 325mg 2 tablets by mouth for pain now
☐ Give T-Dap* 0.5mg IM or Td 0.5cc IM as prescribed by clinician.
☐ Apply ace wrap PRN (wrap distal to proximal, i.e., wrap up toward the heart)
☐ Provide crutches PRN
☐ Recheck affected distal pulse prior to discharge: ☐ Strong ☐ Moderate ☐ Weak
☐ Issue Pass:
☒ Other: X-Ray ordered

* If inmate has no record or history of receiving the Tdap vaccine (vaccine released in 2005), then Tdap should be given.
If inmate has a history of receiving the Tdap vaccine, then give the Td vaccine. At this time, Tdap is licensed for only one lifetime dose per person.

(Continued on back....)

INMATE NAME: Hurst, Wilbert
DC#: 023029   RACE: B   SEX: M
DATE OF BIRTH: 8-30-57
INSTITUTION: UCI

DC4-683J (Revised 7/26/13)
This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

Exhibit #5

Completed



**Florida Department of Corrections**
**Radiology Request Form**

# Radiology

**PLEASE WRITE LEGIBLY**

In the best interest of the patient and referring physician, this examination will not be performed if pertinent clinical information and tentative clinical diagnosis are not provided below: ☐ Diabetic

List allergies:

S/P fight – Rt hand pains edema

Ibu

☒ Ambulatory   ☐ Portable   ☐ Stretcher   ☐ Wheelchair

Physician Name (Print) and Name Stamp:

J. BICHARA, MD
PHYSICIAN
UNION CI/CENTURION

Date of Request: 1/18/17

| X-RAYS | | | |
|---|---|---|---|
| ☐ Ankle R ☐ L ☐ | | | |
| ☐ Cervical Spine | | | |
| ☐ C. Spine, complete | | | |
| ☐ Chest | | | |
| ☐ Chest, PA and LAT | | | |
| ☐ Chest PPD | | | |
| ☐ Clavicle R ☐ L ☐ | | | |
| ☐ Coccyx | | | |
| ☐ Cystogram | | | |
| ☐ Elbow R ☐ L ☐ | | | |
| ☐ Facial Bones | | | |
| ☐ Femur R ☐ L ☐ | | | |
| ☒ Fingers R ☒ L ☐ | | | |
| ☐ Foot R ☐ L ☐ | | | |
| ☐ Forearm R ☐ L ☐ | | | |
| ☒ Hand R ☒ L ☐ | | | |
| ☐ Hip R ☐ L ☐ | | | |
| ☐ Humerus R ☐ L ☐ | | | |
| ☐ Knee R ☐ L ☐ | | | |
| ☐ KUB | | | |
| ☐ KUB and UPT | | | |
| ☐ Lumbar Spine | | | |
| ☐ L. Spine, complete | | | |
| ☐ Mandible | | | |
| ☐ Nasal Bones | | | |
| ☐ Orbits | | | |
| ☐ Os Calcis R ☐ L ☐ | | | |
| ☐ Pelvis | | | |
| ☐ Ribs R ☐ L ☐ | | | |
| ☐ Sacrum | | | |
| ☐ Scapula | | | |
| ☐ Scoliosis Series | | | |

**X-RAYS (Shoulder section)**
☐ Shoulder R ☐ L ☐
☐ Sinuses
☐ Skull
☐ Sternum
☐ T. M. Joints
☐ Thoracic Spine
☐ Tibia & Fibula R ☐ L ☐
☐ Wrist R ☐ L ☐

**FLUOROSCOPY**
☐ Arthrogram [          ]
☐ Barium Enema
☐ Cystogram
☐ Esophagram
☐ I.V. Pyelogram
☐ Lumbar Puncture
☐ Myelogram [          ]
☐ Venogram R ☐ L ☐
☐ U. G. I. Series
☐ U. G. I. and Small Bowel

**CAT SCANS**
☐ Abdomen
☐ Cervical Spine
☐ Chest
☐ Facial/TMJ
☐ Head
☐ Lower Ext. R ☐ L ☐
☐ Lumbar Spine
☐ Orbit
☐ Pelvis
☐ Soft Tissue Neck
☐ Thoracic Spine
☐ Upper Ext. R ☐ L ☐

**MRI SCANS**
☐ Cervical Spine
☐ Head/Brain Stem
☐ Hip R ☐ L ☐
☐ Lower Ext, any joint R ☐ L ☐
☐ Lower Ext, no joint R ☐ L ☐
☐ Lumbar Spine
☐ Neck
☐ Pelvis
☐ Thoracic Spine
☐ Upper Ext, any joint R ☐ L ☐
☐ Upper Ext, no joint R ☐ L ☐

**NUCLEAR MEDICINE**
☐ Bone 3 Phase - Infection
☐ Bone (Whole Body)
☐ Cardiac - MUGA
☐ Cardiac -Stress
☐ Ceretec - Infection (labeled WBC)
☐ Gallbladder (CCK)
☐ Gallbladder (HIDA)
☐ Gallium
☐ Liver/Spleen
☐ Pulmonary V/Q
☐ Renal
☐ Thyroid and Uptake
☐ Thyroid - Parathyroid
☐ Gallbladder (CCK)

**ULTRASOUNDS**
☐ Abdomen complete
☐ Breast
☐ Gallbladder
☐ Inguinal Area
☐ Liver
☐ Lower Ext. R ☐ L ☐
☐ Neck/Soft Tissue/Thyroid
☐ Paracentesis
☐ Pelvis
☐ Renal
☐ Scrotum
☐ Thoracentesis
☐ Upper Ext. R ☐ L ☐

**VASCULAR STUDY**
☐ Abdominal Aorta
☐ Abdominal Aorta with doppler
☐ Arterial Doppler, Lower Ext R ☐ L ☐
☐ Arterial Doppler, Upper Ext R ☐ L ☐
☐ Carotid Duplex
☐ Dialysis Graph Duplex R ☐ L ☐
☐ Vein Mapping for Dialysis R ☐ L ☐
☐ Venous Duplex Lower Ext R ☐ L ☐
☐ Venous Duplex Upper Ext R ☐ L ☐

**Exams not mentioned above:**

Date Performed: 1-20-17

Time Performed: 10:25

Where Performed: UCI

Technologist Name/stamp: AN

Is permanent camp a private institution?  No ☐  Yes ☐
Clinic/hospital room number _____

INMATE NAME: Hurst, Wilbert
DC#: U22029   Race/Sex: B/M
DATE OF BIRTH: 8-30-57
INSTITUTION: UCI

D31061

RECEIVED
JAN 18 2017
BY: _____

DC4-705D (Issued 4/3/12)

Exhibit #6

**FLORIDA DEPARTMENT OF CORRECTIONS**
## Chronological Record of Health Care

Allergies: ___

| DATE/TIME | |
|---|---|

1/27/17
1500

DOCTORS CLINIC   F/U X-ray results
T 978 P 91 R 16   HTN med order
BP 143/93 WT 201

59 M c/ HTN cont _____

Consult x1 to
scheduling   1/30/17 - Comminuted fracture of distal 5th
                         Metacarpal (R)

F/U & Plastic
Surgery Consult   + Pain - Referral to Plastic Sx / injury
Status 3/13/17                - Amoxicillin
Refused                        - Pain control
noted 2-2-17
1347 pmc

E. GILBERT, RN
UNION CI

J. BICHARA, MD
PHYSICIAN
UNION CI/CENTURION

W. DOWNS, LPN
UNION CI

INCIDENTAL NOTE:
INMATE REQUEST (DC6-236)
RECEIVED 1-31-17
ANSWERED 2-10-17

2-6-17
0.2120

2-9-17   I M Request   Rev Wilkison, MA
                         R. WILKISON
                         MED ASST.
                         UNION CI/CENTURION

INC. NOTE: SEEN IN EYE CLINIC FOR:
2-14-17
10:00
CMV CHECK        Ø
VISION CHECK     ✓
FUNDOSCOPIC EXAM ✓
M.D. REFERRAL    NO
GLASSES ORDERED  YES/ NO
RETURN TO CLINIC

L. GIBSON, SCHEDULER
UNION CI

E. Peña-Lugo, MD
Site Medical Director
Union / Centurion

Inmate Name Hurst, Wilbert
DC# U22029   Race/Sex B/M
Date of Birth ___
Institution UCI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

Exhibit # 7

**Florida Department of Corrections**
**Radiology Request Form**

# Radiology

### PLEASE WRITE LEGIBLY

| In the best interest of the patient and referring physician, this examination will not be performed if pertinent clinical information and tentative clinical diagnosis are not provided below: ☐ Diabetic | List allergies: |
|---|---|

S/P Injury to 5th mc ⓇR

☐ Ambulatory   ☐ Portable   ☐ Stretcher   ☐ Wheelchair

| Physician Name (Print) and Name Stamp: Dr Ong | Date of Request: 2/15/17 |
|---|---|

| X-RAYS | | | | | MRI SCANS | | | ULTRASOUNDS | |
|---|---|---|---|---|---|---|---|---|---|
| ☐ Ankle R ☐ L ☐ | | ☐ Shoulder R ☐ L ☐ | | | ☐ Cervical Spine | | | ☐ Abdomen complete | |
| ☐ Cervical Spine | | ☐ Sinuses | | | ☐ Head/Brain Stem | | | ☐ Breast | |
| ☐ C. Spine, complete | | ☐ Skull | | | ☐ Hip R ☐ L ☐ | | | ☐ Gallbladder | |
| ☐ Chest | | ☐ Sternum | | | ☐ Lower Ext, any joint R ☐ L ☐ | | | ☐ Inguinal Area | |
| ☐ Chest, PA and LAT | | ☐ T. M. Joints | | | ☐ Lower Ext, no joint R ☐ L ☐ | | | ☐ Liver | |
| ☐ Chest PPD | | ☐ Thoracic Spine | | | ☐ Lumbar Spine | | | ☐ Lower Ext. R ☐ L ☐ | |
| ☐ Clavicle R ☐ L ☐ | | ☐ Tibia & Fibula R ☐ L ☐ | | | ☐ Neck | | | ☐ Neck/Soft Tissue/Thyroid | |
| ☐ Coccyx | | ☐ Wrist R ☐ L ☐ | | | ☐ Pelvis | | | ☐ Paracentesis | |
| ☐ Cystogram | | FLUOROSCOPY | | | ☐ Thoracic Spine | | | ☐ Pelvis | |
| ☐ Elbow R ☐ L ☐ | | ☐ Arthrogram [ ] | | | ☐ Upper Ext, any joint R ☐ L ☐ | | | ☐ Renal | |
| ☐ Facial Bones | | ☐ Barium Enema | | | ☐ Upper Ext, no joint R ☐ L ☐ | | | ☐ Scrotum | |
| ☐ Femur R ☐ L ☐ | | ☐ Cystogram | | | | | | ☐ Thoracentesis | |
| ☐ Fingers R ☐ L ☐ | | ☐ Esophagram | | | | | | ☐ Upper Ext. R ☐ L ☐ | |
| ☐ Foot R ☐ L ☐ | | ☐ I.V. Pyelogram | | | | | | | |
| ☐ Forearm R ☐ L ☐ | | ☐ Lumbar Puncture | | | | | | VASCULAR STUDY | |
| ☒ Hand R ☒ L ☐ | | ☐ Myelogram [ ] | | | NUCLEAR MEDICINE | | | ☐ Abdominal Aorta | |
| ☐ Hip R ☐ L ☐ | | ☐ Venogram R ☐ L ☐ | | | | | | ☐ Abdominal Aorta with doppler | |
| ☐ Humerus R ☐ L ☐ | | ☐ U. G. I. Series | | | ☐ Bone 3 Phase - Infection | | | ☐ Arterial Doppler, Lower Ext R ☐ L ☐ | |
| ☐ Knee R ☐ L ☐ | | ☐ U. G. I. and Small Bowel | | | ☐ Bone (Whole Body) | | | ☐ Arterial Doppler, Upper Ext R ☐ L ☐ | |
| ☐ KUB | | CAT SCANS | | | ☐ Cardiac - MUGA | | | ☐ Carotid Duplex | |
| ☐ KUB and UPT | | ☐ Abdomen | | | ☐ Cardiac -Stress | | | ☐ Dialysis Graph Duplex R ☐ L ☐ | |
| ☐ Lumbar Spine | | ☐ Cervical Spine | | | ☐ Ceretec- Infection (labeled WBC) | | | ☐ Vein Mapping for Dialysis R ☐ L ☐ | |
| ☐ L. Spine, complete | | ☐ Chest | | | ☐ Gallbladder (CCK) | | | ☐ Venous Duplex Lower Ext R ☐ L ☐ | |
| ☐ Mandible | | ☐ Facial/TMJ | | | ☐ Gallbladder (HIDA) | | | ☐ Venous Duplex Upper Ext R ☐ L ☐ | |
| ☐ Nasal Bones | | ☐ Head | | | ☐ Gallium | | | | |
| ☐ Orbits | | ☐ Lower Ext. R ☐ L ☐ | | | ☐ Liver/Spleen | | | Exams not mentioned above: | |
| ☐ Os Calcis R ☐ L ☐ | | ☐ Lumbar Spine | | | ☐ Pulmonary V/Q | | | | |
| ☐ Pelvis | | ☐ Orbit | | | ☐ Renal | | | | |
| ☐ Ribs R ☐ L ☐ | | ☐ Pelvis | | | ☐ Thyroid and Uptake | | | | |
| ☐ Sacrum | | ☐ Soft Tissue Neck | | | ☐ Thyroid - Parathyroid | | | | |
| ☐ Scapula | | ☐ Thoracic Spine | | | ☐ Gallbladder (CCK) | | | | |
| ☐ Scoliosis Series | | ☐ Upper Ext. R ☐ L ☐ | | | | | | | |

Date Performed: 2-15-17     Time Performed: 0900

Where Performed: RMC     Technologist Name/stamp:

**Is permanent camp a private institution?** No ☐ Yes ☐
**Clinic/hospital room number** _____

INMATE NAME: Hurst Wilbert
DC#: U22029   Race/Sex: B/M
DATE OF BIRTH: 8-30-51
INSTITUTION: UCI

3695844

DC4-705D (Issued 4/3/12)

FDOC 00077

*URGENT*
*For SURG*
*Tomorrow*
*2/16/17*

## FOR USE BY RMC ONLY

**FLORIDA DEPARTMENT OF CORRECTIONS**
**CONSENT FOR SURGICAL PROCEDURE(S) AND ANESTHESIA**

Patient _HURST  WILBERT_     Procedure Date _____

I hereby authorize _DR ONG_ to perform the following operation(s) _____

_OPEN  REDUCTION  AND  INTERNAL_
_FIXATION  RIGHT  5TH  METACARPAL_

I _HURST  WILBERT_, in good faith, and having no mental or physical incapacities preventing me from participating in this consent, consent to the proposed course of treatment at Reception and Medical Center Hospital.  It has been fully explained to me that during the course of an operation it is always possible that unforeseen conditions may necessitate additional or different procedures than those described to me.  I authorize and request that my physician, his/her assistants, or his/her designee(s) administer such additional treatment and perform such additional procedure(s) as therapeutically necessary.

The general nature and purpose of the anticipated procedure(s), the benefits of the procedure(s), the medically accepted alternative procedures or treatments, and the substantial risks, possible complications, and hazards in the proposed procedure(s) have been explained to me.  I understand such risks and I consent to the proposed operation and/or procedure(s).  The answers I have given to all questions asked of me are true to the best of my knowledge and I have not withheld any information.

The physician has explained to me the risks of complications occurring during or as a result of the procedures to be performed, including but not limited to infection, injury, or even death despite the procedure being performed in accordance with an accepted standard of practice.  I understand that the explanation that I have received is not exhaustive and there may be other, more remote risks.  I have had the opportunity to ask questions regarding the proposed operation and/or procedure(s) and all my questions have been answered to my satisfaction.

I authorize and direct the surgeon and/or his associates or assistants to provide such additional services for me as is deemed reasonable and therapeutically necessary including, but not limited to, the performance of services involving radiology and pathology.

I consent to the administration of local, regional, or general anesthesia and the use of narcotics, sedatives, and tranquilizers as deemed advisable with the exception of_____.

I have been advised of the risks involved with the administration or transfusion of blood and/or blood products, and I consent to the administration of transfusion of blood and/or blood products when considered necessary by my attending physician and anesthesiologist.  I further consent to the disposal of any tissue, parts, or organs that are removed during the operation and/or procedures(s), in accordance with the medical staff rules and regulations.

For the purpose of advancing medical education, I consent to the admittance of approved observers to the operating room.

I hereby certify that I have read or have had read to me this Consent for Operation Procedure(s) and Anesthesia form and I fully understand the above authorization.  A photostatic copy of this authorization shall be considered as effective and valid as the original.

D. CRAWFORD
LPN

_Wilbert R Hurst_  2/15/17  11:35 a.m.      _D Crawford LPN_
Patient Signature/Date/Time                  Witness Signature/Date/Time

T. ONG, MD
Plastic Surgeon
RMC

_S ONG  2/15/17  1135_
Physician Signature/Date/Time

**I have explained the above to the patient and the patient consents to the above.** _____ (Physician's initials)

Inmate Name _HURST  WILBERT_
DC# _U 220529_     Race/Sex _B/M_
Date of Birth _8-30-59_           This form is not to be amended, revised, or altered
Institution _UCI_                 without approval of the Deputy Director of Health
                                  Services Administration

5(1)

## FOR USE BY RMC ONLY

CASE NO. 4:18-cv-00237-RH-CAS

3.      Under what terms are you employed/contracted/retained as a plastic surgeon with Centurion of Florida, LLC?  (Produce the contract).

<u>ANSWER</u>:     **Please see Defendant's response to request #2 of the Plaintiff's First Request to Produce.**

4.      How many hours per week do you work at the RMC at Lake Butler, Florida, on an average?

<u>ANSWER</u>:     **Unknown. I will typically see patients at the RMC every Wednesday for scheduled appointments and every Thursday for surgeries, as necessary.**

5.      Are you employed at any other medical facility, facility besides the RMC at Lake Butler, Florida?  If so, how many hours on the average do you devote to the other medical facility(s)?

<u>ANSWER</u>:     **Objection; this interrogatory is overly broad, unduly burdensome, and seeks the discovery of information that is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.**

6.      Did you recommend that Plaintiff have physical therapy for 8 weeks, at 2 times per week, for a total of sixteen sessions?

<u>ANSWER</u>:     **Yes.**

7.      Were you aware that Plaintiff only received four sessions of physical therapy?

<u>ANSWER</u>:     **No.**

8.      Did you bother to follow up with Plaintiff after his final physical therapy session in September, 2017.

<u>ANSWER</u>:     **I asked that the Plaintiff return to the clinic for a follow up visit after completion of the physical therapy regimen I recommended on June 28, 2017, but was never informed that this regimen was completed.**

9.      When did you remove the cast from Plaintiff's hand?

<u>ANSWER</u>:     **Unknown. Plaintiff was not provided a hard cast, as his surgical site was dressed post-operatively and stabilized with a splint. Usual practice is to remove a splint 4-6 weeks after an operation, depending on the progression of healing.**

Exhibit #10

# FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: _NDU_

| DATE/TIME | |
|---|---|
| 2.4.17 13:00 | INCIDENTAL NOTE<br>Appt. w/ Plastic Surgery @ RMC on 2/15/17.<br>L. GIBSON, SCHEDULER<br>UNION CI |
| 2/15/17 11²⁵ | Inc Note SEEN IN PLASTIC SURG.<br>Needs surgery soon by Truong<br>PCP@PERM INST TO<br>APPROVE/ARRANGE REQUEST<br>D. CRAWFORD LPN<br>Truong, MD Plastic Surgeon RMC |
| 2.16.17 1530 | INC NOTE: RETURN FROM ORP PLASTIC. SURG. FOR<br>FX R 5ᵗʰ DIGIT c̄ REC. TO RETURN FOR SURG.<br>VERBALIZES UNDERSTANDING. VOICES NO<br>CONCERNS. DENIES ANY INJURIES. CHART TO<br>MD FOR REVIEW. ————— D. Hall, LPN<br>Prior Approval<br>Routed to<br>Scheduling for<br>Record<br>noted @ 28-17 0830 PMG<br>E. GILBERT, RN<br>UNION CI<br>FEB 17 2017 ☐ PEREZ-LUGO, MD<br>ACT SITE MEDICAL DIRECTOR<br>UNION CI |

Inmate Name _Hurst, Wilbert_
DC# _U22029_ Race/Sex _B/M_
Date of Birth _8.30.51_
Institution _UCI_

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

Exhibit # 11(a)

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
## INMATE SICK-CALL REQUEST

Date: 2/28/17                    Time: 2:55 p.m.

Inmate Name: Hurst, Wilbert R.    DC#: U22029

Housing assignment: D3-106

Job assignment: House man

Problem:

RECEIVED & TRIAGED
TRIAGE LEVEL 2/3 030
DATE/TIME 3/1/1000
SIGN/STAMP
P. SHIFFLETT, RN
UNION CI

☑  Pass/pass renewal

☐  Medication renewal

☐  Need information (explain): _____

☐  Mental Health

☐  Dental

☑  Medical (explain): My right hand is still broken, and I haven't had surgery yet, and my pass to wear my ace wrap has expired.

Could you please renew my pass.

When did problem/symptoms start? 1/5/17

Inmate Name Hurst, Wilbert R.
DC# U22029                    Race/Sex B/M
Date of Birth 08/30/1957
Institution U C I

Distribution: Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise destroy copy)
This form is not to be amended, revised, or altered without approval by the Office Health Services-Administration

DC4-698A (Revised 6/11/08)        Incorporated by Reference in Rule 33-402.101, F.A.C.

Exhibit 11(b)

**DEPARTMENT OF CORRECTION**
**OFFICE OF HEALTH SERVICES**
# INMATE SICK-CALL REQUEST

Date: 3/17/17                    Time: 8:40 a.m.

Inmate Name: Hurst, Wilbert      DC#: U22029

Housing assignment: Houseman

Job assignment: DJ-106

Problem:

☑ Pass/pass renewal

☐ Medication renewal

☐ Need information (explain): _____

☐ Mental Health

☐ Dental

☐ Medical (explain): I haven't had surgery yet, and I need my pass renewed to wear the right wrist support.

_____

_____

_____

_____

When did problem/symptoms start? 1/5/17

_____

_____

Inmate Name Hurst, Wilbert
DC# U22029          Race/Sex B/M
Date of Birth 8-30-50
Institution Union, C.I.

Distribution:  Original—Nursing Supervisor
Pink—Inmate (special housing only-otherwise
destroy copy)
This form is not to be amended, revised, or altered
without approval by the Office Health Services-
Administration

DC4-698A (Revised 6/11/08)        Incorporated by Reference in Rule 33-402.101, F.A.C.

Exhibit # 12

# INMATE REQUEST

### STATE OF FLORIDA
### DEPARTMENT OF CORRECTIONS

Mail Number: _____
Team Number: _____ 4
Institution: UNION

| TO: (Check One) | ☐ Warden | ☐ Classification | ☑ Medical | ☐ Dental |
| | ☐ Asst. Warden | ☐ Security | ☐ Mental Health | ☐ Other _____ |

| FROM: | Inmate Name Hurst, Wilbert R. | DC Number U22029 | Quarters D3-106 | Job Assignment Houseman | Date 3/1/17 |

## REQUEST

Check here if this is an informal grievance ☐

I sustained a broken hand on 1/5/17. I was taken to the RMC at Lake Butler on 2/15/17, and I was seen by Doctor Ong. He scheduled me for surgery on 2/16/17. But it was rescheduled the last minute for the following week, I was told. But I never had surgery last week, and I'm trying to find out if I'm going to have surgery soon. It's going on two months since I broke my hand, and I'm concerned that it wont be a successful surgery if too much time lapses.

They didn't forget me did they?

Please let me know

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

| Inmate (Signature): Wilbert R Hurst | DC#: U22029 |

---

### DO NOT WRITE BELOW THIS LINE

## RESPONSE

DATE RECEIVED: _____

Reviewed records indicate you have been approved for surgery we are awaiting your appointment date. Should you experience problems sickcall is available.

**RECEIVED**

**MAR 03 2017**

HEALTH SERVICES
ADMINISTRATOR

| [The following pertains to informal grievances only:] |
| Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.] |

| Official (Print Name): M. TOMLINSON, RN | Official (Signature): M Tomlinson rn | Date: 03.10.17 |
| Health Services Administrator | Union CI/Centurion | |

Original: Inmate (plus one copy)
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Exhibit #13

## INMATE REQUEST

**STATE OF FLORIDA**
**DEPARTMENT OF CORRECTIONS**

Mail Number: _____
Team Number: _____ 4
Institution: Union, C.I.

| TO: (Check One) | ☐ Warden ☐ Asst. Warden | ☐ Classification ☐ Security | ☑ Medical ☐ Mental Health | ☐ Dental ☐ Other |
|---|---|---|---|---|

| FROM: | Inmate Name Hurst, Wilbert R. | DC Number U22029 | Quarters D3-106 | Job Assignment House man | Date 3/7/17 |
|---|---|---|---|---|---|

**REQUEST**                                      Check here if this is an informal grievance ☑

This is an informal grievance based on the F.D.O.C's failure to provide medical treatment for my broken right hand that was sustained on Jan 5, 2017.
An x-ray was taken and it was confirmed by Dr. Bichara that my right hand is broken. He recommended that I have surgery, on 1/27/17. I was taken to the Lake Butler RMC on 2/15/17 and was seen by Dr. Ong. He scheduled me for surgery on 2/16/17, but I was told it was ~~XXXXX~~ rescheduled for the following week. It's been three weeks and I still haven't had the surgery. It's been over two months since I broke my hand, and its getting worse and I'm in constant pain.
It is for the above reason why I'm writing this informal grievance.

All requests will be handled in one of the following ways: 1) Written Information or 2) Personal Interview. All informal grievances will be responded to in writing.

Inmate (Signature): _Wilbert R. Hurst_          DC#: U22029

**RECEIVED**

---

DO NOT WRITE BELOW THIS LINE

## RESPONSE                                      DATE RECEIVED: **MAR 14 2017**

HEALTH SERVICES ADMINISTRATOR

Reviewed records indicate you have been approved for surgery. We are awaiting an appointment date. Should you experience problems side call is available. Please be advised that sometimes appointments get rescheduled due to circumstances beyond our control. We have contacted scheduling to inquire about an appointment date.

[The following pertains to informal grievances only:]

Based on the above information, your grievance is _____. (Returned, Denied, or Approved). If your informal grievance is denied, you have the right to submit a formal grievance in accordance with Chapter 33-103.006, F.A.C.]

| Official (Print Name): M. TOMLINSON, RN Health Services Administrator | Official (Signature): M. Tomlinson RN | Date: 03.16.17 |
|---|---|---|

Original: Inmate (plus one copy)   Union CI/Centurion
CC: Retained by official responding or if the response is to an informal grievance then forward to be placed in inmate's file
This form is also used to file informal grievances in accordance with Rule 33-103.005, Florida Administrative Code.

Informal Grievances and Inmate Requests will be responded to within 10 days, following receipt by staff.
You may obtain further administrative review of your complaint by obtaining form DC1-303, Request for Administrative Remedy or Appeal, completing the form as required by Rule 33-103.006, F.A.C., attaching a copy of your informal grievance and response, and forwarding your complaint to the warden or assistant warden no later than 15 days after the grievance is responded to. If the 15th day falls on a weekend or holiday, the due date shall be the next regular work day.

DC6-236 (Effective 12/14)

Exhibit #14

FOR USE BY RMC ONLY

## FLORIDA DEPARTMENT OF CORRECTIONS
## CONSENT FOR SURGICAL PROCEDURE(S) AND ANESTHESIA

Patient _Hurst, Wilbert_          Procedure Date _3-30-17_

I hereby authorize _Dr. Ong_ to perform the following operation(s) _____

_Open reduction and internal fixation right 5th metacarpal_

I _Wilbert Hurst_, in good faith, and having no mental or physical incapacities preventing me from participating in this consent, consent to the proposed course of treatment at Reception and Medical Center Hospital. It has been fully explained to me that during the course of an operation it is always possible that unforeseen conditions may necessitate additional or different procedures than those described to me. I authorize and request that my physician, his/her assistants, or his/her designee(s) administer such additional treatment and perform such additional procedure(s) as therapeutically necessary.

The general nature and purpose of the anticipated procedure(s), the benefits of the procedure(s), the medically accepted alternative procedures or treatments, and the substantial risks, possible complications, and hazards in the proposed procedure(s) have been explained to me. I understand such risks and I consent to the proposed operation and/or procedure(s). The answers I have given to all questions asked of me are true to the best of my knowledge and I have not withheld any information.

The physician has explained to me the risks of complications occurring during or as a result of the procedures to be performed, including but not limited to infection, injury, or even death despite the procedure being performed in accordance with an accepted standard of practice. I understand that the explanation that I have received is not exhaustive and there may be other, more remote risks. I have had the opportunity to ask questions regarding the proposed operation and/or procedure(s) and all my questions have been answered to my satisfaction.

I authorize and direct the surgeon and/or his associates or assistants to provide such additional services for me as is deemed reasonable and therapeutically necessary including, but not limited to, the performance of services involving radiology and pathology.

I consent to the administration of local, regional, or general anesthesia and the use of narcotics, sedatives, and tranquilizers as deemed advisable with the exception of _____.

I have been advised of the risks involved with the administration or transfusion of blood and/or blood products, and I consent to the administration of transfusion of blood and/or blood products when considered necessary by my attending physician and anesthesiologist. I further consent to the disposal of any tissue, parts, or organs that are removed during the operation and/or procedures(s), in accordance with the medical staff rules and regulations.

For the purpose of advancing medical education, I consent to the admittance of approved observers to the operating room.

I hereby certify that I have read or have had read to me this Consent for Operation Procedure(s) and Anesthesia form and I fully understand the above authorization. A photostatic copy of this authorization shall be considered as effective and valid as the original.

_Wilbert R. Hurst_                              _M. Rogero_ 3/30/17
Patient Signature/Date/Time                    Witness Signature/Date/Time

_____ 3/30/17 091_
Physician Signature/Date/Time
**I have explained the above to the patient and the patient consents to the above. _____ (Physician's initials)**

Inmate Name
DC#_____ HURST, WILBERT
Date of Birth DC#: U22029 B/M
Institution___ DOB: 08/30/1957 (59)

This form is not to be amended, revised, or altered without approval of the Deputy Director of Health Services Administration

FOR USE BY RMC ONLY

DC4-0047 (11/03)

Exhibit # 15

5-24-17- Went to the RMC, seen Dr. Ong, he took pins out of my hand. Hand still swollen. He ordered four more weeks wearing the cast. Ordered more calcium pills.

6-28-17- Went to RMC, removed the cast by Dr. Ong. Hands still swollen. He said I'll be starting physical therapy 2X per week for 8 wks. ordered pain pills.

7-12-17- Went on sick-call about my hand. Pass denied for renewal. I told nurse, that my hand is still swollen. Showed her my hand.

Aug 1, 2017 went to RMC for physical therapy. Had to squeez a hand operatus to measure strength in hand, and other measurments to get base line data. He said I have to get approval for further treatment. Hand still swollen, still can't make a closed fist.

1st tx

Aug 20, 2017 Appnt to OPD re: PT, said I'll be going soon (seen Ms. Parrish)

2nd tx

Sep 1, 2017- Went to RMC for physical therapy. They said it's complete, unless I can get more P.T. approved.

3rd tx & 4th tx

Sep 21, 2017- Went to RMC for physical therapy. → (Sep 26, 2017 P.T. (last one ordered she said)

4th tx (last one ordered she said)

Sep 28, 2017- OPD appt, told Dr. Perez that I need more P.T. because I still can't make a fist.

Nov 17, 2017- Another OPD Appnt, told Dr. Perez that I need more P.T. He put in paperwork, for more P.T. He said that my hand will never be like it used to be.

Jan 10, 2018- OPD Appnt with Dr. E.L. Toledo, He told me that more P.T. was denied from Centurion. He went over the x-rays with me. He explained to me that my right pinky finger is deformed now because after the surgery it healed wrong. Its not aligned right. The knuckle is too low. He said it will have to be rebroken again and then perform another surgery. He showed me the calcium build up on the finger. It didn't turn out right because they took too long to perform the surgery. He will submit his recommendation, and follow-up with me later.

Jan 29, 2018- X-Ray's taken of my right hand

Feb 20, 2018- Went on sick-call regarding broken hand. Cancelled because they didn't have my chart (chart wasn't available)

Feb 21, 2018- Went on sick-call regarding my right hand. Told nurse I have a new job pushing 600 Lb carts, and my deformed R hand is starting to hurt. She wrote an order for tolenol. The nurse didn't have my chart (she seemed puzzled because my chart was still not available)

Feb 26, 2018- OPD appnt cancelled

Exhibit #16

# CONSULTANT'S REPORT

**NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL EXECUTIVE DIRECTOR, DEPARTMENT OF CORRECTIONS**

**Additional History:** ® 5th MC Neck Fx ORIF 3-30-17, 4-25-17 Pin Removal
Con splint (R) wrist + (R) hand removed on 6-28-17
6-28-17 Dr. Ong ordered PT and OTx after completing PT

**Findings:** (R) Swollen (R) ROM ↓ stiffness

**Posture:** (R) 5th DIP mallet finger deformity

**Plans:** (R) 5th MCP: flex 55° / ext 00°
PIP 30° / 0° Hom (R) Index, Ring: Limited Flexion 25% thru
DIP 60° / 0°

**Strength:** (R) Grip 10# (L) 95# (R) Index - Ring finger flex = 3/5 ext = 3/5
(R) 5th finger flex 2/5 ext (MCP, PIP) = 2/5, DIP = 0/5

**Adls:** (R) 5th finger flex = grip difficulty, hst problem

**HEP:** Finger flexion: PIP AA-PROM 10reps x 15seconds; DIP ext AA Prom, 4reps 5x = 4x/day
Grip Isometrics
OVAL 8 #8 finger #5 splint for DIP Mallet finger deformity.

**Recommendations:** PT 2w8 for MHP, CP, NMES. Ther Ex of AAROM, AROM, PRE
HEP instruction
Hand therapy Dr. Ong after PT completed

**PT goals:**
1. Improve (R) 5th finger PIP flex = 70-90° Arom c gripping
2. Improve (R) grip = 105#
3. Push, Pull, Lift carry (R) UE = ∞-30#

**Consultant's Signature/Stamp:** John Salman, PT  **Date:** 8-1-17

IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY INFORMATION CONCERNING ANY PLANNED EVENT OUTSIDE THE INSTITUTION

**Inmate Name:** Hart, Wilbert
**DC#:** R22028
**Race/Sex:** B/M
**Date of Birth:** 8-30-57
**Institution:** Union C.I.
**LOS DATE:**

E. Perez, MD
Site Medical Director
Union C.I.

USE ADDITIONAL SHEET(S) AS NECESSARY

This form is not to be amended, revised or altered without approval of the Deputy Assistant Secretary of Health Services.

DC4-703 (Revised 10/05) Bad 2012

Exhibit 17 (A)

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: Ibuprofen

| DATE/TIME | |
|---|---|
| 9/1/17 0815 #18 | Inc. Note-Physical Therapy |
| | S: "I still can't close my hand." |
| | O: MHP to ® hand x 10' f/b PROM to ® 5th finger flex, |
| | ® bean + rice bowls, red dial flex, dial extend, |
| | ball squeeze, clothes DMS, RTB ® finger flex, |
| | Grip ® 5 2# Ⓛ 15# AROM ® 5th MCP 0-35, |
| | PIP 0-40°, DIP -50°-80° |
| | A: I/M has made some good improvement in obj. |
| | m&mts since eval, I/M has not completely |
| | met goals set by primary P.T. |
| | P: I/M has completed current authorized P.T. visits |
| | I/M would benefit from cont. P.T. of 2x wk x 3 wks |
| | to further improve strength + ROM of ® hand |
| | Connie Spitzer, PTA                    Connie Spitzer, PTA |
| 9-1-17 1130 | Inc. note: Inmate Returned from |
| | OBP - T-97  P-70  R-13  B/p 143/78  Wt 198 |
| | Voiced no problems or concerns. |
| | G. Walden, LPN |
| | G. WALDEN, LPN |
| | UNION CI |
| 9/21/2017 | Patient returns from physical therapy because he still |
| | needs physical therapy that does not have P.T.O.M. |
| | with him to do exercises with limited ROM |
| 9/21/17 | E. Perez-Lugo, MD |
| | Site Medical Director |
| | Union - Centurion |

---

O-U22029 TM04 04/17/08
HURST, WILBERT R.
B/M DOB 08/30/1957(59)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E- Education

This form is not to be amended, revised, or altered without approval
by the Office of Health Services-Administration

DC4-701 (Revised 10/31/08)

Exhibit 17(b)

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: Ibuprofen

| DATE/TIME | |
|---|---|
| 9/ 13 /17 1032 | PATIENT NOT SEEN BY THE PSYCHIATRIST (VIA TELEPSYCHIATRY) THIS DATE & TIME. RESCHEDULED PER REGION OFFICE DUE TO ISSUES THAT ARE SECONDARY TO THE HURRICAINE THAT OCCURRED EARLIER THIS WEEK. K. Crawford, MH Clk. Union CI/Centurion |
| 09/20/17 1315 | SEEN BY MENTAL HEALTH   P. Ellis, MS Psy Mental Health Professional Union CI  pe. |
| 9-19-17 11:55 | INCIDENTAL NOTE  Physical Therapy apt. @ RMC /on  9-21-17  KJohnson |
| 9/21/17 0920 #1 of 2 | Inc. Note - Physical Therapy S: "My hand is about the same." O: MHP to (R) hand X10' - f/b (R) ball squeeze (R) bean + rice bowls (R) bread dirat flex, dig extend, clothes pins, RTB (L) 5th finger flex, ended c OP to same X10' A: I/M c some soreness in (R) 5th finger p therex's. P: cont. per POC   Connie Spitzer, PTA      Connie Spitzer, PTA |
| 9/21/17 @ 1430 | Inc Note: I/m returned from RMC appt. Ø incident reported. VS 122/78, 65, 97.8, 18 WT. 196. Ø S/S of any distrip @ this time.      R. Landrem  R. Landrem |
| 9-25-17 09:43 | INCIDENTAL NOTE  Physical Therapy @ RMC on 9-26-17  KJohnson  Karen Johnson |

Inmate Name  Hyatt, Wilbert
DC# 142022 , Race/Sex B/M
Date of Birth  8-20-57
Institution  UCI

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E-Education

Exhibit 17 (c)

## FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: Ibuprofen

| DATE/TIME | |
|---|---|
| 9/26/17 0850 #1 of 2 | Inc. Note-Physical Therapy<br>S: "I still can't make a fist. Not much has Δd."<br>O: Tx consisted of all activities per previous visit, GROM (R) 2# (L) 105# (R) 5th AROM MCP 0-60°,<br>PIP 0-40°, DIP -30°-70°<br>A: I/M has made some improvement in adj. mvmts since eval. I/M has not met goals set by primary P.T.<br>P: I/M has completed current authorized P.T. visits. I/M would benefit from cont. P.T. of 2x wk x 4 wks to cont. to improve strength, ROM, & functional ability of (R) hand<br>Connie Spitzer PTA          Connie Spitzer, PTA |
| 9-26-17/1840 | Inc. Note: Return from OPT RMC appt for P.T. No S/p, am. VS: 98⁴ 57 18-13²/88 -98% 196- Kac R. BIERCE, RN UNION CI |
| 9/28/17 | **DOCTORS CLINIC**<br>T 98⁴  P 61  R 12   CC, RC, PE - See DC4701F<br>BP 126/85  WT 195   Pneumo up to date<br>hemmocult-neg x3. HE provided to pt Aponshin<br>A. PARRISH, LPN UNION CI |

0-U22029 TM 04 04/17/08
HURST, WILBERT R.
B/M DOB 08/30/1957(59)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E- Education

This form is not to be amended, revised, or altered without approval
by the Office of Health Services-Administration

DC4-701 (Revised 10/31/08)

# FLORIDA DEPARTMENT OF CORRECTIONS
## CONSULTATION REQUEST/CONSULTANT'S REPORT

| Type of Service: | FROM Institution: Union | DATE OF REQUEST: 1/17/17 |
|---|---|---|

Reason(s) for consultation:
Evaluate and recommend diagnostic plan _____
Evaluate and recommend treatment plan _____
Other (specify): _____

Acuity of consultation:
Emergency _____
Urgent _____
Routine _____

DATE APPOINTMENT MADE: 1/17/17

Staff Signature: AP

APPOINTMENT DATE:

Visit Type - Initial ☐ Follow-up ☑
Follow-up consults require justification

Condition is (check one): ☐ Acute Trauma   ☐ Acute Illness   ☐ Chronic

History of present illness (include onset, presentation, progress, therapy):
60 y/o Pt underwent 8th metacarpal neck fracture (3/30/17) with ↓ ROM on involved hand. Patient went to physical therapy approved appointments.

Physical findings: doing exercises at home even with headache.
Today comes for evaluation he is unable to make full fist. Persists ↓ ROM chronically range of motion 5°, 14° + 3°. Please evaluate for

Diagnostic findings (explain laboratory, x-ray, or other test findings): further recommendations -

Other pertinent information:

Provisional diagnosis: Subcapital neck fracture ↓ ROM (ORIF and physical therapy completed)

Health Care Provider Signature/Stamp: E. Perez-Lugo M.D.
Site Medical Director
Union CI - Centurion   1/17/17

CHO/Designee Approval Signature/Stamp:

## AUTHORIZATION FOR SPECIALTY EVALUATION

I, the undersigned, have had explained to me and understand that I require _____
which cannot be accomplished at _____
I also understand that should hospitalization and/or surgery be necessary, a separate consent form will be signed prior to such hospitalization and/or surgery. I therefore consent to be referred to a reception and medical center, or such other health care facility as may be appropriate for the reason(s) stated, and consent to undergo health care services as may be necessary to evaluate my health status.

Signature of Patient: Wilbert R Hurst       Date: 11/17/17

Signature of Witness: _____        Date: _____

## IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name: Hurst Wilbert
DC#: U22029       Race/Sex: B/M
Date of Birth: 8/30/57
EOS DATE: _____

RECEIVED
NOV 17 2017
BY: AP

DC4-702 (Revised 2/4/15) Page 1 of 2

**PART B - RESPONSE**

| HURST, WILBERT | U22029 | 1802-213-078 | UNION C.I. | J31081 |
|---|---|---|---|---|
| NAME | NUMBER | FORMAL GRIEVANCE LOG NUMBER | CURRENT INMATE LOCATION | HOUSING LOCATION |

Log #1802-213-078

Your request for Administrative Remedy or Appeal has been reviewed and evaluated.

Reviewed records indicate that you were seen by the clinician on January 10, 2018, and since that time you have not accessed Sick-Call for any complaints. Please, be advised that qualified clinicians based on sound clinical judgment determine the treatment plan to include the need for surgery. There is no indication that you have been denied medical care or access to medical. You have an upcoming appointment scheduled in the near future. Should you experience problems or have concerns before then, Sick-Call is available.

Based on the above information, your grievance is denied.

You may obtain further administrative review of your complaint by obtaining Form DC1-303, Request for Administrative Remedy or Appeal, completing the form, and providing attachments as required by Chapter 33-103 and forwarding your appeal to the Bureau of Inmate Grievance Appeals, 501 South Calhoun St., Tallahassee, Florida, 32399-2500, within 15 calendar days of this mailed response.

THIS DOCUMENT MAY CONTAIN CONFIDENTIAL HEALTH RECORD/CARE INFORMATION INTENDED FOR THE ADDRESSEE ONLY. UNAUTHORIZED RELEASE OR DISCLOSURE MAY VIOLATE STATE AND FEDERAL LAW.

E. Perez, CHO                                    T. Knox, Assistant Warden

| SIGNATURE AND TYPED OR PRINTED NAME OF EMPLOYEE RESPONDING | SIGNATURE OF WARDEN, ASST. WARDEN, OR SECRETARY'S REPRESENTATIVE | 2-23-18 |
|---|---|---|
| | | DATE |

**MAILED**
FEB 23 2018
UCI GRIEVANCE OFFICE

Exhibit #2)

# FLORIDA DEPARTMENT OF CORRECTIONS
## Chronological Record of Health Care

Allergies: Ibuprofen

**DATE/TIME**

1/10/19

DOCTORS CLINIC

T 97.4   P 80   R 16      Flu AP

BP 96/105   WT 182   02 Sat 97%.

S- Inj to discuss ATP for Plastics consult on a s/p ORIF 5th metacarpal bone producing a poor healing & now caring 3rd, 4th & 5th fingers

O- Amb, ambulatory, alert, oriented, in NAD

heart: RR no m/r/g

lungs: CTA

abd: soft NT, BS no tenderness

Ext: 1 expressed 5th MP joint fixed 5th DJD, joint LRom 3rd 4th & 5th fingers, unable to fully closed fist

A: poor healing in fracture finger

P: surgical consult x-rays

repeat & continue hand x-rays

E: given + verbalizes understanding

E. Toledo MD

01/12/18   INCIDENTAL MENTAL      P. Ellis, MS Psy
00:45      HEALTH NOTE            Mental Health Professional
                                  Union CI

01/17/18   SEEN BY                P. Ellis, MS Psy
1440       MENTAL HEALTH          Mental Health Professional
                                  Union CI

0-U22029 TM 04 04/17/08                    M
HURST, WILBERT R.
B/M DOB ████ 1957(60)

S- Subjective Data
O- Objective Data
A- Assessment of S and O Data
P- Plan
E- Education

DC4-701 (Effective 4/8/10)    Incorporated by Reference in Rule 33-602.210

FDOC 00048

Exhibit #22

# FLORIDA DEPARTMENT OF CORRECTIONS
## HEALTH SLIP/PASS

The below-named inmate is authorized for:

☐ Bed rest lay-in        From_____ To_____

☐ Low/bottom bunk        From_____ To_____

☐ No shave               From_____ To_____

☑ Restricted activity    From 5·18·18 To 5·18·19

☐ Restrictions: No push / no pull / >5
No lift >15 lbs
_____
_____

☐ Other:         From_____ To_____
_____
_____

Inmate Hurst, Wilbert

DC# U22029    R/S B/m    Authorized
by: J. Put, ARNP
Date of Birth  8130151    (Initial & Name Stamp)
Institution   UCI    Date: 5·18·18

J. Putney, ARNP
Union / Centurion

Health Slip/Pass
DC4-701D (2/96)    White/Medical  Yellow/Security  Pink/Inmate

Exhibit # 27(b)
Exhibit # 23

Defendant objects to such requests on such grounds. Defendant is not obliged to and will not disclose information protected from discovery by virtue of said privileges or doctrines. The foregoing general objections are incorporated by reference into each response as though fully set forth, regardless of whether any or all of said objections are repeated in response to any specific request.

### Responses to Requests for Admission

**Request No. 1:** Dr. Erron Campbell was/is employed with Centurion of Florida, LLC as the regional medical director from the dates January 5, 2017 through January 10, 2018.  If not, who is/was the regional medical director from those dates?

**Response:   Denied. Defendant Campbell was employed with Centurion of Florida, LLC from April 2016 through April 2019, and was regional medical director during that time.**

**Request No. 2:** Dr. Erron Campbell had a policy that "no procedure(s) may be performed without prior approval by the Regional Medical Director" (in the date range of question # 1).

**Response: Denied.**

**Request No. 3:** On Form DC4-669 (Pre-Approval of Health Care Services form) the only factors that are listed to determine if any procedure is approved or not re: (Diagnosis); (Surgery/Procedure Requested); (Estimate LOS); (Hospital Cost); (Physician Cost); and (Total Estimated Cost).

**Response: Defendant objects to this Request because the referenced form speaks for itself.  To the extent this Request misstates that form, it is denied.**

**Request No. 4:** You are also responsible for approving physical therapy treatments.

Exhibit #24(a)

# CONSULTANT'S REPORT

**NO PROCEDURE(S) MAY BE PERFORMED WITHOUT PRIOR APPROVAL BY THE REGIONAL MEDICAL DIRECTOR or UTILIZATION MANAGEMENT.**

**Additional History:**

ATP 11-28-17

**Findings:**

- Please repeat hand xray
- Encourage pt to continue exercises taught by PT
- It is unclear what actions pt is unable to perform and how it is affecting ADL's
- Can RMD to discuss

**Recommendations:**

**Consultant Signature/Stamp:** _____    **Date:** _____

IT IS ABSOLUTELY NECESSARY THAT INMATES ARE NOT MADE AWARE OF ANY SCHEDULING INFORMATION PENDING ANY APPOINTMENT OUTSIDE THE INSTITUTION

Inmate Name _____

DC# _____ Race/Sex _____    **USE ADDITIONAL SHEET(S) AS NECESSARY**

Date of Birth _____

Institution _____

EOS DATE: _____

DC4-702 (Revised 2/4/15) Page 2 of 2

This form is not to be amended, revised, or altered without approval of the Director of Health Services Administration.

Exhibit #25

## Department of Corrections – Office of Health Services
### Request for Prior Approval of Health Care Services
Surgery, Procedures, Scheduled Hospital Admission, and Ancillary Services

### ALL BLANKS MUST BE COMPLETED - MANDATORY

Attach all pertinent documentation to expedite the approval process:
DC4-701, Laboratory and X-ray Reports, Consultation Reports, etc.

Routine _____✓_____     Urgent _____     Emergent _____

Sending Institution   **Union CI**                     Date of Request   8/2/17

DIAGNOSIS   5th metacarpal neck fracture ↓ROM

Date of Onset _____     Preexisting Condition _____

Surgery/Procedure Requested   F/F 2W8 for MHP, CP in MES, Then Ex of AAROM
Araclu

Facility where Surgery/Procedure/Other to be Scheduled:
RMC _____   RMC-MSU _____   MMCJ _____   FHE _____   Other _____ (Identify)

Attending Physician _____     Telephone Number _____

Estimated -LOS _____   Hospital Cost _____   Physician Cost _____

Total Estimated Costs _____   Date Faxed to UM   8-317-A8

Signature of Chief Health Officer _____
                                    L. Perez-Lugo, MD
                                    Site Medical Director           **APPROVED**
**********************************************************************************
Date Prior-approval Received in Utilization Management _____

Date Approved _____   Signature of Nurse Reviewer _____

Date Referred by Physician
Advisor _____

Date Reviewed by Physician Advisor _____   Approved   Y _____   N _____

If the Physician Advisor does not approve Request, a Memorandum will be sent to the Chief Health Officer.

Institutions will be notified of status of approval process via fax (in the future will be e-mailed). Institutional logs should be carefully maintained to reflect the status of approval process and completion date of surgery/procedure. If you have any questions regarding the approval process, please call the Utilization Management Section at Reception Medical Center (386-496-6720).

Inmate Name   Hurst, Wilbert
DC#   172079            Race/Sex   b /M      Custody Level _____
Date of Birth   8/20/83                        EOS Date _____
Institution:   Union CI

DC4-669 (Revised 12/1/10) Page 1 of 1

Exhibit # 26

— Mar 16, 2018 - seen Dr Toledo prescribed Naproxin, denied medical pass re: no push no pull

— May 7, 2018 - sent civil complaint to fed court

— May 18th - OPD appt, seen Dr. Putney, she wrote me no push no pull pass.

— May 19th - woke up and forced to push carts by Buchanan; filed informal grievance and put in sick-call request regarding no push no pull pass.

— May 20th - woke up to push carts again by Buchanan

— May 21st - woke up to push carts again;

May 22nd - went on sick-call to retrieve pass; went to check cashing

May 23rd - sent letter to court requesting to add another defendant to claim. filed complaint with Inspector Generals office and civil Rights Div of the FDX re: Buchanan

— May 24, 2018 - went on sick-call regarding swelling and pain in hand; requested naproxin. show RN McClellan my hand. I told her that it's been over a year since the surgery and my hand is still swollen and deformed. I asked her can I have another surgery. she said, "no." I then said, you mean it will have to be this way for the rest of my life. she said, "yes. You know how they do it here. I'm just being honest."

— May 29, 2018 - Received denial on my informal grievance that I filed regarding pushing carts dispite having a pass

— May 31, 2018 - Filed formal grievance regarding no push no pull pass to Warden

— June 13, 2018 - Received response from Warden regarding formal grievance about no push no pull pass.

— June 27, 2018 - Received response back from Tallahassee re: corrective surgery. (Appeal Denied) need for

*Exhibit #27(a)*

# Francis D. Ong, M.D., P.A.

Cosmetic and Plastic Reconstructive Surgery
Hand and Microsurgery
1895 Kingsley Avenue · Suite 403 · Orange Park, Florida 32073
Tel: (904) 213-9005 · Fax: (904) 213-9010 · Email: drfrancisong@gmail.com

**DDC CLINIC PATIENTS**
**FROM**
**February 01-23, 2017**

| DATE OF SERVICE | NEW PATIENT | FOLLOW-UP VISIT | TOTAL |
|---|---|---|---|
| February 01, 2017 (Wednesday) | 01 | 09 | 10 |
| February 02, 2017 (Thursday) | (4 SURGERIES) | | |
| February 08, 2017 (Wednesday) | 12 | 11 | 23 |
| February 09, 2017 (Thursday) | (3 SURGERIES) | | |
| February 15, 2017 (Wednesday) | 09 | 15 | 24 |
| February 16, 2017 (Thursday) | (5 SURGERIES) | | |
| February 22, 2017 (Wednesday) | 10 | 04 | 14 |
| February 23, 2017 (Thursday) | (3 SURGERIES) | | |
| TOTAL | 32 | 39 | 71 |

*New patients*     *Follow-up visits*

91823-10

IN THE UNITED STATED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT R. HURST,
INMATE #U22029                                        CASE NO. 4:18-cv-00237-RH-CAS

     Plaintiff,

v.

CENTRUION OF FLORIDA, LLC, an out-
of-state corporation registered and doing
business in Florida; DR. FRANCIS ONG, in
his individual and official capacity; DR. E.
PEREZ-LUGO, in his individual and
official capacity; DR. ERRON
CAMPBELL, in his individual and official
capacity; Nurse JANE DOE I in her
individual capacity, and Nurse JANE DOE
II in her individual capacity.

     Defendants

_____/

### DEFENDANT, FRANCIS D. ONG, M.D.'s, ANSWERS TO PLAINTIFF'S FIRST INTERROGATORIES

     Defendant, Francis D. Ong, M.D., hereby submits Answers to the Plaintiff, Wilbert R.

Hurst's, First Interrogatories, and states as follows:

     1.    How many plastic surgeries did you perform on February 15 and February 16,
2017?

     **ANSWER:**    **I performed zero (0) surgeries on February 15, 2017, and five (5)
surgeries on February 16, 2017.**

     2.    Do you have a log of the plastic surgeries that you performed at the RMC?
(Produce the documents of the surgeries you performed in the month of February, 2017.

     **ANSWER:**    **Yes. Please see Defendant's response to request #1 of the Plaintiff's
First Request to Produce.**

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**NON-TRAUMATIC JOINT/EXTREMITY PAIN PROTOCOL**
**NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.**

SUBJECTIVE: Date: 5/22/18  Time: 1010  Age: 100  ☑ Sick Call  ☐ EMID   *Singular, ASA*

Allergies: *Tolimotrim*

Current Medication/s: *Naproxen, Tylenol prn ac, Ritalin, Lisinopril, Pravastatin, Albuterol, Xopenex*
Medical History: *HTN, CAD, Hyperlipidemia, Asthma*

Do you have Sickle Cell Disease? ☑ No ☐ Yes → Does this joint/extremity pain feel like your usually SCC pain? ☑ No ☐ Yes → assess patient using *Sickle Cell Crisis Protocol*, DC4-683QQ.

Do you have hemophilia? ☑ No ☐ Yes

Have you had a recent tick bite? ☑ No ☐ Yes → when? *N/A*

Chief Complaint (in patient's own words): *"my ℝ hand is hurting since the surgery and I'm wondering why my Naproxen was stopped"*

Location where pain is the worse: *ℝ Hand*  Does pain radiate? ☑ No ☐ Yes → to: *N/A*

**NOTE:**
If arm pain extends to neck, jaw, or shoulder and is accompanied by chest pressure or pain, assess pt. using DC4-683E protocol.
If bilateral, non-traumatic ankle swelling is present along with recent h/o chest pain, productive cough, or SOB, assess pt. using DC4-683D protocol.
If pt. is complaining of unilateral calf pain, swelling, or redness, assess pt. using DC4-683PP protocol.

Pain Level: ☐ 0 ☐ 1 ☐ 2 ☐ 3 ☐ 4 ☐ 5 ☑ 6 ☐ 7 ☐ 8 ☐ 9 ☐ 10   Initial onset of pain: ☐ Sudden ☑ Gradual

Onset of pain: x ___ hours / days / months / years (circle appropriate timeframe)

Onset of swelling: x *N/A* hours / days / months / years (circle appropriate timeframe) OR ☑ No swelling

Recent trauma to painful area? ☑ No ☐ Yes → proceed to appropriate trauma Protocol

Have you had any recent unusual exertion or over use of this extremity (e.g., recently assigned to Laundry)? ☑ No ☐ Yes

Have you ever seen a clinician for this same pain/swelling? ☐ No ☑ Yes → Most recent date: *5/8/18*  Dx: *ASO S/P fracture 2017 deformity present*

Are you able to walk or bear weight on affected leg? ☐ No ☑ Yes ☐ NA

Do you have any numbness or tingling in affected extremity? ☑ No ☐ Yes → ☐ Constant ☐ Intermittent, especially at ___

Are you able to bend and straighten the joint? ☐ No ☑ Yes   Does your joint feel stiff? ☐ No ☑ Yes

Have you lost 10 or more lbs. recently without trying? ☑ No ☐ Yes → last recorded wt. in medical record: *190* Date: *5/8/18*

Have any noticed any other symptoms since your joint/extremity pain started? (e.g., decreased appetite, feels hot, no energy, etc.)

OBJECTIVE: Temp: *98*  Pulse: *80*  Resp: *17*  Blood Pressure: *130/80*  O₂ sat: *97* %  Weight: *197*
LMP: *N/A*  Blood sugar: *104* (all patients)   If blood sugar is ≥ 200, assess patient ALSO with DC4-683MM protocol.

Physical assessment of affected joint/extremity:   (compare to corresponding, non-affected site - - i.e., L ankle vs. R ankle)

* Skin color (compare to non-affected side): ☑ Normal skin tone - No difference ☐ Reddened → diameter of reddened area: ___
   ☐ Red streaks extending out from affected area
* Skin temp (compare to non-affected side): ☑ No difference ☐ Warmer ☐ Feels hot to touch
* Swelling (compare to non-affected side): ☑ No swelling/pitting noted ☐ Mild swelling /1+ pitting
   ☐ Moderate swelling/2+ pitting ☐ Severe swelling/3+pitting ☐ Deep 4+ pitting
* Point tenderness: ☑ No change in pain level with mild palpation ☐ Pain in affected area increases with mild palpation

*started 1830  Reviewed by MD  No new orders  tken*

INMATE NAME: *Hurst, Wilbert*
DC#: *020289*  RACE: *B*  SEX: *M*
DATE OF BIRTH: *4/01/__*
INSTITUTION: ___

SIGNATURE AND STAMP/ PRINT of person completing form
*I. McClellan, RN*  I. McClellan, RN
RN OR CLINICIAN REVIEWER   *Panion* CI/Centurion

DC4-683HH (Revised 3/7/17)
This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

**DEPARTMENT OF CORRECTIONS**
**OFFICE OF HEALTH SERVICES**
**NON-TRAUMATIC JOINT/EXTREMITY PAIN PROTOCOL**
NOTE: ALL PROTOCOLS COMPLETED BY LPNS MUST BE REVIEWED AND COSIGNED BY A RN OR CLINICIAN.

**FINDINGS REQUIRING IMMEDIATE CLINICIAN NOTIFICATION**
- ☐ Patient has hemophilia.
- ☐ Severe pain (7-10 pain level).
- ☐ Oral temperature ≥ 100.4 (r/o osteomilitis, septic arthritis, etc.).
- ☐ New onset inflamed area ≥ 5cm.or any size reddened area with red streaks.
- ☐ Affected extremity is cold, blue, or numb OR much cooler in comparison to other extremity.
- ☐ Sudden shoulder pain accompanied by abdominal pain in woman with menses > 4 weeks late (r/o ectopic pregnancy).
- ☐ Unable to bear wt. or walk on extremity (Does clinician need to admit patient to the Infirmary for pain control & help with ADLs?)
- ☐ Blood sugar >200 and patient has not been diagnosed with diabetes.
- ☐ History of recent tick bite (r/o Lyme disease).
- ☐ Fever, point tenderness, unilateral, non-use, & h/o recent infection (r/o osteomilitis).

**FINDINGS REQUIRING CLINICIAN EXAMINATION WITHIN THE NEXT 24 HOURS**
(Note:  if clinician won't be able to see pt. within the next 24 hours, call the on-call MD for orders and patient disposition NOW).
- ☐ Joint mild/moderately painful, swollen, warm to touch, or red with no known injury (r/o bursitis, tendonitis, rheumatoid arthritis, osteoarthritis, etc.).
- ☐ Pain increases with movement.
- ☐ H/o heart, liver, kidney disease, immunosuppression, diabetes, or recent illness, such as sore throat or skin infection.
- ☐ New prescription medication.
- ☐ General ill feeling, malaise, decreased appetite.
- ☐ Limited movement of affected extremity.
- ☐ Numbness or tingling in hand/s, especially at night or upon awakening in the morning (r/o carpel tunnel syndrome).
- ☐ Unilateral heel pain, especially when first standing up, getting out of bed, with walking, etc. (r/o plantar fasciitis).
- ☐ Moderate swelling, and/or fluid on the knee.
- ☐ Knee buckles or locks into place.
- ☐ Moderate pain in joint or base of big toe (r/o gout).
- ☐ Joint pain has lasted > 3 days.
- ☐ Blood sugar is 120-200 and patient has not been diagnosed with diabetes.

**PLAN**
- ☐ Consider issuing a temporary Bedrest/Lay-In pass until inmate can see the MD in the next 24 hours (see HSB 15.02.16).
- ☐ Give acetaminophen 650 mg p.o. now or ibuprofen (if swelling is present) 400mg p.o. now for pain and/or temperature ≥ 100.4 unless contraindicated. *Naproxen renewal*

**EDUCATION**
- ☐ Elevate the affected limb/joint higher than the heart.
- ☑ Apply warm, moist heat (towel soaked in hot water) to painful area 3-4'x a day.
- ☐ When elevating lower extremity, DO NOT place anything under the knees.  Place pillow/folder blanket under the calf.
- ☑ Return if pain increases or if there's no improvement in pain or swelling after 48 hours of pain medication, warm soaks, and rest.
- ☑ Return if there's no improvement in the ability to use the affected extremity after 48 hours.
- ☐ Take acetaminophen 650 mg every 4-6 hours or ibuprofen (if swelling is present) 400mg every 4-6 hours as needed for pain unless contraindicated. *Naproxen*
- ☑ Return immediately for any onset of new symptom/s, including chest pain, frothy or pink tinged sputum, or shortness of breath.

INMATE NAME: *Hurst, Wilbert*
DC#: *U08039* RACE: *B* SEX: *M*
DATE OF BIRTH: ████████
INSTITUTION: *UCI*
DC4-683HH (Revised 3/7/17)

SIGNATURE AND STAMP/PRINT of person completing form
*L. McClellan, RN*
RN OR CLINICIAN REVIEWER     L. McClellan, RN
Union CI/Centurion

This form is not to be amended, revised, or altered without approval of the Chief of Health Services Administration.

FDOC 00038

Wilbert R. Hurst, 422024
Wakulla Correctional Institution Annex
110 Melaleuca Dr.
Crawfordville, FL 32327



CHECKED

Unite States District Court ;
Northern District of Florida
Office of the Clerk
111 North Adams St., Suite 322
Tallahassee, FL 32301-7730

Legal Mail

