IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

WILBERT HURST,

    Plaintiff,

v.                              CASE NO. 4:18cv237-RH-EMT

CENTURION OF FLORIDA, LLC
et al.,

    Defendants.

_____/

ORDER GRANTING SUMMARY JUDGMENT
FOR DR. ONG AND DENYING THE OTHER
SUMMARY-JUDGMENT MOTIONS

    The plaintiff Wilbert Hurst suffered a broken hand while an inmate in the Florida Department of Corrections. The defendant Centurion of Florida was the contracted medical provider for the facility. Mr. Hurst obtained an appropriate diagnosis and surgery, but only after egregious and unexplained delays, and he never received all the physical therapy the surgeon and others said was needed. His hand remains deformed and painful. Mr. Hurst now asserts an Eighth Amendment deliberate-indifference claim against Centurion, its regional medical director, the facility's medical director, the surgeon, and two nurses. Pending are cross-motions

for summary judgment. This order grants summary judgment for the surgeon, who performed promptly when given the opportunity, but otherwise denies the motions.

I

The third amended complaint seeks relief under 42 U.S.C. § 1983. The defendants are Centurion, its regional medical director Dr. Erron Campbell, the facility medical director Dr. Elliott Perez-Lugo, the surgeon Dr. Francis Ong, registered nurse Christin Judd Delaney, and licensed practical nurse Kristina M. Zebley. This order refers to the facility medical director as "Dr. Lugo," the shortened form he has himself used in his papers. The third amended complaint denominated the nurses Jane Doe I and II, but they have since been identified.

Pending are three summary-judgment motions, one filed by Mr. Hurst, one filed by Dr. Ong, and one filed by Centurion, Dr. Campbell, and Dr. Lugo. Ms. Zebley has moved to dismiss for failure to exhaust administrative remedies; that motion will be addressed in a separate order. Ms. Delaney has not been served with process; that circumstance, too, will be addressed in a separate order.

II

On a summary-judgment motion, genuine disputes in the evidence must be resolved, and all reasonable inferences from the evidence must be drawn, in favor of the nonmoving party. The moving party must show that, when the facts are so viewed, the moving party "is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A summary-judgment motion cannot be used to resolve in the moving party's favor a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

When there are cross-motions for summary judgment, the standard is applied separately to each motion. Here, though, Mr. Hurst's motion is plainly unfounded; he will be entitled to prevail only if he proves the disputed facts that are essential to his claim. This order thus sets out the facts as proper on the defense motions, that is, with genuine disputes resolved in Mr. Hurst's favor.

### III

The motions are before the court on the magistrate judge's report and recommendation, ECF No. 139. No objections have been filed. This order adopts the report and recommendation's full statement of facts, *see* ECF No. 139 at 13–30, and sets out here only enough to explain the summary-judgment rulings.

Mr. Hurst injured his hand in a fight on January 5, 2017. This led to placement in administrative confinement. During the required pre-confinement medical examination, Mr. Hurst told Ms. Delaney that his hand was swollen and painful and that he believed it was broken. She refused to provide medical care and falsely reported that Mr. Hurst made no medical complaints.

On January 8 or 9, while still in confinement, Mr. Hurst told Ms. Zebley that his hand was swollen and painful and that he believed it was broken. She gave him

a sick-call request form, which he filled out and returned, but he did not get a sick-call appointment.

Mr. Hurst got out of confinement and submitted another sick-call request on January 15. He was seen on January 18, and x-rays were ordered. The x-rays were taken on January 20 and read on January 24. The physician referred Mr. Hurst for an "urgent" consultation with a surgeon.

By February 13, nothing had happened, so Mr. Hurst submitted another sick-call request. This led to a consultation with the surgeon, Dr. Ong, on February 15. Dr. Ong obtained an x-ray, determined surgery was "urgent," and said it should occur on the next day, February 16. He was ready to perform the surgery that day, but it did not happen, apparently because the surgery had not yet been approved by Dr. Lugo or Dr. Campbell. Centurion, Dr. Campbell, and Dr. Lugo have offered no explanation for the failure to promptly provide the surgery Dr. Ong said was urgent.

There were further unexplained delays. Dr. Ong finally performed the required surgery on March 30—nearly three months after the injury, and six weeks after Dr. Ong said surgery was urgent and should be conducted the next day.

Dr. Ong examined Mr. Hurst on April 19, concluded his recovery from surgery was on track, and indicated he should return for removal of surgical pins in four weeks. Dr. Ong saw Mr. Hurst again on May 24—five weeks, not four, after

the prior visit. Dr. Ong removed the pins, said Mr. Hurst should return in four weeks for another follow-up examination, and recommended that Mr. Hurst receive physical therapy for eight weeks. Dr. Lugo reviewed the chart that same day.

Dr. Ong saw Mr. Hurst again on June 28, five weeks after the prior visit. An x-ray suggested disuse osteoporosis, and an examination showed diminished range of motion. Dr. Ong again recommended eight weeks of physical therapy. Dr. Ong said Mr. Hurst should return for another follow-up visit upon completion of physical therapy.

Dr. Lugo reviewed the chart on July 10 and concurred that Mr. Hurst should see a physical therapist. But a consultation with a physical therapist was delayed until August 1. The therapist diagnosed Mr. Hurst with a "mallet finger deformity" and recommended eight weeks of physical therapy—the same recommendation Dr. Ong had made. On August 2, Dr. Lugo requested approval of that amount of therapy, and at least some amount was approved. Mr. Hurst had a physical therapy session on September 1 and additional sessions on September 21 and 26. The therapist recommended continued therapy, but it was not provided.

In November, still suffering pain and a deformity, Mr. Hurst asked Dr. Lugo about possible additional surgery. Dr. Lugo told Mr. Hurst additional surgery offered little chance of improvement, but he recommended a follow-up visit with

Dr. Ong. Someone up the chain—almost surely Dr. Campbell or his designee—denied the request for another visit with Dr. Ong.

The bottom line: Mr. Hurst got needed surgery only after a substantial, unexplained delay; he received, but only after another substantial, unexplained delay, only a fraction of the recommended physical therapy; he never had the follow-up visit with Dr. Ong that both Dr. Ong and Dr. Lugo recommended; and he is left with a bad outcome—a deformed hand and residual pain.

IV

A prison official or physician violates the Eighth Amendment when the official or physician decides, for financial or other reasons unrelated to proper medical care, not to provide appropriate treatment for a serious medical need. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97 (1976) (holding that a correctional official violates the Eighth Amendment when the official is deliberately indifferent to a prisoner's serious medical need). An employing corporation like Centurion can be held liable if the refusal to provide appropriate treatment stems from a corporate policy, as Mr. Hurst alleges here. *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that an employing entity is liable under § 1983 for an official's constitutional violation only if the violation was based on the entity's policy or custom or if the official is one whose edicts or acts may fairly be said to represent official policy).

The defendants correctly note that liability can be imposed only on a showing of at least deliberate indifference. This is a high bar. Disagreements about the proper treatment are not enough. Even medical negligence—malpractice in popular jargon—is not enough. And delay ordinarily is not enough. Here, though, the delay was egregious. And according to Dr. Lugo—at least as recounted by Mr. Hurst—the delay affected the outcome. When Mr. Hurst asked Dr. Lugo whether the delay in obtaining surgery affected the outcome, Dr. Lugo said yes.

Even without Dr. Lugo's alleged statement, an adverse effect on the outcome is a reasonable inference from the objective facts. A physician said it was "urgent" for Mr. Hurst to obtain a surgical consult, but it was delayed nearly a month. When the surgeon, Dr. Ong, finally saw Mr. Hurst, Dr. Ong said surgery should be performed immediately, and he planned to perform it the next day. Prison authorities inexplicably delayed the surgery for six more weeks. The referring physician and surgeon apparently believed that delay would affect the outcome; a reasonable inference is that it did. Common sense supports the inference.

Similarly, when Dr. Ong, Dr. Lugo, and the physical therapists all said Mr. Hurst needed physical therapy, they apparently believed it was important to the outcome. A reasonable inference is that providing only a fraction of the recommended therapy, only after a substantial delay, affected the outcome.

Centurion has offered no explanation for the delay and no evidence that Mr. Hurst would have suffered the same bad outcome had he been treated promptly and as recommended. Centurion correctly notes that Mr. Hurst has offered no evidence of a widespread practice. But Dr. Lugo's recommendations were overruled somewhere up the line, probably by the regional director, and the most reasonable inference is that this was a conscious and knowing decision, not an oversight. In the absence of any other explanation, a reasonable jury could conclude Mr. Hurst's surgery was delayed and his physical therapy was delayed and reduced as a matter of policy. And if the relevant decisions were made only by individuals whose edicts or acts could not fairly be said to represent official policy, Centurion presumably would have explained it.

A reasonable inference, at least as the record now stands, is that Dr. Lugo and Dr. Campbell participated in the decision to delay surgery and that Dr. Campbell, if not also Dr. Lugo, participated in the decision to approve less physical therapy than recommended. Dr. Campbell, if not also Dr. Lugo, may also be subject to supervisory liability.

There is no evidence, however, supporting the claim against Dr. Ong. At least as shown by this record, Dr. Ong's role was to perform surgery and follow up when Mr. Hurst was made available to him for that purpose. Dr. Ong did all he

could do. The record includes no evidence that Dr. Ong was responsible for any delay or for the reduction in physical therapy.

V

For these reasons,

IT IS ORDERED:

1. The report and recommendation is accepted in part.

2. Mr. Hurst's summary-judgment motion, ECF No. 83, is denied.

3. Dr. Ong's summary-judgment motion, ECF No. 84, is granted. All claims against Dr. Ong are dismissed with prejudice. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

4. The summary-judgment motion of Centurion, Dr. Campbell, and Dr. Lugo, ECF No. 85, is denied.

5. The clerk must set a status conference by telephone for the first available date on or after April 7, 2021.

SO ORDERED on March 31, 2021.

                                              s/Robert L. Hinkle
                                              United States District Judge