## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

**WILBERT HURST,**

      **Plaintiff,**

**vs.**

                                    **Case No.: 4:18-cv-00237-RH-EMT**

**CENTURION OF FLORIDA, LLC,**
**et al.**

      **Defendants.**

## MOTION FOR RECONSIDERATION OR, ALTERNATIVELY, MOTION TO CERTIFY INTERLOCUTORY APPEAL AND STAY CASE PENDING RESOLUTION OF §1292(b) PROCEEDINGS AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 54(b), 28 U.S.C. § 1292(b), and Local Rule. 7.1 Defendants Centurion of Florida, LLC; Dr. Erron E. Campbell; Dr. Elliot E. Perez-Lugo (collectively, the "Centurion Defendants"); and Kristina M. Zebley move for reconsideration of the Court's March 31, 2021 Order denying the Centurion Defendants' Motion for Summary Judgment (ECF No. 140) and the Court's April 8, 2021 Order denying Zebley's Motion to Dismiss (ECF No. 145). Alternatively, the Centurion Defendants move for the Court to certify each order for immediate appeal under 28 U.S.C. § 1292(b), and state as follows:

**INTRODUCTION**

In a reversal of Magistrate Judge Elizabeth Timothy's Report and Recommendation (ECF No. 139), this Court ruled the Centurion Defendants were not entitled to summary judgment on Plaintiff Wilbert Hurst's deliberate indifference claims. (ECF No. 140.) Similarly, the Court departed from the Report and Recommendation by deciding that Plaintiff had plausibly stated a claim for deliberate indifference against Zebley. (ECF No. 145.)

The record evidence demonstrates that Plaintiff failed to establish his claims—as the Magistrate Judge correctly found—against the Centurion Defendants. And only conclusory assertions support Plaintiff's deliberate indifference claim against Zebley. As such, these Defendants respectfully ask the Court to reconsider its ruling and adopt the Magistrate Judge's well-reasoned Report and Recommendation.

Alternatively, these Defendants request the Court certify the orders (ECF Nos. 140, 145) for an immediate appeal to the Eleventh Circuit, pursuant to 28 U.S.C. § 1292(b). Based on this Court's reversal of the Report and Recommendation, there can be no doubt that there is substantial ground for difference of opinion as to whether the record evidence establishes a prima facie case of deliberate indifference against these Defendants. Certifying the Order for immediate appeal may materially advance the ultimate termination of the litigation.

2

## BACKGROUND

The Magistrate Judge carefully sets forth the material facts related to Plaintiff's claims over 23 pages in the Report and Recommendation. (ECF No. 139 at 13–30.) The Court adopted the Report and Recommendation's full statement of facts in its Order denying summary judgment. (ECF No. 140 at 3.)[1] Generally, this matter involves allegations of failure to provide or delay of treatment for Plaintiff's hand, which he injured in a fight in January 2017. Specifically, as explained in the Report and Recommendation, Plaintiff brings the following claims:

- **Dr. Perez-Lugo**: "First, Hurst claims that Dr. Perez-Lugo failed to immediately follow-up with the scheduling department regarding scheduling of Hurst's surgery, and Dr. Perez-Lugo failed to implement a 'treatment plan' for Hurst's surgery, including referral to another surgeon. Second, Hurst claims Dr. Perez-Lugo refused to submit a request for Hurst to receive corrective surgery in November of 2017, allegedly due to cost." ECF No. 139 at 33 (internal citations omitted).

- **Dr. Campbell**: "First, Dr. Campbell failed to hire additional plastic surgeons who could have performed Hurst's surgery. Second, Dr. Campbell denied necessary physical therapy following Hurst's surgery. Third, Dr. Campbell implemented a 'one-chance policy' that prohibited corrective surgeries." *Id.* at 35–36 (internal citations omitted).

- **Centurion**: "Hurst claims that the conduct of the individual Defendants (Dr. Perez-Lugo and Dr. Campbell) demonstrates that Centurion fostered a 'culture of non-compliance' with its own customs and practices, which amounted to deliberate indifference." *Id.* at 39–40.

- **Nurse Zebley**: "Hurst alleges . . . that Nurse Zebley discarded [Plaintiff's] sick-call request instead of processing it," "did not deliver his daily dose

---

[1]    These Defendants have no issue with the Report and Recommendation's recitation of the facts or the Court's adoption of them.

of []Prozac" for seven days, and "failed to announce her presence in the wing." *Id.* at 42, 45.

## LEGAL STANDARDS

*Reconsideration*.  "The Court may reconsider a non-final order 'at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Asokan v. Am. Gen. Life Ins. Co.*, 302 F. Supp. 3d 1303, 1310 (M.D. Fla. 2017) (quoting Fed. R. Civ. P. 54(b)). "The purpose of a motion for reconsideration is to correct manifest errors of law, to present newly discovered evidence, or to prevent manifest injustice." *Id.* (citation omitted). Accordingly, the movant "must demonstrate why the court should reconsider its prior decision and 'set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Socialist Workers Party v. Leahy*, 957 F. Supp. 1262, 1263 (S.D. Fla. 1997).

*Certification for Immediate Appeal*.  To certify an order for immediate appeal under 28 U.S.C. § 1292(b), the court must "be of the opinion that such order [(1)] involves a controlling question of law [(2)] as to which there is substantial ground for difference of opinion and [(3)] that an immediate appeal from the order may materially advance the ultimate termination of the litigation.'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1255 (11th Cir. 2004) (quoting 28 U.S.C. § 1292(b)). If the Court is inclined to certify its order for interlocutory review, it must "so state in writing in such order." 28 U.S.C. § 1292(b). It should also "specify the controlling

question of law it has in mind." *McFarlin*, 381 F.3d at 1264.

## **ARGUMENT**

To prevail on his Eighth Amendment claim, Plaintiff must prove these Defendants were deliberately indifferent to a serious medical need. *Black v. Alabama Dep't of Corr.*, 578 F. App'x 794, 795 (11th Cir. 2014). But a "prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). As the Eleventh Circuit recently explained,

> "[D]eliberate indifference is *not* a constitutionalized version of common-law negligence." "To the contrary, we (echoing the Supreme Court) have been at pains to emphasize that 'the deliberate indifference standard ... is far more onerous than normal tort-based standards of conduct sounding in negligence,' and is in fact akin to 'subjective recklessness as used in the criminal law.'" With respect to prisoners' medical care, in particular, we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."

*Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (internal citations omitted) (emphasis in original); *accord Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020) ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

A deliberate indifference claim involves both an objective and subjective

component. *Keohane*, 952 F.3d at 1266. First, a prisoner must demonstrate "an objectively serious medical need." *Id.* "Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Id.* (internal citations omitted).[2] "With regard to the subjective component of the Eighth Amendment claim, the Court in *Farmer* [*v. Brennan,* 511 U.S. 825, 837 (1994),] held that the prison 'official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference.*'" *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 617 (11th Cir. 2007) (emphasis added).

To constitute deliberate indifference, "[m]edical treatment [must be] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Hoffer*, 973 F.3d at 1271. "[M]ere evidence of negligence 'in diagnosing or treating a medical condition' or a showing of medical malpractice does not establish deliberate indifference." *Monteleone v. Corizon*, 686 F. App'x 655, 658 (11th Cir. 2017). In other words, "Medical malpractice does not

---

[2] The Eleventh Circuit recognized a "tension within our precedent" regarding whether deliberate indifference requires proof of more than "gross" or "mere" negligence. *Patel v. Lanier Cty. Georgia*, 969 F.3d 1173, 1188 n.10 (11th Cir. 2020). But this may be a distinction without a difference because the Supreme Court likens deliberate indifference to "subjective *recklessness* as used in the criminal law." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 839–40 (1994)).

become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

And "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Hoffer*, 973 F.3d at 1272. "[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment. *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (quoting *Estelle,* 429 U.S. at 10). That's because "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266; *accord Bismark v. Fisher*, 213 F. App'x 892, 897 (11th Cir. 2007) ("Nothing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." (quoting *Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989)).

Here, the Court erred in concluding that Plaintiff had presented sufficient

evidence to satisfy this heavy burden, as addressed more specifically below.

## I.   The Motion for Summary Judgment

Plaintiff's claims against the Centurion Defendants generally concern the alleged denial and delay of medical treatment for Plaintiff's hand. From the outset, the Court should have been hesitant to find merit in these claims. For "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop*, 871 F.2d at 1035.

Hurst's medical records are replete with documentation of the treatment of his hand, before and after his surgery. (*See* generally ECF No. 85 at Ex. A.). Hurst was referred for surgery following a hand x-ray, and, following the surgery, he received regular follow-up visits including more x-rays, pain medication, and physical therapy. (Ex. A at FDOC 00050-55.) That Hurst's surgical results were not perfect does not dictate that Defendants were deliberately indifferent; rather, even medical care that is not very good is enough to overcome a claim of deliberate indifference. *Hoffer*, 973 F.3d at 1271. The question is whether the medical care shocks the conscience—not whether better results could have been achieved. The Court erred in concluding the medical care Hurst undeniably received was sufficient to meet this high bar.

To the extent the Court's ruling rests solely on an alleged delay in care, as opposed to the quality of care actually provided, the Court's ruling is still error.

Delayed medical treatment can rise to the level of deliberate indifference when: "(1) it is apparent that delay would detrimentally exacerbate the medical problem; (2) the delay actually seriously exacerbates the problem; and (3) the delay is medically unjustified." *James v. Bartow Cty., Georgia*, 798 F. App'x 581, 584–85 (11th Cir. 2020) (citing *Taylor v. Adams*, 221 F.3d 1254, 1259–60 (11th Cir. 2000)) (cleaned up). In making a deliberate indifference claim premised on delayed treatment, "A prisoner must provide 'verif[ied] medical evidence … to establish the detrimental effect of delay in medical treatment.'" *Id.* at 585. But a plaintiff must still establish that an individual defendant delayed the treatment to demonstrate that the defendant's deliberate indifference *caused* the serious exacerbation of the medical problem. *Id.* at 584.

Here, as the Report and Recommendation explained, there is no evidence any Defendant caused the delay in Plaintiff's surgery or physical therapy.[3] *Isbell v.*

---

[3] Nor is there verifying medical evidence showing Plaintiff's injury was *seriously exacerbated* because of any delay. *Taylor*, 221 F.3d at 1259–60 (11th Cir. 2000). To meet this significant burden, a plaintiff must provide expert medical testimony that "supports a finding of the deliberate indifference rather than mere negligence." *Thomas v. City of Jacksonville*, 731 F. App'x 877, 882 (11th Cir. 2018). That is because "[w]hether an instance of medical misdiagnosis resulted from deliberate indifference or negligence is a factual question requiring exploration by expert witnesses." *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986).

Where a plaintiff "has made no effort to support h[is] allegations with a medical opinion," summary judgment is required. *Johnson v. Kats-Kagan*, No. 5:06CV92RSMD, 2007 WL 2176004, at *4–5 (N.D. Fla. July 25, 2007), *aff'd sub nom. Johnson v. McNeil*, 278 F. App'x 866 (11th Cir. 2008); *accord Kaether v. Armor Corr. Health Servs., Inc.*, No. 16-62950-CIV, 2018 WL 1981133, at *4-5 (S.D. Fla. Apr. 26, 2018), *report and recommendation adopted,* No. 16-62950-CIV, 2018 WL 10788509 (S.D. Fla. May 21, 2018); and *Kuhne v. Fla. Dep't of Corr.*, No. 5:11CV209/RS/CJK, 2012 WL 12817016, at *2 (N.D. Fla. Feb. 24, 2012).

*Arnold*, No. CV 17-0021-JB-MU, 2020 WL 1327402, at *11 (S.D. Ala. Mar. 5, 2020), *report and recommendation adopted,* No. CV 1:17-00021-JB-MU, 2020 WL 1324065 (S.D. Ala. Mar. 20, 2020) ("Plaintiff fails to show how Defendants are responsible for any delay, as the record indicates that expedient consult requests were submitted, Corizon[] responded in a timely manner by approving every consult request, and Plaintiff was transported to every scheduled appointment.").

Here, as argued more thoroughly below, the Court erred when considering Plaintiff's claims for delay by failing to consider whether Hurst satisfied his burden of establishing a prima facie case of deliberate indifference against each Defendant. *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) (holding "[e]ach individual Defendant must be judged separately and on the basis of what that person knows.").[4]

## A. Dr. Perez-Lugo

Plaintiff contends Dr. Perez-Lugo failed to implement a surgical treatment plan and refused to request corrective surgery. (ECF No. 139 at 33.) The evidence

---

Plaintiff presented no such evidence; instead, he offers his own conclusory and unsubstantiated assertions to establish the purported delay harmed him. *See* (ECF No. 36 ¶ 13.)

Although the Court relied on a statement allegedly made by Dr. Perez-Lugo for this point, the Court applied an incorrect standard. Specifically, the MSJ Order permits *any* effect on the outcome to be sufficient, instead of requiring Plaintiff to show his injury was *seriously exacerbated*. (*See* ECF No. 140 at 7 ("The referring physician and surgeon apparently believed that delay would affect the outcome; a reasonable inference is that it did.").) This is error.

[4] Even if the Court is not inclined to grant reconsideration in its totality, Defendants request the Court consider the individual claims to narrow the issues that will be tried.

contradicts these claims.

First, as noted in the Report and Recommendation, it was Dr. J. Bichara—not Dr. Perez-Lugo—who attended to Plaintiff after he injured his hand and who referred Plaintiff for a surgery consult with Dr. Ong. (*Id.* at 15–16). After Dr. Ong requested Plaintiff be approved for surgery on February 15, 2017, Dr. Perez-Lugo approved the request just two days later. (*Id.* at 18). After Dr. Perez-Lugo approved the surgery, there is no indication that Dr. Perez-Lugo had any knowledge that Plaintiff did not receive surgery until March 30, 2017. And even if the failure to check that surgery had been scheduled urgently was negligent, such negligence cannot be the basis for a deliberate indifference claim. *Hoffer*, 973 F.3d at 1271; *Swain*, 961 F.3d at 1285 ("As applied in the prison context, the deliberate-indifference standard sets an appropriately high bar. A plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'").

As to Plaintiff's claim that Dr Perez-Lugo denied him a corrective surgery consult, this claim is directly contradicted by the record and the Court erred in concluding it could proceed. As noted in the Report and Recommendation, on November 17, 2017, Dr. Perez-Lugo signed a request for Hurst to receive a surgical evaluation by Dr. Ong. (ECF No. 139 at 27–28.) So Plaintiff's claim is clearly refuted by the record evidence.

To the extent Plaintiff or the Court fault Dr. Perez-Lugo for not seeking

11

corrective surgery after his initial request was denied in favor of an alternative treatment plan (ECF No. 83 at 50), such a claim also cannot survive. In a newly released opinion, the Eleventh Circuit considered whether a prisoner could state a deliberate indifference claim against doctors for failing to refer him to a gastroenterologist after a previous referral had been denied. *Pounds v. Dieguez, et al.*, No. 19-14833, --- Fed. App'x ---, 2021 WL 1292286 at *3 (11th Cir. Apr. 7, 2021). The Eleventh Circuit affirmed dismissal of the plaintiff's claims for deliberate indifference, concluding the "allegations merely demonstrate 'a classic example of a matter for medical judgment' – that is, [the plaintiff] has alleged that he requested additional diagnostic techniques or forms of treatment that [the doctor defendants] had the medical discretion to deny." *Id.* at *4. Just as in *Pounds*, whether to refer Plaintiff for a corrective surgery consult cannot form the basis of a deliberate indifference claim because it is a quintessential matter of medical judgment.

In sum, the Court erred in concluding Plaintiff established a deliberate indifference claim against Dr. Perez-Lugo. Plaintiff is the master of his complaint, and the only claims he has brought against Dr. Perez-Lugo cannot stand under the evidence. There is no evidence that Dr. Perez-Lugo was reckless in regard to the treatment he provided Plaintiff, nor does Dr. Perez-Lugo's treatment shock the conscience. As such, the Court should reconsider and grant summary judgment for Dr. Perez-Lugo.

**B. Dr. Campbell**

As for Dr. Campbell, Plaintiff believes he (1) failed to hire additional plastic surgeons who could have performed Plaintiff's surgery; (2) denied Plaintiff physical therapy; and (3) maintains a policy of denying corrective surgery. (ECF No. 139 at 35.)

Claims against such supervisory staff like Dr. Campbell, who was Regional Medical Director at the time of Plaintiff's treatment, are "notoriously tough to bring because § 1983 does not allow claims based on vicarious liability." *Brooks v. Wilkinson Co., Ga.*, 393 F. Supp. 3d 1147, 1173 (M.D. Ga. 2019). Rather, § 1983 demands "a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). There are only three ways to establish the connection: (1) a history of widespread abuse should, but does not, prompt Dr. Campbell to act; (2) Dr. Campbell's custom or policy caused the deliberate indifference; or (3) the facts support an inference that Dr. Campbell directed the deliberate indifference or knew it would it occur, but failed to stop it. *Harper v. Lawrence Cty.*, 592 F.3d 1127, 1236 (11th Cir. 2010).

As the Report and Recommendation explained, Plaintiff presented no evidence to establish any of his claims against Dr. Campbell. (ECF No. 139 at 36–39). The absence of causation evidence is fatal to Plaintiff's claims against Dr.

Campbell. *See Brooks*, 393 F. Supp. 3d at 1174 (entering summary judgment for defendant because inmate offered no causal-connection evidence).

Instead, this Court determined the claims against Dr. Campbell could move forward based solely on impermissible assumptions. (*See* ECF No. 140 at 6 ("[s]omeone up the chain—almost surely Dr. Campbell or his designees—denied the request for another visit with Dr. Ong."); at 8 ("Dr. Lugo's recommendations were overruled somewhere up the line, probably by the regional director, [] the most reasonable inference is that this was a conscious and knowing decision, not an oversight.").[5] This was error because there is no record evidence upon which to base these assumptions, nor evidence demonstrating Dr. Campbell possessed a sufficiently culpable state of mind to be liable for deliberate indifference. *Swain*, 961 F.3d at 1285; *Burnette*, 533 F.3d 1325, 1331.

It was further error to shift the burden of disproving this state of mind to Defendants. (ECF No. 140 at 8 ("In the absence of any other explanation, a reasonable jury could conclude Mr. Hurst's surgery was delayed and his physical

---

[5]    This is just one of many examples in which the MSJ Order removes Plaintiff's burden, substituting inferences for evidence. (*See*, *e.g.*, ECF No. 140 at 4 (inferring Plaintiff's surgery did not occur on February 16, 2017 because it lacked approval); at 8 ("A reasonable inference, at least as the record now stands, is that Dr. Lugo and Dr. Campbell participated in the decision to delay surgery and that Dr. Campbell, if not also Dr. Lugo, participated in the decision to approve less physical therapy than recommended."). Neither the record nor the law supports these inferences. *See Josendis v. Wall to Wall Residence Repairs*, Inc., 662 F.3d 1292, 1318 (11th Cir. 2011) (at the summary judgment stage, "evidence, consisting of one speculative inference heaped upon another, [is] entirely insufficient.").

therapy was delayed and reduced as a matter of policy. And if the relevant decisions were made only by individuals whose edicts or acts could not fairly be said to represent official policy, Centurion presumably would have explained it.").

Finally, as argued above, certain of Plaintiff's claims fail because they are quintessential matters of medical judgment. Assuming, as the Court did, that Dr. Campbell denied Dr. Perez-Lugo's referral for corrective surgery consultation, he did so in favor of an alternative treatment plan. (ECF No. 83 at 50). As explained in *Pounds*, the decision of whether to refer Plaintiff for additional diagnostic evaluations or treatments is a classic example of a matter of medical judgment. 2021 WL 1292286 at *4.

## C. Custom, Practice, or Policy.

Private contractors who provide medical care for prisons act under the color of state law for the purposes of § 1983. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). But a medical contractor cannot be liable under theories of *respondeat superior* or vicarious liability. *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978) ("Congress did not intend to create liability under § 1983 unless action pursuant to an official policy or custom caused a constitutional tort."); *see also Grech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (*en banc*) ("Liability under § 1983 may not be based on the doctrine of *respondeat superior*."); *and see Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1396

(11th Cir. 1994) ("Supervisory officials are not liable under section 1983 on the basis of *respondeat superior* or vicarious liability.").

Instead, a plaintiff may successfully state a § 1983 claim and show liability of a government entity "only where the [government entity] itself causes the constitutional violation at issue" through implementation of an official policy or custom. *Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). To establish that an official policy or custom of the government entity causes the constitutional violation, a plaintiff must show it was the "moving force" behind the alleged constitutional deprivation. *See Monell* 436 U.S. at 693–94. Thus, in order for Plaintiff to successfully raise a § 1983 claim against Centurion, he must allege that his constitutional rights were violated, that Centurion had a custom or policy that constituted deliberate indifference to that particular constitutional right, and the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown,* 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit defines "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." *Sewell*

16

*v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). It is also a requirement that, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

Plaintiff contends Centurion fostered a "culture of non-compliance" with its own customs and practices, which amounted to deliberate indifference. Such a claim necessarily has to be premised on an unofficial practice or custom, not an official policy. And to prove that an unofficial practice or custom exists, a plaintiff must show that the practice is widespread. *Brown,* 520 U.S. at 404. It is not enough for a Plaintiff to rely solely on their own experience. *Craig v. Floyd County*, 643 F.3d 1306, 1311 (11th Cir. 2011) ("A single incident of a constitutional violation is insufficient to prove a policy or custom.").

But as this Court acknowledged, "Centurion correctly notes that Mr. Hurst has offered no evidence of a widespread practice." (ECF No. 140 at 8). Nor has Plaintiff presented evidence of delays for any other individual, instead relying solely on his own experiences in an attempt to create a constitutional claim against Centurion. Because there is no evidence that a Centurion practice or custom was the moving force behind Plaintiff's alleged violation, and because Centurion cannot otherwise

be liable for the acts of its employees, the Court erred in not granting summary judgment for Centurion.

## II.    The Motion to Dismiss

The Third Amended Complaint simply does not contain sufficient allegations to make it plausible Zebley's conduct amounts to deliberate indifference. Plaintiff alleges that, "[u]pon information and belief," Nurse Zebley discarded Plaintiff's sick-call request instead of processing it. (ECF No. 36 at ¶ 13). Plaintiff also alleges she failed to announce her presence when she entered the administrative confinement wing. But Plaintiff offers no facts supporting these allegations.

As to the claim that Nurse Zebley threw away his sick call request, such a claim is insufficient to state a claim for deliberate indifference. First, "for purposes of a Rule 12(b)(6) motion to dismiss, we do not have to take as true allegations based merely 'upon information and belief.'" *Smith v. City of Sumiton*, 578 F. App'x 933, 936 (11th Cir. 2014); *accord Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1071 (11th Cir. 2017) ("On a Rule 12(b)(6) motion to dismiss, the Court does not accept as true unwarranted deductions of fact.").

In fact, this Court has previously found similar allegations fail to satisfy the plausibility requirement of *Iqbal*, and instead amount to mere speculation. *Redding v. Mamoran*, No. 4:14CV49-RH/GRJ, 2014 WL 4693100, at *5 (N.D. Fla. Sept. 20, 2014). In *Redding*, and inmate alleged the prison grievance process was unavailable

to him because he alleged his grievances were either shredded or thrown in the trash. *Id.* This Court adopted the Magistrate Judge's Report and Recommendation concluding such allegations were "mere speculation" that failed to move claims "across the line from conceivable to plausible." *Id.* The Court should reach the same conclusion here.

Removing the allegation that Nurse Zebley threw away his sick call request, Plaintiff has only alleged that he gave Nurse Zebley a sick call request that does not appear in his medical records. There are no facts—accepting these allegations as true—that demonstrate Nurse Zebley's actions were intentional—as opposed to merely negligent—such that they could support a deliberate indifference claim. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). The same is true as to the allegation that Nurse Zebley failed to announce her presence: there are no factual allegations showing that the failure was deliberate, as opposed to negligent. *Id.* Because Plaintiff failed to plead facts making a deliberate indifference claim against Nurse Zebley plausible as opposed to conceivable, the Court erred in denying Nurse Zebley's motion to dismiss.

## **CONCLUSION**

The Court should reconsider its ruling and adopt the Report and Recommendation [ECF No. 139]. Alternatively, the Court should certify its Orders for immediate appeal under § 1292(b) for the reasons argued above.

Respectfully Submitted,

*/s/ Jacob Hanson*
Brian A. Wahl (FBN 95777)
R. Craig Mayfield (0429643)
Jacob Hanson (FBN 91453)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, Florida 33602
Tel: (813) 559-5500
cmayfield@bradley.com
jhanson@bradley.com

**Counsel for Defendants Centurion of Florida, LLC, Dr. Erron E. Campbell, Dr. Elliot E. Perez-Lugo, and Kristina M. Zebley, LPN**

## LOCAL RULE 7.1(F) WORD LIMIT CERTIFICATION

Pursuant to Local Rule 7.1(F), undersigned counsel certifies that the word count of the word-processing system used to prepare this memorandum states the documents contains 5,240 words.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 27, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record and mailed the same via U.S. Mail, postage prepaid to:

Wilbert Hurst, DC# U22029
Wakulla Correctional Institution Annex
110 Melaleuca Drive
Crawfordville, FL  32327
***Pro Se Plaintiff***

<u>/s/ Jacob Hanson</u>
***Counsel for Defendants Centurion of Florida, LLC, Dr. Erron E. Campbell, Dr. Elliot E. Perez-Lugo, and Kristina M. Zebley, LPN***